Michael F. Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Tel:  415-433-4949
Fax:  415-433-74311

Gary E. Mason (to be admitted *pro hac vice*)
Steven N. Berk (to be admitted *pro hac vice*)
Esfand Nafisi (to be admitted *pro hac vice*)
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste. 1605
Washington, DC  20036
Tel:  202-429-2290
Email:  GMason@wbmllp.com
Email:  sberk@wbmllp.com
Email:  enafisi@wbmllp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ZACHARY BOOK**, **DONALD COWART**, and **JOHN MANNERS**, individually and on behalf of all others similarly situated, | **CIVIL ACTION NO.** |
| | **CLASS ACTION COMPLAINT** |
| PLAINTIFFS, | **Jury Trial Demanded** |
| v. | |
| APPLE, INC. | |
| DEFENDANT. | |

Plaintiffs, Zachary Book, Donald Cowart, and John Manners, by and through their undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, allege:

/ / /

/ / /

## NATURE OF THE ACTION

1.    Aiming to control the lucrative market for high-end laptop computers used by consumers and professionals, in 2011, Apple introduced new fifteen- and seventeen-inch MacBook Pro Laptops powered by two graphic processing chips ("the 2011 MacBook Pros").  As described herein, the computer was described by many as a dud and defective from inception. Just days after these laptops went on sale, consumers worldwide began reporting to Apple that the 2011 MacBook Pros suffered from random bouts of graphical distortion, system instability and system failures.  Apple's customers paid a premium for their products and were promised, and came to expect, the highest levels of performance, graphical richness, and durability. Apple, however, has failed to remedy the inherent graphics defect in the 2011 MacBook Pros, causing tens of thousands of frustrated and disappointed customers to air their grievances online on websites like Facebook,[1] Reddit,[2] change.org,[3] and Apple's own discussion forums.[4] Indeed, a survey posted online by Plaintiffs' counsel received nearly three thousand responses from 2011 MacBook Pro owners in less than a week. The stories are the same: 2011 MacBook Pro laptops' graphics become distorted, followed by software shutdowns, system freezes and, eventually, total system failure.

2.    The 2011 MacBook Pro laptops went on sale in February 2011 and were sold through approximately May 2012. The laptops contain two graphics chips, also known as graphics processing units ("GPUs"), which are manufactured by Advanced

---

[1] https://www.facebook.com/groups/2011mbp/
[2] http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/
[3] https://www.change.org/p/timothy-d-cook-replace-or-fix-all-2011-macbook-pro-with-graphics-failure
[4] https://discussions.apple.com/thread/4766577?tstart=0

Micro Devices ("AMD") and Intel, respectively. When performing the graphically demanding tasks for which the 2011 MacBook Pro was designed, like using an external monitor, editing digital photographs, and editing video footage, the 2011 MacBook Pro engages the powerful AMD GPU to process graphics. Everyday tasks, such as web browsing or word processing, are handled by the efficient, relatively low-powered Intel GPU.

3.     The 2011 MacBook Pros commanded a premium, in large part because of the additional graphics-processing power they offered. In 2011, the entry-level price of a MacBook Pro Laptops without an AMD graphics processor was $1,199, and the starting price of a 2011 MacBook Pro with an AMD GPU was $1,799 for a fifteen-inch model and $2,499 for a seventeen-inch model. With upgrades to the memory, storage, and central processor, the price of a 2011 MacBook Pro could, and often did, easily exceed $3,000. By contrast, the average starting price of a Windows laptop during that same period was $489.

4.     Days after the 2011 MacBook Pros went on sale, a firestorm of complaints erupted on Apple's discussion forums, and Apple stores were flooded with consumers whose brand-new laptops were experiencing graphical issues, including severe screen distortion, pixilation, graphical artifacts, and ghosting, that often precipitated the system shutting down or failing completely.

5.     The graphical issues and system failures with the 2011 MacBook Pro Laptops were nearly identical to problems that plagued the 2008 MacBook Pro laptops, which were eventually recalled. Yet rather than issuing a recall for the 2011 MacBook Pro Laptops, Apple hurriedly release a software patch intended to address graphical

stability in the 2011 MacBook Pros. The software patch was ineffective because, as Apple knew from its experience with the 2008 MacBook Pro Laptops, the defect at issue is physical and cannot be fixed with a software patch.

6. The defect in the 2011 MacBook Pro laptops stems from the lead-free solder used to connect the AMD GPU to the main circuit board of the laptop (the "logic board"). Though Apple touted its environmental benefits, the lead-free solder was used in order to comply with EU regulations. While Apple could have used the more durable leaden solder in the 2011 MacBook Pro Laptops to be sold in the United States, it chose to use lead-free solder in all its laptops, presumably to reduce manufacturing costs.

7. Lead-free solder, which is typically composed of a combination of tin and silver, suffers from two well-known problems. First, it tends to develop microscopic "tin whiskers," which cause short circuiting and other problems within electronic devices.

8. Additionally, lead-free solder tends to crack when exposed to rapid changes in temperature. The 2011 MacBook Pros run very hot when performing graphically demanding tasks due to a confluence of high-performance hardware, poor ventilation, and the overuse of thermal paste within the laptop. The high temperatures and large temperature swings inside the computer, known as "stress cycles," cause the brittle, lead-free solder connecting the AMD GPU to the logic board to crack. Both of these shortcomings with lead-free solder are well known and are preventable with the use of standard solder.

9. When the lead-free solder cracks it degrades the data flow between the GPU and the logic board. A small crack can cause the laptop's graphics to become distorted on occasion. But as cracks in the lead-free solder propagate over time, the

graphics issues worsen and system stability decreases, until eventually the computer is completely unusable. This defect related to the lead-free solder connecting the GPU to the logic board (the "Graphics Defect") limits all computers at the point of sale forward from performing as advertised and warranted.

10.     While the 2011 MacBook Pros were under Apple's one-year warranty, Apple would, in some cases, replace consumers' entire logic boards in response to the Graphics Defect. A new logic board, however, was no fix because the new logic boards used the same lead-free solder to connect the AMD GPU. As a result, the laptops again failed in time, sometimes in a matter of days. Scores of owners reported that even after receiving new logic boards, their systems continued to exhibit the Graphics Defect and crash or fail, turning their computers into $3000 paper weights. Now, even years outside of the warranty period, a replacement logic board is still the only option that Apple offers for its inherently defective product. A logic board replacement out of warranty can cost between $350 – 600. Consumers who are aware of the Graphics Defect are understandably hesitant to spend hundreds of dollars on an out-of-warranty repair that simply swaps out a non-functional and defective part with a temporarily functional but equally defective replacement.

11.     Apple has also failed to reimburse owners for out of pocket repairs and has surprisingly ignored the claims of the thousands of customers who, in many cases, complained directly to Apple CEO Tim Cook and paid for the out of pocket repairs when they failed to obtain a response from Apple.

12.     This case seeks basic fairness for owners of these defective MacBook Pros. It is a last resort as other efforts of obtaining a solution have failed.  Plaintiff John

Manners purchased his 2011 MacBook Pro laptop on March 1, 2011, days after the MacBook Pros went on sale. He began experiencing the Graphics Defect soon thereafter and took his MacBook Pro in to an Apple retail store in June 2011, at which time Apple did not repair the defect. The defect later caused total failure of Plaintiff Manners' computer in February 2013 and cost Manners $331.70 to repair.  Plaintiff Zachary Book purchased his 2011 MacBook Pro laptop in January 2012, and has since the time of purchase experienced the Graphics Defect. Book has paid for one logic board replacement due to the Graphics Defect in 2013. When the Graphics Defect again disabled his computer, he was given a second logic board replacement for free in 2014, though Apple initially wanted to charge Book more than $500 for a second logic board replacement. Now on his third logic board, Book's MacBook Pro is again experiencing the Graphics Defect. Plaintiff Donald Cowart purchased a 2011 MacBook Pro laptop computer in May 2012—more  than a year after Apple became aware of the Graphics Defect. When he purchased his 2011 MacBook Pro laptop, Plaintiff Cowart did not know that his MacBook Pro laptop suffered from Graphics Defect described herein. Plaintiff Cowart's laptop began evidencing symptoms of the graphics defect within a year of purchase. Despite numerous trips to an Apple retail store to report issues with system stability, Apple did nothing to repair to his laptop other than instruct him to perform time consuming and ineffective software reinstallations. Plaintiff Cowart took his laptop to a circuit board repair company for an inspection in 2014, and was informed that the solder between his logic board and GPU had cracked—*i.e.*, his laptop suffered from the Graphics Defect. At present, his computer is unstable and nearly unusable.

13.     Plaintiffs allege that Apple committed the following violations:

    a.   California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL") by engaging in unlawful and unfair conduct in violation of the CLRA by failing to disclose the existence of the Graphics Defect to Class members;

    b.   Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* by breaching express and implied warranties;

    c.   Breached implied warranties of merchantability and fitness for a particular purpose;

    d.   Breached express warranties;

    e.   Fraudulent concealment/nondisclosure; and

    f.   Failure to warn under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201 *et seq.*

### PARTIES

14.     Plaintiff Zachary Book is, and at all times relevant hereto has been, a citizen and resident of California. Plaintiff Book purchased a 2011 MacBook Pro laptop in January 2012.

15.     Plaintiff  Donald Cowart is, and at all times relevant hereto has been, a citizen and resident of California. Plaintiff Cowart purchased a 2011 MacBook Pro laptop in May 2012.

16.     Plaintiff John Manners is, and at all times relevant hereto has been, a citizen and resident of Florida. Plaintiff Manners purchased a 2011 MacBook Pro laptop in March 2011.

17. Defendant Apple, Inc. is incorporated in California. Apple's executive offices and company headquarters are located in Cupertino, Santa Clara County, California. Apple sold the MacBook Pros to consumers throughout the United States, including to at least thousands of consumers in California, and Florida.

18. Plaintiffs bring this action individually, and as a class action, against Apple, on behalf of themselves and all other similarly situated persons in the States of California and Florida who purchased 2011 MacBook Pro Laptops with AMD GPUs.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs and the proposed Class has more than 100 members. In California and Florida there are tens of thousands of owners of 2011 MacBook Pro Laptops.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District. Furthermore, Defendant regularly transacts and solicits business in this District.

## COMMON FACTUAL ALLEGATIONS

21. Defendant Apple, Inc. ("Apple" or "Defendant") designs, manufactures, sells and warrants a broad range of technology products, including the 2011 MacBook Pro laptop computers. Apple is the most valuable company in the world, with a market capitalization in excess of $600 billion.

22. On February 24, 2011, Apple began selling the 2011 MacBook Pro line of laptops to Class members.

23.     As Apple's most expensive and feature-packed laptop line, the MacBook Pro laptops were marketed to consumers and professionals who were seeking a durable, high-performance product that was suitable for graphics-intensive tasks.

**I.      The Graphics Processing Units**

24.     The 2011 MacBook Pros were sold with two GPUs that operated discretely. The first GPU, manufactured by Intel, "handles the things you do every day," such as processing the graphics needed for word processing and web browsing. The second GPU, manufactured by AMD, greatly enhanced the graphical capabilities of the 2011 MacBook Pros, giving them "game-changing graphics" and performance that was "up to 3x quicker" in drawing and rendering graphics:

> For graphics-intensive applications, the 15- and 17-inch MacBook Pro models automatically switch to new high-performance AMD Radeon graphics processors. With up to 3x the performance of the previous models, they let you see more frames per second in 3D games, or work on HD video projects with more speed and responsiveness than before.

25.     Apple specifically represented that the 2011 MacBook Pros were suitable for graphics-intensive applications, like computer-aided design, high definition video projects, and games.

26.     The increased graphical performance capability of the MacBook Pro Laptops with AMD GPUs was a key selling point of the 2011 MacBook Pros, and Apple's website pictured the laptops running photo-editing applications and games.



27.     The price of the fifteen-inch MacBook Pro started at $1,799, and the seventeen-inch model's price started at $2,499. With upgrades, the price of a 2011 MacBook Pro could easily exceed $3,000. By contrast, the average price of a Windows laptop when the 2011 MacBook Pros went on sale was $481.



Source: http://blog.laptopmag.com/the-average-pc-laptop-cost-513-in-february

## II.     Apple's Durability Advantage

28.     A central reason consumers were willing to pay more for the 2011 MacBook Pros is longevity. A computer's longevity can be measured in terms of hardware longevity and software longevity.

29.     With respect to hardware longevity, MacBook Pro Laptops were unique in that Apple built them with a "unibody" aluminum enclosure, instead of the multi-piece plastic enclosures that are common to most laptops.  The aluminum enclosure lent the appearance of greater durability to the average consumer, who thought that on the basis of appearance alone, the MacBook Pro Laptops were built to last longer than the average laptop. Indeed, Apple touts the long-term durability of its laptops on its website.

> [W]e design everything from our largest displays to our smallest cables to be durable and long lasting. And to make sure they are, *we test them in our Reliability Testing Lab at our headquarters in Cupertino.*
>
> . . . .
>
> *Our built in notebook batteries last up to five years. Which saves on buying new batteries, produces less waste, and increases the lifespan of your notebook.*
>
> And when Apple product owners pass along their devices to friends or family, they're conserving resources, too. Sometimes the mark of a great product isn't how many you sell, but how much it's used.[5]

30.     In addition to Apple's written representations about the durability of the MacBook Pros, Apple trained its sales staff, through in-store meetings and role playing exercises, to represent that the high cost of the MacBook Pros was justified because the laptops would last on average for between 5 – 7 years. Consumers, including Plaintiffs,

---

[5] http://www.apple.com/environment/finite-resources/ (last visited Aug. 28, 2014) (emphasis added).

relied on these representations when purchasing a 2011 MacBook Pro, which cost many times more than competing laptops.

31.     With respect to software longevity, Apple laptops—specifically, the MacBook Pro Laptops—have an average software lifecycle of 3.9 years.[6] Apple's website states that Apple's current operating system, "OS X Mavericks *works on Mac computers made as far back as 2007 —* so you'll have a new experience without buying a new device."[7] Apple's upcoming operating system, OS X Yosemite, will support the 2011 MacBook Pros.[8]

32.     Apple customers paid a premium for their MacBook Pros because they believed that Apple hardware would last for many years, and that Apple would continue to support older laptops with software updates for up to seven years, and that Apple would remedy any inherent defects in the laptops even outside of the warranty period.

**III.    The 2011 MacBook Pros' Immediate Failure**

33.     Less than a week after Apple first began selling the MacBook Pros, a firestorm of complaints erupted among purchasers on Apple's discussion forums. By and large, the complaints were the same—the same graphically demanding tasks that prompted consumers to purchase their MacBook Pros were causing graphical anomalies, system freezes, and system failures. In less than a month, a discussion thread related to

---

[6] *See* Macography.net, *How Long Will My Mac Last For*, http://macography.net/2012/03/how-long-will-my-mac-last-for/ (last visited Aug. 26, 2014).
[7] http://www.apple.com/environment/finite-resources/ (last visited Aug. 28, 2014) (emphasis added)
[8] *See* http://www.everymac.com/mac-answers/os-x-10.9-mavericks-faq/os-x-mavericks-compatible-macs-system-requirements.html (last visited Aug. 26, 2014).

the Graphics Defect had generated 1,094 responses.[9] A sampling of consumer complaints

on the 2011 Apple discussion thread is copied below.

| Date | Complaint |
|------|-----------|
| Mar. 3, 2011 | I have had the same thing several times with my 15" 2011 2.2GHz model. Each time it was when the system was under load and the fans start running high and then there is a freeze. |
| Mar. 5, 2011 | Great. I'm having the exact same issue. It happens when rendering video in iMovie. The fan comes on and everything freezes. I can do nothing but a hard reset. Now I'm wondering if I should return this $2000 item and wait until all the bugs are fixed. |
| Mar. 6, 2011 | Happened 3 times now, mine freezes and the screen goes all funny (like it has hundreds of dead pixels) |
| Mar. 6, 2011 | Exactly the same issues are happening with my 15 inch MBP 2.2 ghz i7. When rendering from After Effects the fans go wild, like an airplane and the CPU temp reaches 98C, then sometimes everything freezes but the cursor movement, only way forward is a hard reset. |
| Mar. 12, 2011 | I ordered a 15.4" 2.2Ghz MacBook Pro, and received it on Wednesday night. The computer continuously froze even when doing simple tasks, such as listening to iTunes (no other apps running). One time it froze with garbled video and pixels. And last night (Friday), it froze and never came back. Turning it on produces only a black screen. I know it's powering on, as I can hear it, and the light on the front is on, but the screen doesn't turn on. I just got back from the Apple Store, where they were unable to fix it after trying everything. They suggested a replacement. Now I have to mail back my $2500 machine, and wait an extra week to use it. |

34.     Less than a month after the release of the MacBook Pros, technology

websites began reporting on the Graphics Defects. *See, e.g.,* Chris Foresman, *Latest

MacBook Pros suffering from GPU-related freezes*, ArsTechnica (March 21, 2011)

(available at: http://arstechnica.com/apple/2011/03/latest-macbook-pros-suffering-from-

gpu-related-freezes/) (last visited August 20, 2014) ("Numerous owners of the latest 15"

[9] Apple.com Discussions Forum, *MacBook Pro 2011 17" hard freeze*, (Mar. 1, 2011) https://web.archive.org/web/20110326141903/http://discussions.apple.com/thread.jspa?th readID=2768351&start=0&tstart=0 (last visited Aug. 22, 2014).

and 17" MacBook Pro models have taken to Apple's support forums to report an issue that causes their systems to freeze, with one user going so far as to successfully reproduce the problem on every floor model at a local Apple Store.")

35.    In an ultimately unsuccessful attempt to quell criticism, Apple quickly announced a pending software update for the MacBook Pros to address "graphical stability." On March 21, 2011—less than a month after the MacBook Pros went on sale in the United States—Apple released a software update for the MacBook Pros' operating systems, which purported to "improve graphics stability and external display compatibility."



36.    The update was a flop. The day that Apple's software update was released, consumers reported that the update failed to remedy the Graphics Defect, and in some cases made it worse. *See, e.g.*, comments to Rue Liu, *Apple MacBook Pro 2011 GPU-*

*Related Glitch Fixed With Mac OS X 10.6.7*, SlashGear.com (Mar. 21, 2011) (available at http://www.slashgear.com/apple-macbook-pro-2011-gpu-related-glitch-fixed-with-mac-os-x-10-6-7-21141448/) (last visited Aug. 22, 2014) ("the Graphics glitches are worse on the LCD and the dashboard or any overlay type graphics . . . are all distorted"); ("Display problems began immediately, and were not fixed by 10.6.7 update. No crashes here – problem is display corruption. Appears in Safari, Pages and Preview. The entire window (but not the entire screen) is filled with garbage. Problem is not solved by restarting the application."); ("Apple needs to do a recall").

## IV. The Source of the Graphics Defect

37. On the 2011 MacBook Pros, the AMD GPU is soldered to the laptop's logic board. These soldered connections pass information between the GPU and the logic board.

38. The solder used to connect the GPU to the logic board is devoid of lead. Apple began using lead-free solder in or around 2006 due to a European Union legislation called Restriction of Hazardous Substances ("RoHS"). RoHS prohibits the use of lead in electronic products destined for sale in Europe. As a consequence of RoHS, Apple began using lead-free solder in its products, even those sold in the United States. Lead-free solder is typically comprised of a combination of silver and tin and is known to be less reliable than leaden solder for two reasons. First, the tin used in the solder creates "tin whiskers," which can cause short circuits within the componentry. Second, the lead-free solder tends to crack when exposed to cycles of low and high temperature generated by a laptop. As one commentator has noted a "lead-free assembly is less reliable than lead-based assembly. The E.U. environmental commission admits this point. *That's why*

*they grant exceptions for military and high-reliability applications that still use [lead] solder.*"[10]

     **A.**     **Tin whiskers in lead-free solders cause short circuiting in electronics.**

     39.     The first reason that lead-free solder is less reliable is due to the growth of "tin whiskers," which are small, thin metallic hair-like growths that emerge from the surface of solid tin. Tin whiskers can cause short circuits in electronics devices, which is part of the reason that the E.U. commission recognizes that "no suitably reliable substitute for lead-based solders has yet been found."[11] In fact, a single tin whisker created a short circuit in a nuclear reactor, which led to a partial reactor shutdown in 2005.[12] Leaden solders do not develop tin whiskers for an unknown reason.



---

[10] Howard Johnson, *Rollback the Lead-Free Initiative*, 10 High-Speed Digital Design Online Newsletter 1 (2007) (available at www.sigcon.com/pubs/news/10-01.htm) (last visited Oct. 20, 2014).

[11] *Id.*

[12] Patricia Daddona, *Reactor Shutdown: Dominion Learns Big Lesson From A Tiny 'Tin Whisker'*, The Day (Jul. 4, 2005)(available at: http://nepp.nasa.gov/whisker/reference/tech_papers/2005-dadonna-nuclear-reactor-shutdown.pdf) (last visited Oct. 20, 2014).

**B.**     **Lead-free solder cracks when repeatedly stressed by high temperatures.**

40.     The high-powered AMD GPU in the MacBook Pros creates a significant amount of heat when in use. The AMD GPU in the MacBook Pros is powerful because it contains a large number of transistors, which allow it to perform more calculations per second than a processor with fewer transistors. Switching a transistor on or off requires electric current. Thus, the more transistors there are in a GPU, the more current is necessary to power the GPU. Because GPUs are not perfectly efficient, some of the electric current used to power a GPU's transistors is lost as heat, which escapes into the surrounding environment.

41.     In a laptop, all of the componentry is bundled tightly together, which restricts the airflow needed for cooling. The problem of lack of airflow in laptops is aggravated in the MacBook Pros because the computer's aluminum enclosure contains very few vents for hot air to escape. Thus, when the AMD GPU is activated in the Affected MacBook Pro Laptops, the internals of the laptop can reach extremely high temperatures.

42.     The problem of heat is exacerbated by the excessive use of thermal paste in the GPUs. Thermal paste is used to allow heat-generating components, like a GPU, to dissipate heat to a heat sink attached to the logic board. When too much thermal paste is used, however, it can actually diminish the computer's ability to dissipate heat. This problem was noted the day after the MacBook Pros went on sale. *See, e.g.,* John Brownlee, *iFixIt's 2011 MacBook Pro Teardown: Better Repairability, But May Be Prone To Overheating* (available at: http://www.cultofmac.com/83649/ifixits-2011-macbook-pro-teardown-better-repairability-but-may-be-prone-to-overheating/) (last

visited Feb. 25, 2011) ("We uncovered gobs of thermal paste on the CPU and GPU when we removed the main heat sink. The excess paste may cause overheating issues down the road, but only time will tell.")

43. High temperatures in the MacBook Pros caused by the operation of the AMD GPU, the lack of ventilation, and the misapplication of thermal paste, heats up the lead-free solder connecting the AMD GPU to the logic board. The heat itself, or the rapid cycling of temperature caused by the intermittent activation of the AMD GPU, stresses the brittle lead-free solder connecting the GPU to the logic board and eventually causes it to crack. A crack in the lead-free solder between the GPU and the logic board disrupts the flow of data between the GPU and the logic board, which causes the Graphics Defect and, eventually, total failure of the MacBook Pros.



44. Apple has long known about the risks of GPU defects due to solder-related failures in MacBook Pro Laptops. Indeed, the 2008 MacBook Pro suffered from a nearly identical Graphics Defect, which led to a recall by Apple.

45. Defendant also knew or should have known that the Graphics Defect was bound to recur in the MacBook Pros because they use the same lead-free solder and

1   aluminum enclosure as the 2008 MacBook Pro laptops, and contain an even more

2   powerful and hotter-running GPU.

3        46.     Despite knowing of these defects in the MacBook Pros, Defendant never

4   notified owners or purchasers of the MacBook Pros of the defect or provided a workable

5   solution.

6   **V.    Apple's Inadequate Response To The Graphics Defect**

7        47.     From the time the MacBook Pros went to market to this day, tens of

8   thousands of online complaints posted by Class members show that Apple's purported

9   "graphical stability" update did nothing to remedy the Graphics Defect. A 2013

10  discussion thread regarding the Graphics Defect on Apple's forums is still active and has

11  received 7,865 replies and more than one million page views. Discussions.apple.com,

12  *2011 MacBook Pro and Discrete Graphics Card*, (Feb. 1, 2013),

13  https://discussions.apple.com/thread/4766577?tstart=0 (last visited Aug. 21, 2014).

14       48.     Dozens of journalists and technology websites have reported on the

15  issue.[13]

16

17

18  _____

19  [13] *See, e.g.,* http://geeksided.com/2014/08/17/recent-macbooks-suffering-hardware-failures-apple-wont-help/; http://appleinsider.com/articles/14/08/12/apple-ignores-calls-to-fix-2011-macbook-pro-failures-as-problem-grows; http://www.zdnet.com/petition-about-apple-macbook-pro-failures-passes-10000-signatures-7000032751/; http://www.macworld.com/news/mac/petition-demands-apple-fix-macbook-pro-graphics-woes-3537300/; http://www.itpro.co.uk/macs/22911/macbook-pro-bug-prompts-ongoing-complaints-for-apple; http://www.macrumors.com/2014/08/21/lawsuit-2011-macbook-pro-graphics/; http://www.maclife.com/article/news/law_firm_could_sue_over_2011_macbook_pro_issues http://appleinsider.com/articles/14/05/13/apple-remains-mum-as-complaints-mount-over-2011-macbook-pro-gpu-failures; http://www.digitaltrends.com/computing/suddenly-bunch-early-2011-macbook-pro-owners-running-video-problems/; http://www.cultofmac.com/262861/early-2011-macbook-pros-dropping-like-flies-heat-issues-blame/; http://modmyi.com/content/12490-gpu-failure-issues-surface-apple-s-early-2011-macbook-pro-lineup.html; http://www.fudzilla.com/home/item/33702-more-

49.     Similarly, an active and growing Facebook group dedicated to that Graphics Defect called "2011 MacBook Pro and Discrete Graphics Issue" has over 4,000 members.

50.     Apple has failed to repair the Graphics Defect because there is no easy fix. At best, Apple can replace the MacBook Pro's logic board with an equally defective logic board. Many consumers are now on their third or fourth logic board from Apple.

51.     Consumers who brought their MacBook Pros in for service during the warranty were often told there was no detectable problem, or that the issue was due to water damage or software installed post-purchase. At best, consumers were given a new and equally defective logic board. The logic board is a laptop's main circuit board, and it contains the central processing unit, the GPUs, main system memory, and circuitry that controls the disk drive. The reason Apple replaced the entire logic board instead of the GPU, which is the source of the defect, is because the GPU is soldered to the logic board, and it is more time consuming and costly to repair a defective GPU than it is to have an

gpu-failures-on-macbook-pros; http://www.maclife.com/article/news/some_2011_macbook_pros_suddenly_suffering_screen_glitches_crashes; http://www.republika.co.id/berita/trendtek/gadget/14/01/17/mzjp4q-lagi-macbook-pro-dilaporkan-alami-kegagalan-sistem  http://www.webnews.it/2014/01/17/macbook-pro-2011-gpu/?ref=post   http://www.rajalanetti.com/show/id/31848;   http://www.slidetomac.com/macbook-pro-2011-problemi-alla-gpu-79250.html; http://www.melablog.it/post/127053/macbook-pro-2011-casi-di-malfunzionamento-della-gpu-sempre-piu-numerosi;   http://www.cnbeta.com/articles/269003.htm   http://www.saggiamente.com/2014/01/17/problemi-alla-gpu-sui-macbook-pro-del-2011-ecco-cosa-bisogna-sapere/; http://appleinsider.com/articles/13/10/14/apples-2011-macbook-pro-lineup-suffering-from-sporadic-gpu-failures;   http://www.mactrast.com/2013/10/owners-early-2011-macbook-pro/;   http://arstechnica.com/apple/2011/03/latest-macbook-pros-suffering-from-gpu-related-freezes/;   http://modmyi.com/content/12490-gpu-failure-issues-surface-apple-s-early-2011-macbook-pro-lineup.html;   http://wallstcheatsheet.com/stocks/a-bunch-of-sour-apples-stem-from-2011-macbook-pro-glitch.html/?a=viewall

entire logic board assembled. As a result, consumers who would have returned their MacBook Pros had they known that the Graphics Defect was systemic, received inadequate warranty service and a logic board that was inherently defective.

52.     Many Class members have had the GPUs on their Affected MacBook Pro replaced numerous times, only to find that the Graphics Defect again manifests.

a.   "I brought it to the Apple store 3 weeks after I purchased it. I showed them screenshots [below] of what happens, and I said that it obviously needs a new GPU or something . . . . they gave me the laptop back and said nothing was wrong and tried to imply I was making it up."

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjsw3yj.



b.   "This same problem happened on my girlfriend's mbp. She had to return to the store 6 times before they eventually replaced the laptop. The customer service was terrible and each time the genius said "that should be fixed now" this included various resets and reinstalls which we had already tried to no avail as well as a new logic board which also had the

same issue. Apple at no point gave an explanation to what it may be and the guys at the bar just thought it was "strange" we had photo and video evidence of the fault.

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjskn2m.

c.   "I had a 2011 MBP with this issue. The Logicboard was replaced 4 times, and the issue persisted. YESTERDAY I brought it back for a 5th time. The genius replaced it with a brand new retina display model."

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjskvce.

d.   "This hit mine a year ago, just a few months out of the two year warranty . . . . I ended up paying ~$700 for a logic board replacement.

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjsztq9.

53.   Tellingly, Apple has issued recalls for this very same defect when it is economically convenient. Indeed, the 2011 iMac desktop computers, which contain the same line of AMD GPUs, also manifested the Graphics Defect. However, the AMD GPUs in the iMacs could be swapped out by hand because they were not soldered to the logic board as they are with the MacBook Pros. Accordingly, replacing the GPU on an iMac costs far less than it does for the MacBook Pros. As a result, when the Graphics Defect manifested in the 2011 iMacs, Apple issued a recall and replaced every iMac's AMD GPU. *See* MacRumors, *Apple Initiates Graphic Card Replacement Program for*

*Mid-2011 27-inch iMac* (Aug. 16, 2013) (available at

http://www.macrumors.com/2013/08/16/apple-initiates-graphic-card-replacement-

program-for-mid-2011-27-inch-imac/) (last visited Aug. 22, 2014).

54. Because the purported "graphical stability" fix and warranty repairs

offered by Apple failed to remedy the Graphics Defect, Plaintiffs and Class Members

purchased a computer they would have never bought had they been informed of the

Graphics Defect and now are unable to use their 2011 MacBook Pro Laptops. As a result,

the groundswell of complaints about the Graphics Defect that affects all of the 2011

MacBook Pro Laptops has continued. Indeed, a petition on change.org to Apple's chief

executive officer, Timothy D. Cook, which was posted more than 2 years after

announcement of the "graphical stability" fix, has received 10,827 signatures. *Petitioning*

*Timothy D. Cook, Replace or Fix All Early 2011 Macbook Pro with Graphics Failure*,

change.org (Dec. 1, 2013), https://www.change.org/p/timothy-d-cook-replace-or-fix-all-

early-2011-macbook-pro-with-graphics-failure (last visited Aug. 21, 2014).

55. Defendant warranted that the MacBook Pros would be free from defects in

material and workmanship that occur under normal use during the warranty period.

56. Specifically, Defendant provided a "Limited Warranty" that warrants the

product "against defects in materials and workmanship when used normally in

accordance with Apple's published guidelines for a period of ONE (1) YEAR from the

date of original retail purchase by the end-user purchaser." As stated above, and as

described more fully below, the MacBook Pros have a known defect in the physical

interface between the graphics processing hardware and the logic board. Though fully

aware of the Graphics Defect, Apple has refused to adequately repair or replace

Plaintiffs' MacBook Pros while under warranty. Defendant has refused to repair or replace Plaintiffs' MacBook Pros in spite of the warranty, and has claimed to Plaintiffs and Class members that their laptops are free from defects.

57.    As a result, Plaintiffs and all other Class members suffered actual damages when they purchased MacBook Pros, which are unreliable or unusable as personal computing devices, contrary to Defendant's representations. Furthermore, Plaintiff and the Class have suffered or will suffer damages in the form of, *inter alia*, out-of-pocket expenditures for repairs and attempted repairs of the MacBook Pros as a direct and proximate result of the Graphics Defects, which was known by Defendant to be present in their products. Moreover, Plaintiff and the Class have suffered or will suffer damages in the form of diminished value of the MacBook Pros as a direct and proximate result of the Graphics Defect. Finally, Plaintiff and the Class have suffered or will suffer damages inasmuch as they did not get the benefit of the bargain as a direct and proximate result of the Graphics Defect which the Defendant has been unable to remedy under its Warranty.

58.    Had Plaintiff and the Class known of the Graphics Defect at the time of purchase, they would not have purchased the MacBook Pros or they would not have purchased them at the premium price for which they were sold.

59.    Because of the relatively small size of the typical individual Class member's claims, it is unlikely that individual Class members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

60.     Defendant knew that Plaintiff and Class members would rely on Defendant's representations, marketing, and warranties regarding the quality of the MacBook Pros and their graphics-processing capabilities.

61.     Plaintiffs and Class members relied on Defendant's representations, marketing, and warranties when purchasing the MacBook Pros.

**FACTS SPECIFIC TO NAMED PLAINTIFFS**

**I.      Plaintiff Zachary Book (California)**

62.     Plaintiff  Zachary Book purchased his MacBook Pro from Best Buy on January 28, 2012 – approximately 11 months after the MacBook Pro went on sale.

63.     While his MacBook Pro was within the one-year warranty period, Plaintiff Book experienced the Graphics Defect in the form of a series of "digital strokes" that caused his MacBook Pro's graphics to become distorted and garbled moments before the laptop would become unresponsive. These digital strokes would most typically occur when the laptop was running graphically-intensive applications. On October 1, 2013, outside of the warranty period, a "digital stroke" caused the total failure of Plaintiff Book's MacBook Pro. Plaintiff Book took his laptop to Apple for repairs. Apple incorrectly diagnosed the issue, and replaced the laptop's hard drive and charging hardware at a cost of $174.01 to Plaintiff Book.

64.     The repairs did not remedy the issue, and Plaintiff Book again scheduled an appointment with Apple and took his laptop in to an Apple Store on October 21, 2013. Plaintiff Book continued experiencing issues and took his MacBook Pro in to the Apple Store on November 8, 2013, and again on November 11, 2013.

65.     On November 19, 2013, Plaintiff Book's MacBook Pro again failed due to the Graphics Defect. Apple replaced the logic board on Plaintiff Book's laptop at a cost of $255. However, Apple gave Plaintiff Book a rebate of $100 because, which reduced his total payment to $164.45.

66.     On November 9, 2013, Plaintiff Book's laptop again failed due to the Graphics Defect. Apple replaced Plaintiff Book's logic board for $264.45, $100 of which was credited to Plaintiff Book due to the numerous past issues he had experienced.

67.     Despite the logic board replacement, the problem persisted, and Plaintiff Book returned to Apple to report on his continued issues on December 28, 2013. Apple repair technicians suggested that the issue was caused by the plug-in power adapter and sold Plaintiff Book a new adapter for $86.11. The adapter did not remedy the issue, and Plaintiff Book continued to experience the Graphics Defect.

68.     On March 17, 2014, Plaintiff Book's MacBook Pro again manifested the Graphics Defect and ceased functioning entirely. Apple again replaced Plaintiff Book's logic board and charging hardware, and prepared an invoice for repairs that totaled $536,73, which Apple eventually waived after Plaintiff Book complained directly to Apple's customer support hotline.

69.     To this day, Plaintiff Book's MacBook Pro continues to suffer from the Graphics Defect, which has necessitated the purchase of a new laptop by Plaintiff Book.

**II.     Plaintiff Donald Cowart (California)**

70.     Plaintiff Donald Cowart purchased his MacBook Pro on May 25, 2012—more than a year after the MacBook Pros came to market. Plaintiff Cowart paid approximately $2,500 for his laptop.

71.     Plaintiff Cowart has exclusively used Apple computers since approximately 1987, and reports that his MacBook Pro "was a total dud since I've had it." Plaintiff Cowart typically uses his MacBook Pro connected to an external monitor, which requires use of the AMD GPU.

72.     Within months of purchasing his laptop, programs on Plaintiff Cowart's laptop started randomly failing during use. From very early on, Plaintiff Cowart experienced software instability and graphical anomalies.

73.     Plaintiff Cowart took his laptop to Apple for the first time in August 2013, months after the issues began manifesting. Apple employees informed him that the issue was related to software conflicts. As a result, Plaintiff Cowart spent dozens of hours uninstalling and reinstalling software per Apple's instructions. None of the software fixes recommended by Apple resolved the issues he was experiencing.

74.     Plaintiff Cowart again took his laptop to Apple for repairs in October 2013. Again, Apple had no fix for the issue.

75.     Plaintiff Cowart took his laptop in to Apple again in November 2013 because programs were constantly crashing. Apple was unable to fix the issues he was experiencing.

76.     On May 7, 2014, Plaintiff Cowart again took his laptop in to Apple. Apple diagnosed the issue as one having to do with software permissions. Apple technicians restored Plaintiff Cowart's laptop from a backup drive in an attempt to remedy the issue. The restoration did nothing to remedy the issues Plaintiff Cowart was experiencing.

77.     In September 2014, Plaintiff Cowart took his MacBook Pro to a repair shop that performs circuit board repairs. The repair shop inspected Plaintiff Cowart's

logic board and found that the lead-free solder between the GPU and the logic board had cracked at numerous points—i.e., Plaintiff Cowart's Laptop is suffering from the Graphics Defect.

78.     Plaintiff Cowart's MacBook Pro remains unstable and barely operable to this day.

### III.   Plaintiff John Manners (Florida)

79.     Plaintiff John Manners purchased his MacBook Pro on March 1, 2011 at a cost of $1,817.93.

80.     In June 2011, Plaintiff Manners experienced the Graphics Defect. Plaintiff Manners took his MacBook Pro to the Apple store and was asked to reproduce the Graphics Defect in the store. He was unable to do so. As a result, Apple did nothing to repair his laptop. Plaintiff Manners continued to experience the Graphics Defect until February 2013, when the Graphics Defect caused his MacBook Pro to become completely inoperable. Apple charged Plaintiff Manners $331.70 for a logic board replacement.

## CLASS ALLEGATIONS

81.     Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated as Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes and sub-classes:

    a.  <u>California Class</u>: All persons or entities in the State of California who purchased a 2011 MacBook Pro with an AMD GPU and have experienced the Graphics Defect.

    b.  <u>Florida Class</u>: All persons or entities in the State of Florida who purchased a 2011 MacBook Pro with an AMD GPU.

c. <u>Florida Subclass</u>: All persons or entities who purchased a 2011 MacBook Pro with an AMD GPU in the State of Florida and paid for labor, materials, and/or parts in connection with the Graphics Defect.

82.    Excluded from the Classes and Subclass are Defendant and its officers, directors and employees; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs and assigns of Defendant; any federal, state, or local government entity; and any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Claims for personal injury and consequential damages are excluded.

83.    Questions of law and fact are common to the Class and Subclass and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of the litigation:

a. Whether the 2011 MacBook Pro Laptops suffer from a common design defect;

b. Whether Defendant failed to disclose material information to members of the Class;

c. Whether Defendant's omission of material fact is misleading or reasonably likely to deceive a reasonable consumer;

d. Whether Defendant's purported software update to address "graphical stability" resolved the Graphics Defect;

e. Whether, by its misconduct as set forth herein, Defendant has engaged in unlawful or fraudulent business practices;

f.   Whether members of the Classes and Subclass have been injured by Defendant's misconduct;

g.   Whether as a result of Defendant's misconduct, Plaintiffs and other members of the Classes and Subclass are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

h.   Whether the 2011 MacBook Pros have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

i.   Whether Defendant's express warranty fails of its essential purpose;

j.   Whether Defendant breached its express warranty;

k.   Whether Defendant breached the implied warranty of merchantability;

l.   Whether Defendant knew of and failed to warn of the Graphics Defect; and

m.   Whether Defendant failed to properly disclaim any limitation to pay for repairs or replacement of the MacBook Pros.

84.   The claims of Plaintiffs are typical of the claims of the Classes and Subclass.  Plaintiffs have no interests antagonistic to those of the Classes and Subclass, and Defendant has no defenses unique to the Plaintiffs.

85.   Plaintiffs will protect the interests of the Classes and Subclass fairly and adequately, and Plaintiffs have retained attorneys experienced in complex class action litigation.

86.   A class action is superior to all other available methods for this controversy because (i) the prosecution of separate actions by the members of the Classes

and Subclass would create a risk of adjudications with respect to individual members of the Classes and Subclass that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by members of the Classes and Subclass would create a risk of inconsistent or varying adjudications with respect to the individual members of the Classes and Subclass, which would establish incompatible standards of conduct for Defendant; (iii) Defendant acted or refused to act on grounds generally applicable to the Classes and Subclass; and (iv) questions of law and fact common to the Classes and Subclass predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

87.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

88.     The nature of notice to the proposed class is contemplated to be by direct mail/e-mail upon certification of the class or, if such notice is not practicable, by the best notice practicable under the circumstance including, but not limited to, publication in major newspapers and on the internet.

**FIRST CAUSE OF ACTION**
**Asserted On Behalf of the Florida Class and the Florida Subclass**
**(Violation of Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq.*)**

89.     Plaintiff Manners incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

90.     Plaintiff Manners brings this Count on behalf of the Florida Class and the Florida Subclass.

91.     Plaintiff Manners is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

92.     Apple is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

93.     The 2011 MacBook Pros are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

94.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

95.     Apple's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The MacBook Pros implied warranties are covered under 15 U.S.C. § 2301(7).

96.     Apple breached these warranties as described in more detail above. Without limitation, the MacBook Pros are equipped with the AMD GPUs and manufactured with the defective lead-free solder. The MacBook Pros share a common design defect in that the AMD GPU and computer fails to operate as represented by Apple.

97.     Plaintiff Manners and other members of the Florida Class and Florida Subclass have had sufficient dealings with either Apple or its agents (resellers and technical support) to establish privity of contract between Apple, on the one hand, and Plaintiff Manners and each of the other Florida Class and Florida Subclass members on the other hand. Nonetheless, privity is not required here because Plaintiff Manners and each of the other Florida Class and Florida Subclass members are intended third-party beneficiaries of contracts between Apple and its resellers, and specifically, of Apple's

warranties. The warranty agreements were designed for and intended to benefit the consumers only.

98.     Affording Apple a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. In fact, Plaintiff Manners has already given Apple the opportunity to cure its breaches, and Apple has failed, after numerous attempts, to cure the defects. At the time of sale or lease of each MacBook Pro, Apple knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the MacBook Pros' ability to perform as warranted, but nonetheless failed to rectify the situation or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirements that Plaintiffs resort to an informal dispute resolution procedure or afford Apple a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

99.     Plaintiff Manners and the other Florida Class and Florida Subclass members would suffer economic hardship if they returned their MacBook Pros but did not receive the return of all payments made by them. Because Apple is refusing to acknowledge any revocation of acceptance and return immediately all payments made, Plaintiff Manners and the other Florida Class and Florida Subclass members have not re-accepted their MacBook Pros by retaining them.

100.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

101.    Plaintiff Manners, individually and on behalf of the other Florida Class and Florida Subclass members, seeks all damages permitted by law, including diminution in value of the MacBook Pros, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Asserted On Behalf Of The California Class
**(Breach of Implied Warranty, Song-Beverly Consumer Warranty Act,  CAL. CIV. CODE §§ 1792 *et seq.*)**

102.    Plaintiffs Book and Cowart, individually, on behalf of all others similarly situated and the general public of the State of California, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

103.    Under California's Song-Beverly Consumer Warranty Act, Civ. Code §§ 1792 *et seq.*, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable.

104.    The MacBook Pros are "consumer goods" under Cal. Civ. Code § 1791(j).

105.    Defendant is both a "manufacturer" and a "retailer" under Cal. Civ. Code § 1791(j).

106.    Plaintiffs Book and Cowart bought, at retail, A 2011 MacBook Pro in the State of California.

107.    By operation of law, Defendant impliedly warranted to Plaintiff and all other Class members who purchased a 2011 MacBook Pro at retail in the State of California that the 2011 MacBook Pro laptops were of merchantable quality and fit for the ordinary purposes for which the MacBook Pro laptops are used.

108.    Defendant breached its implied warranties because the MacBook Pros contained an unseen defect at the point of sale that render the product unmerchantable from the outset. Had the Graphics Defect been known, the MacBook Pros would have been discarded as not being of the quality described in Apple's Warranty. Because of the Graphics Defect, the MacBook Pros were plagued by problems that manifested within the warranty period and eventually caused total failure of the MacBook Pros.

109.    As a proximate result of Defendant's breach of implied warranties, Plaintiffs Book and Cowart and all other California Class members who purchased a 2011 MacBook Pro, at retail, in the State of California have sustained damages and other losses in an amount to be determined at trial. Plaintiffs Book and Cowart and the other California Class members are entitled to recover damages as provided by statute, costs, attorney's fees, rescission, and other relief as is deemed appropriate.

110.    Any purported disclaimer or limitation of the Implied Warranty of Merchantability on the part of Defendant is unconscionable and unenforceable because, *inter alia*, Defendant knew that the MacBook Pros suffer from the Graphics Defect.

### THIRD CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class
### (Failure to Warn, Florida Deceptive and Unfair Trade Practices Act –
### Fla. Stat. §§ 501.201 *et seq.*)

111.    Plaintiff Manners incorporates by reference each preceding paragraph as though fully set forth herein.

112.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. (hereinafter referred to as "FDUTPA"). The stated purpose of FDUTPA is to "protect the consuming . . . from those

who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

113.    Plaintiff Manners and all members of the Florida Class and the Florida Subclass are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by the Florida Statutes § 501.203(7) and (8) respectively.

114.    As described herein, Apple knew, or by the exercise of reasonable care should have known, that the MacBook Pros would have and had the alleged Graphics Defects.

115.    Apple knew that the Florida Plaintiff and the other members of the Florida Class and the Florida Subclass, who used the MacBook Pros for their intended use, were members of a foreseeable class of persons who were and are at risk of suffering inconvenience and expense solely because of the Graphics Defect.

116.    At the time Apple manufactured, distributed and/or sold the 2011 MacBook Pros, it owed a non-delegable duty to persons like the Florida Plaintiff and the other members of the Florida Class and the Florida Subclass to exercise ordinary and reasonable care to properly design the MacBook Pros, and it owes a continuing duty to warn about the problem and to repair and/or recall the MacBook Pros.

117.    Apple had a pre-sale duty to warn potential purchasers that the Affected MacBook Laptops carried with them greater risks of graphical defects, system instability, and system failure, than an ordinary consumer would expect when using the 2011 MacBook Pros in their intended or reasonably-foreseeable manner.

118.     Apple failed to use appropriate design, engineering, and parts in manufacturing the 2011 MacBook Pros, and in other respects, Apple breached its duties by being wantonly reckless, careless, and negligent.

119.     Defendant violated FDUTPA by engaging in the unfair and deceptive actions and/or omissions as described herein when it manufactured, distributed, marketed and sold the 2011 MacBook Pros that it knew contained material defects which were not adequately disclosed to the consuming public. Defendant expressly and impliedly represented that the 2011 MacBook Pros were dependable; suitable for ordinary use; and of good workmanship, material and design, and free from material defects. In fact, the 2011 MacBook Pros possess the Graphics Defect. Defendant concealed and failed to disclose these adverse material facts to Plaintiffs and members of the Florida Class and the Florida Subclass.

120.     Defendant knew or should have known that the 2011 MacBook Pros were defectively designed and/or manufactured due to the Graphics Defect, which results in unstable and ultimately inoperable computers that result in severe inconvenience and costs for repair and/or replacement.

121.     Despite Apple's knowledge that the 2011 MacBook Pros possessed the Graphics Defect, Apple continued to market, manufacture, distribute and sell the 2011 MacBook Pros to consumers, including Plaintiff and the Florida Class and the Florida Subclass, without adequate disclosure of the inherent Graphics Defect.

122.     Defendant's acts and omissions in, among other things, distributing, marketing and/or selling to consumers a product known to contain a material defect that affects that stability, usability, and durability of the 2011 MacBook Pros, are

unconscionable, deceptive and unfair acts and practices in the Conduct of Defendant's trade or commerce, in violation of the FDUTPA.

123.    Defendant's acts and omissions in, among other things, failing to provide consumers with adequate warnings about the Graphics Defect with the 2011 MacBook Pros are unconscionable, deceptive and unfair acts and practices in the conduct of Defendant's trade or commerce, in violation of the FDUTPA.

124.    Defendant's concealment of the Graphics Defect in the 2011 MacBook Pros constitutes deceptive and unfair trade practices because Defendant knew such facts would be unknown and not easily discoverable by Plaintiff and Class Members and would contravene their ordinary, foreseeable and reasonable expectations concerning the performance of the 2011 MacBook Pros. Plaintiff and other Class members were reasonably deceived by Defendant's unfair and deceptive practices to their detriment.

125.    As a direct result of Apple's failure to adequately warn consumers of the Graphics Defect in the 2011 MacBook Pros, Plaintiff Manners and the Florida Class and the Florida Subclass have suffered damages as set out herein.

126.    As a direct and proximate result cause of the violation of the FDUTPA, described above, Plaintiff Manners and the Florida Class and the Florida Subclass members have been injured in that they own 2011 MacBook Pros based on Defendant's failure to disclose the material facts alleged above.

127.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the FDUTPA. Plaintiff Manners and the Florida Class and Florida Subclass members have suffered actual damages for which they are entitled to relief pursuant to Fla. Stat. 501.211(2).

128.    Defendant's unlawful conduct is continuing, with no indication that it will cease.

129.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff Manners and the Florida Class and Florida Subclass members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiff Manners and the Florida Class and the Florida Subclass members seek equitable relief and to enjoin Apple on the terms that the Court considers reasonable, and reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class
### (Breach of Express Warranty)

130.    Plaintiff Manners incorporates by reference each preceding paragraph as though fully set forth herein.

131.    Apple made affirmations of fact and promises to Plaintiffs and members of the Florida Class which related to the 2011 MacBook Pros  as more fully described herein.

132.    These affirmations of fact and promises created an express warranty that the 2011 MacBook Pros would conform to Apple's affirmations and promises.

133.    Apple uniformly warranted all of the 2011 MacBook Pros against defects in material or workmanship at a time when it knew that the 2011 MacBook Pros suffered from serious defects and, nevertheless, continued to market and sell the 2011 MacBook Pros with this express warranty.

134.   Apple is obligated under the terms of its warranty to repair or replace the 2011 MacBook Pros sold to Plaintiff Manners and members of the Florida Class.

135.   Apple has breached its written warranty, as set forth above, by supplying the 2011 MacBook Pros in a condition which does not meet the warranty obligations undertaken by Apple and by failing to repair the Graphics Defect.

136.   As set forth above, Apple's warranty fails in its essential purpose and, accordingly, Plaintiff Manners and members of the Florida Class cannot and should not be limited to the remedies set forth in Apple's written warranty and, instead, should be permitted to recover all measures of appropriate relief.

137.   Apple has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Apple's knowledge of the defects in the 2011 MacBook Pros, Apple has failed and refused to honor its warranty, even though it knows of the defects inherent in the 2011 MacBook Pros.

138.   Plaintiff Manners and members of the Florida Class have given Apple a reasonable opportunity to cure its failures with respect to its warranty, and Apple has failed to do.

139.   Apple has failed to provide Plaintiff Manners and members of the Florida Class, as a warranty repair or replacement, a product that conforms to the qualities and characteristics that Apple expressly warranted when it sold the 2011 MacBook Pros to Plaintiff Manners and members of Florida Class.

140.   As a result of Apple's breach of warranty, Plaintiff Manners and members of the Florida Class have suffered damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Asserted On Behalf Of The Florida Class**
**(Fraudulent Concealment/Nondisclosure)**

141.    Plaintiff Manners incorporates by reference each preceding paragraph as though fully set forth herein.

142.    At all relevant times, Apple knew that the Defective MacBook Pro Laptops' suffered from the Graphics Defect and would fail in advance of their anticipated useful life under ordinary use and conditions. Defendant also knew that the anticipated useful life of a 2011 MacBook Pro was, at a minimum, four years.

143.    Defendant also knew that, because of the Graphics Defect, the Defective MacBook Pro Laptops would not perform as anticipated, particularly with respect to graphically intensive tasks.

144.    Defendant concealed information that the AMD GPUs were defectively soldered to the logic board and that a functioning and non-defective AMD GPU was necessary to achieve the promised results regarding graphical performance and the users' ability to use an external monitor, process photographs and video, and view high definition content.

145.    The concealed information is material in that a reasonable consumer would find it important when deciding whether to buy the 2011 MacBook Pros and, if so, how much to pay. All of the misrepresentations alleged herein are connected to and dependent on a functioning AMD GPU.

146.    Defendant was also and continues to be under a duty to Plaintiffs and the Florida Class to disclose these facts because:

a.  Defendant is in superior position to know the truth about the quality and nature of the 2011 MacBook Pros; and

b.  Defendant actively concealed from Plaintiffs and the Classes the fact that the 2011 MacBook Pros were and are defective at the point of sale and substantially likely to fail in advance of their anticipated useful life.

147.  Defendant fraudulently and intentionally concealed from and/or failed to disclose to Plaintiff Manners and the Florida Class members the facts  described above with the intent to defraud Plaintiff Manners and the Florida Class members and for the purpose of inducing Plaintiff Manners and the Florida Class members to act thereon by purchasing the more expensive 2011 MacBook Pros.  Defendant knew that Plaintiff Manners and the Florida Class members would not purchase or pay as much for the 2011 MacBook Pros if Defendants had disclosed the defective nature of the 2011 MacBook Pros and their AMD GPUs.

148.  Plaintiff Manners and the Florida Class members were unaware of the Graphics Defect and that the 2011 MacBook Pros were defective and prone to failure.

149.  Plaintiff Manners and the Florida Class members justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of the 2011 MacBook Pros. Had Defendant disclosed the true defective nature of the 2011 MacBook Pros, Plaintiff Manners and the Florida Class members would not have purchased, or would have paid less for, their laptops.

150.  As a direct and proximate cause of Defendant's misconduct, Plaintiff Manners and the Florida Class members have suffered actual damages in that they have or will have to continue to pay for repairs and/or replacements. Plaintiff Manners and the

Florida Class members have further suffered actual damages because the 2011 MacBook Pros are equipped with GPUs that prevent them from achieving the graphical performance promised and will fail well in advance of their anticipated useful life. Plaintiff Manners and the Florida Class members have also suffered unreasonable diminution in value of the 2011 MacBook Pros as a result of Defendant's misconduct.

151.    Defendants' misconduct has been and is wanton and/or reckless and/or shows a reckless different to the interests of others.

## **DECLARATORY RELIEF**

152.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

153.    Defendant has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

154.    Plaintiffs seek a declaration that:

a.  The MacBook Pros have a Graphics Defect which results in premature failure;

b.  Defendant's warranty fails of its essential purpose;

c.  Certain provisions of Defendant's warranty are void as unconscionable;

d.  Defendant must notify owners of the MacBook Pros;

e.  Defendant will reassess all prior warranty claims and pay the full costs of repairs and damages; and

f.   Defendant will pay the costs of inspection to determine whether any Class Members MacBook Pros require replacement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated in California and the District of Columbia, prays the Court enter judgment against Apple as follows:

a.   Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

b.   Issue a permanent injunction or other appropriate equitable relief requiring Defendant to establish a common fund for repairs for, or replacement of, the MacBook Pros;

c.   Order Defendant to pay Plaintiffs and other Class and Subclass members an amount of actual, statutory, and punitive damages, and restitution in an amount to be determined at trial, and where allowed by law;

d.   Issue an order granting Plaintiffs' reasonable costs and attorneys' fees;

e.   Grant such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: October 24, 2014                    Respectfully submitted,

By:   _____*/s/ Michael F. Ram*_____
Michael F. Ram (SBN 104805)
RAM, OLSON, CEREGHINO
 & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Telephone:  415-433-4949
Facsimile: 415-433-74311
Email:  mram@rocklawcal.com

/ / /

Gary E. Mason (to be admitted *pro hac vice*)
Steven N. Berk (to be admitted *pro hac vice*)
Esfand Nafisi (to be admitted *pro hac vice*)
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste. 1605
Washington, DC  20036
Tel:  202-429-2290
Email:  GMason@wbmllp.com
Email:  sberk@wbmllp.com
Email:  enafisi@wbmllp.com

*Attorneys for Plaintiff*