Michael F. Ram (SBN 104805)
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Tel:  415-433-4949
Fax:  415-433-74311
Email: mram@rocklawcal.com

Gary E. Mason (*pro hac vice*)
Steven N. Berk (to be admitted *pro hac vice*)
Esfand Y. Nafisi (*pro hac vice*)
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste. 605
Washington, DC  20036
Tel:  202-429-2290
Email:  gmason@wbmllp.com
Email:  sberk@wbmllp.com
Email:  enafisi@wbmllp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ZACHARY BOOK**, **DONALD COWART**, **JOHN MANNERS**, **LORI ASHBAUGH, JESSICA CHANDLER, MICHAEL GHEZZI, THOMAS GAROFALO, HOLLY FOURNIER, ADAM MILES**, **JONATHAN ROWE, LOUIS RAMOS,** and **JENNIFER ROBERTS**, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>**APPLE, INC.,**<br><br>DEFENDANT. | **CIVIL ACTION NO. 5:14-CV-04746-EJD**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, Zachary Book, Donald Cowart, John Manners, Lori Ashbaugh, Jessica

Chandler, Michael Ghezzi, Holly Fournier, Adam Miles, Jonathan Rowe, Louis Ramos,

1   and Jennifer Roberts, by and through their undersigned counsel, on behalf of themselves

2   and all other persons and entities similarly situated, allege:

3                              **NATURE OF THE ACTION**

4          1.     On February 24, 2011, Apple unveiled new models of its premium fifteen-

5   and seventeen-inch MacBook Pro laptops (hereafter, the "2011 MacBook Pros" or the

6   "Laptops"), promising graphical performance **three-times faster** than the 2010 models

7   when running graphically intensive programs. What Apple did not disclose was that

8   achieving these graphical feats caused the laptops to run so hot that the solder attached to

9   the Laptops' high-powered graphics processor would deform and crack, causing

10  graphical anomalies and, eventually, total system failure (hereafter, the "Graphics

11  Defect"). *See* Figure 1 below.

12

13                                  **FIGURE 1**



2.     All 2011 MacBook Pros were sold in this defective condition, and many

Laptops manifested fatal defects just days after purchase and many more yet within the

one-year express warranty provided by Apple. As soon as the 2011 MacBook Pros went

on sale, a firestorm of complaints erupted on Apple's discussion forums by consumers

whose Laptops were manifesting the Graphics Defect and, in some cases, total system failures.

3.     Less than a month after the 2011 MacBook Pros went on sale, Apple, in its first effort to quell thousands of complaints and staunch the flow of failed Laptops streaming into Apple stores, hastily released a software update specific to the 2011 MacBook Pro Laptops that was intended to remedy the graphical issues that plagued the Laptops. The software update did not solve the problem. In subsequent updates, Apple surreptitiously decreased the graphical performance capabilities of the laptops in order to reduce the laptops' operating temperature and, hence, the failure rate of the solder attached to the graphics processor. These secret performance downgrades only served to delay the manifestation of the Graphics Defect until the Laptops were outside of Apple's warranty period. But in all Laptops, these downgrades reduced the value of the Laptops by diminishing their graphical performance by 33%.

4.     To date, tens of thousands of frustrated and disappointed customers have aired grievances regarding the 2011 MacBook Pro laptops online on websites like Apple's discussion forums,[1] Facebook,[2] Reddit,[3] and change.org,[4] where more than 35,000 individuals have signed a petition asking Apple's CEO Timothy Cook to fix or replace their defective 2011 MacBook Pros. Similarly, a survey posted online by Plaintiffs' counsel received nearly three thousand responses from 2011 MacBook Pro owners in less than a week. At their core, the stories are the same: the 2011 MacBook Pro

---

[1] https://discussions.apple.com/thread/4766577?tstart=0
[2] https://www.facebook.com/groups/2011mbp/
[3] http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/
[4] https://www.change.org/p/timothy-d-cook-replace-or-fix-all-2011-macbook-pro-with-graphics-failure

laptops' graphics become unusably distorted, and the graphical distortions are soon followed by software instability, system freezes and total system failure.

5.      For consumers whose 2011 MacBook Pros manifested the Graphics Defect under Apple's one-year warranty, Apple would, in some cases, require consumers to replicate the Graphics Defect on the spot, denying warranty service if the defect, which initially manifests sporadically, could not be replicated in the store. In cases where the Graphics Defect could be reproduced in front of an Apple technician (either through distortion on the screen or an inoperable laptop), Apple's sole remedy was to replace the Laptop's entire main circuit board (the "logic board") to which the graphics processor attached. A new logic board, however, did not fix the problem because the replacement logic boards contained the same parts and were manufactured using the same solder, which would again crack and cause the Laptops to fail, sometimes in a matter of days. Scores of owners reported that even after receiving multiple replacement logic boards from Apple, their systems continued to exhibit the Graphics Defect and crash or fail, turning their computers into $3,000 "paperweights."

6.      A small number of consumers whose Laptops manifested the Graphics Defect outside of Apple's one-year warranty received newer, non-defective MacBook Pro laptops. Others received free repairs. Most, consumers, however, have not benefited from Apple's secret recall and have been left with either broken Laptops or costly and ultimately ineffective repairs. Outside of the warranty period, a replacement logic board, which can cost between $350 and $600, is the only option that Apple offers for its inherently defective product. Because the Graphics Defect has been so widespread, Apple has reportedly run out of new logic boards and is now recycling logic boards from

laptops that have previously failed due to the Graphics Defect. Consumers who are aware of the endemic defect in the 2011 MacBook Pro laptops are understandably hesitant to spend hundreds of dollars on an out-of-warranty repair that simply swaps out a non-functional and defective part with a temporarily functional but equally defective replacement. Additionally, a cottage industry of 2011 MacBook Pro repair services has developed around the Graphics Defect, through which consumers can obtain repairs that are reportedly far more durable than Apple's own repairs.

7.    Apple has also failed to reimburse owners for out of pocket repairs and has surprisingly ignored the claims of the thousands of customers who, in many cases, complained directly to Apple CEO Tim Cook, and paid for the out of pocket repairs when they failed to obtain a response from Apple.

8.    This case seeks redress for owners of these defective 2011 MacBook Pro laptops. It is a last resort as other methods of obtaining a solution have failed.

9.    Plaintiffs assert claims against Defendants under the California Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*, California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL"), False Advertising Law ("FAL"), Bus. & Prof. Code § 1760, *et seq.*, Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. §§ 501.201 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, the Vermont Consumer Protection Act ("VCPA"), Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*, and consumer protection laws of the states of residence of Plaintiffs and the Class, and constitute breach

1  of express warranty, breach of implied warranty, and fraudulent

2  concealment/nondisclosure.

3  **PARTIES**

4  10.    Plaintiff Lori Ashbaugh is, and at all times relevant hereto has been, a

5  citizen and resident of Illinois. Plaintiff Ashbaugh received a seventeen-inch 2011

6  MacBook Pro Laptop in exchange for a defective MacBook Pro Laptop from Apple in

7  Illinois in 2011.

8  11.    Plaintiff Zachary Book is, and at all relevant times has been, a citizen and

9  resident of California. Plaintiff Book purchased a fifteen-inch 2011 MacBook Pro laptop

10  in California in January 2012.

11  12.    Plaintiff Jessica Chandler is, and at all relevant times has been, a citizen

12  and resident of California. Plaintiff Chandler purchased a fifteen-inch 2011 MacBook Pro

13  Laptop in California in July 2011.

14  13.    Plaintiff Donald Cowart is, and at all relevant times has been, a citizen and

15  resident of California. Plaintiff Cowart purchased a seventeen-inch 2011 MacBook Pro

16  laptop in California in May 2012.

17  14.    Plaintiff Holly Fournier is, and at all relevant times has been, a citizen and

18  resident of Vermont. Plaintiff Fournier purchased a fifteen-inch 2011 MacBook Pro

19  laptop in Vermont in April 2011.

20  15.    Plaintiff Michael Ghezzi is, and at all relevant times has been, a citizen

21  and resident of Colorado. Plaintiff Ghezzi purchased a fifteen-inch 2011 MacBook Pro

22  Laptop in Colorado in March 2011.

16.     Plaintiff Thomas Garofalo is, and at all relevant times has been, a citizen and resident of Florida. Plaintiff Garofalo purchased a fifteen-inch 2011 MacBook Pro laptop in Florida in April 2011.

17.     Plaintiff John Manners is, and at all relevant times has been, a citizen and resident of Florida. Plaintiff Manners purchased a fifteen-inch 2011 MacBook Pro laptop in Florida in March 2011.

18.     Plaintiff Adam Miles is, and at all relevant times has been, a citizen and resident of California. Plaintiff Miles received a fifteen-inch 2011 MacBook Pro Laptop from Apple in exchange for a defective MacBook Pro Laptop in California in 2012.

19.     Plaintiff Jennifer Roberts is, and at all relevant times has been, a citizen and resident of California. Plaintiff Roberts purchased a fifteen-inch 2011 MacBook Pro Laptop in California in September 2011.

20.     Plaintiff Jonathan Rowe is, and at all relevant times has been, a citizen and resident of Indiana. Plaintiff Rowe purchased a fifteen-inch 2011 MacBook Pro Laptop in Indiana in February 2011.

21.     Plaintiff Luis Ramos is, and at all relevant times has been, a citizen and resident of Puerto Rico. Plaintiff Ramos purchased a fifteen-inch 2011 MacBook Pro Laptop in Puerto Rico in 2011.

22.     Defendant Apple, Inc. is incorporated in California. Apple's executive offices and company headquarters are located in Cupertino, Santa Clara County, California. Apple sold more than 12 million laptops in 2011, many of which were fifteen- and seventeen-inch MacBook Pros sold to consumers throughout the United States,

including several thousand consumers in California, Colorado, Florida, Illinois, Indiana, Puerto Rico, and Vermont.

23.     Plaintiffs bring this action individually, and as a class action, against Apple, on behalf of themselves and all other similarly situated persons in California, Colorado, Florida, Illinois, Indiana, Puerto Rico, and Vermont, who purchased fifteen- or seventeen-inch 2011 MacBook Pro Laptops.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over all causes of action asserted here pursuant to 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs and the proposed Classes has more than 100 members. In California, Colorado, Florida, Illinois, Indiana, Puerto Rico, and Vermont, there are tens or hundreds of thousands of owners of fifteen- and seventeen-inch 2011 MacBook Pro Laptops.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Apple is headquartered in this District. Furthermore, Apple regularly transacts and solicits business in this District.

## COMMON FACTUAL ALLEGATIONS

26.     Apple designs, manufactures, sells and warrants a broad range of technology products, including the 2011 MacBook Pro Laptops. Apple is the most highly valued company in the world, with a market capitalization of approximately $700 billion.

**I.      The 2011 MacBook Pro Laptops**

27.     On February 24, 2011, Apple began selling the 2011 MacBook Pro line of laptops in the United States.

28.     The 2011 MacBook Pro laptops were sold in three screen sizes, thirteen-, fifteen-, and seventeen-inch. Only the fifteen- and seventeen-inch MacBook Pro laptops contained the graphics processing units linked to the Graphics Defect described here.[5]

29.     As Apple's most expensive and feature-packed laptop line, the fifteen- and seventeen-inch MacBook Pro laptops were marketed to consumers and professionals who were seeking a durable, high-performance product that was suitable for graphics-intensive tasks, such as photo and video editing, using an external monitor, and 3D gaming.

30.     Apple highlighted the suitability of the 2011 MacBook Pros for graphics-intensive applications, like computer-aided design, high definition video projects, and 3D games.

31.     From February through November 2011, Apple also represented that the Laptops offered graphical performance that was three-times faster than the 2010 MacBook Pro Laptop. *See* Figure 2 below.

**FIGURE 2**

Up to 3x quicker on the draw. And the render.

When you need more performance for things like playing 3D games, editing HD video, or even running CAD software, the 15- and 17-inch MacBook Pro models automatically switch to discrete AMD Radeon graphics that let you see more frames per second and experience better responsiveness. With up to 1GB of dedicated GDDR5 video memory, these processors provide up to 3x faster performance than the previous generation.[2]




32.     The increased graphical performance capabilities of the 2011 MacBook Pros was a central selling point of the 2011 MacBook Pros, and Apple's website pictured

---

[5] The thirteen-inch MacBook Pro laptops did not contain the high-powered graphics processing units described in more detail below and, as a result, did not manifest the Graphics Defect.

the laptops running graphically intensive programs, like photo-editing applications and games. *See* Figure 3 below.

**FIGURE 3**



33.     The average starting price of the fifteen- and seventeen-inch MacBook Pro laptop was $2,149. Fully upgraded Laptops routinely exceeded $3,000. By contrast, the average price of a Windows laptop when the 2011 MacBook Pros went on sale in February 2011 was $481.  *See* Figure 4 below.

**FIGURE 4**



Source: http://blog.laptopmag.com/the-average-pc-laptop-cost-513-in-february

## II.     Apple's Durability Advantage

34.     A central reason consumers paid a premium for the 2011 MacBook Pros was because Apple led consumers to believe that the MacBook Pro laptops would last longer than competing laptops. A computer's longevity can be measured in terms of hardware longevity and software longevity.

35.     With respect to hardware longevity, Apple has since 2011 boasted about the long-term durability of its laptops on its website.

> [W]e design everything from our largest displays to our smallest cables to be durable and long lasting. And to make sure they are, we test them in our Reliability Testing Lab at our headquarters in Cupertino.
>
> . . . .
>
> **Our built in notebook batteries last up to five years** . . . . **which . . . increases the lifespan of your notebook**.
>
> And when Apple product owners pass along their devices to friends or family, they're conserving resources, too. Sometimes the mark of a great product isn't how many you sell, but how much it's used.[6]
>
> **. . . up to 1000 full charge and discharge cycles — nearly three times the lifespan of typical notebook batteries. And because the MacBook Pro battery lasts up to five years, MacBook Pro uses just one battery in the same time a typical notebook uses three.**[7]

36.     In addition to Apple's written representations, numerous former Apple employees have informed Plaintiffs' counsel that Apple trained its sales staff, through store meetings and role-playing exercises, to justify the high cost of the MacBook Pros to consumers on the basis that the Laptops would last on average for between five to seven years. Similarly, one article related to the Graphics Defect noted, "I recall being sold on a

---

[6] http://www.apple.com/environment/finite-resources/ (last visited Aug. 28, 2014) (emphasis added).
[7] https://web.archive.org/web/20120131084812/http://www.apple.com/macbookpro/features.html.

MacBook at an Apple Store with the sales rep explaining that cheaper Windows machines will last 2-3 years while Macs will last twice as long and rarely, if ever, become expensive paperweights." Jacob Long, *Recent MacBooks Suffering Hardware Failures, Apple Won't Help*, Geeksided, http://geeksided.com/2014/08/17/recent-macbooks-suffering-hardware-failures-apple-wont-help/ (last visited Dec. 18, 2014). Consumers, including Plaintiffs, relied on these representations when purchasing a 2011 MacBook Pro, which cost hundreds more than competing laptops.

37.     With respect to software longevity, Apple's website states that Apple's computer operating system "works on Mac computers made as far back as 2007 — so you'll have a new experience without buying a new device."[8]

38.     Apple customers paid a premium for their MacBook Pros because they justifiably believed that the Laptops' hardware would last for five years or more and that Apple would continue to support older models with software updates.

**III.     The Graphics Processing Units In The 2011 MacBook Pro Laptops**

39.     To understand the defect alleged here, it is helpful to first examine the integral parts and processes involved, including the Laptops' graphics display process and the structure and operation of the Laptops' two Graphics Processing Units ("GPUs").

40.     All computers contain a Central Processing Unit ("CPU"). The CPU is the computer's "brain" and manages and controls the computer's functions. In a MacBook Pro, the CPU connects with the other internal components of the computer through the Laptop's main circuit board, called a "logic board." The 2011 MacBook Pro's logic board houses the CPU, memory, graphics, sound and other processors and components. *See* Figure 5 on the following page.

---

[8] http://www.apple.com/environment/finite-resources/ (last visited Aug. 28, 2014).

1

**FIGURE 5**



41.     For a computer to display images and video on the monitor, the CPU commands the GPU to process information from a selected source onto a visible display. The GPU performs complex mathematical and geometric calculations that are necessary to convert data, static images and/or video into a raster signal that can be viewed on a monitor.

42.     The fifteen- and seventeen-inch 2011 MacBook Pros came with two GPUs. The first GPU, manufactured by Intel was integrated into the CPU of the laptop (the "integrated GPU" or the "Intel GPU") and handled non-intensive graphical tasks such as word processing and web browsing. The Laptops' second GPU, manufactured by Advanced Micro Devices (the "discrete GPU" or the "AMD GPU"), greatly enhanced the graphical capabilities of the 2011 MacBook Pros, giving them graphics on par with desktop gaming computers, and performance that was "up to 3x quicker" than the 2010 MacBook Pro Laptops in rendering graphics.

43.     The Laptop automatically selects which GPU to use based on the application being run by the CPU.

> For graphics-intensive applications, the 15- and 17-inch MacBook Pro models automatically switch to new high-performance AMD Radeon graphics processors. With up to 3x the performance of the previous models, they let you see more frames per second in 3D games, or work on HD video projects with more speed and responsiveness than before.

## IV.     The Source Of The Graphics Defect

44.     The discrete GPU assemblies used in some laptops such as the MacBook Pro are complex devices with hundreds of fragile electrical connectors.

45.     In the 2011 MacBook Pros, the discrete GPU is soldered into a chip package, or a chip carrier, which is itself soldered to the logic board. *See* Figure 6 below.

**FIGURE 6**



46.     There are two layers of solder used to connect the discrete GPU (referred to as the "die" below) to the logic board. The first layer consists of solder "bumps" used to connect the discrete GPU integrated circuit to the chip carrier (referred to as the "substrate" below). A second layer of solder balls connects the chip carrier to the logic board in a "ball-grid array." *See* Figure 7 below.

**FIGURE 7**



47.     The solder serves a dual role of (1) mechanically securing the GPU and the chip package to the logic board, and (2) electrically connecting the GPU to the logic board.

48.     Apple uses lead-free solder to connect the discrete GPU assembly to the logic board. Lead-free solder is typically comprised of a combination of silver and tin. Apple uses lead-free solder to conform to European regulations.

49.     The high-powered discrete GPU in the 2011 MacBook Pros creates a significant amount of heat when in use because the GPU contains a large number of transistors, which require a great deal of electric current to power. Because processors are not perfectly efficient at conducting electricity, some of the current used to power a processor's transistors is lost as heat. Thus, when the discrete GPU is performing the very

graphically intensive tasks for which the Laptops were marketed, it can reach excessively high temperatures.[9]

50.    Each layer of material in the chip package pictured in Figure 7 above has a distinct thermal expansion coefficient. In other words, the GPU, the bumps, the chip package, the solder balls, and the logic board, all expand at different rates when heated. The higher the temperature, the more pronounced the expansion of each material and the greater the resulting stress between parts.

51.    As temperatures in the Laptop rises due to the operation of the discrete GPU, the various components within the discrete GPU's chip package expand at different rates. Then when temperatures drop, the components contract. These high temperatures, and the rapid cycling of temperature caused by the intermittent activation of the discrete GPU, stress the solder bumps connecting the GPU IC to its substrate and the GPU assembly to the logic board, causing the solder to crack. *See* Figure 8 below.

**FIGURE 8**



---

[9] The problem of heat is exacerbated by the excessive use of thermal paste in the GPUs. Thermal paste is used to allow heat-generating components, like a GPU, to dissipate heat to a heat sink attached to the logic board. When too much thermal paste is used, however, it can actually diminish the computer's ability to dissipate heat. This problem was noted the day after the MacBook Pros went on sale. *See, e.g.,* John Brownlee, *iFixIt's 2011 MacBook Pro Teardown: Better Repairability, But May Be Prone To Overheating* (available at: http://www.cultofmac.com/83649/ifixits-2011-macbook-pro-teardown-better-repairability-but-may-be-prone-to-overheating/) (last visited Feb. 25, 2011) ("We uncovered gobs of thermal paste on the CPU and GPU when we removed the main heat sink. The excess paste may cause overheating issues down the road, but only time will tell.")

52.     A crack in the solder bumps between the GPU and the logic board can disrupt the electrical signals between the GPU and the logic board. Initially, such a crack causes graphical issues to manifest mildly and sporadically, often only at startup of the laptop, leading consumers to believe that the issues are minor software bugs and not worth the inconvenience of a trip to the Apple store for warranty service. Over time, however, as the number and size of individual fractures increases, the graphical issues worsen and occur more frequently, causing the laptop to "freeze" and programs to fail. Eventually, a 2011 MacBook Pro affected by this issue will be unable to provide any display at all. The time from initial manifestation of the Graphics Defect to total failure can range from a matter of days to upwards of a year. Many 2011 MacBook Pro owners who have experienced the Graphics Defect are left with unusable Laptops that have no image on the primary or a connected secondary display.

53.     Cracked solder in the 2011 MacBook Pro Laptops is common because during the manufacturing process, poor workmanship and manufacturing processes led to failure-prone solder connections between the discrete GPU components and the logic board.

54.     Apple has long known about the risks of defects due to solder-related failures in MacBook Pro laptops. Indeed, the 2008 MacBook Pro suffered from a nearly identical defect, leading to an extended repair program by Apple in 2012.[10]

55.     Apple also knew or should have known that the Graphics Defect was bound to recur in the 2011 MacBook Pros because they continue to use the same brittle,

---

[10] http://support.apple.com/en-us/HT203254

lead-free solder as the 2008 MacBook Pro laptops, while containing an even more

powerful and, hence, hotter-running GPU.

## V.    The Immediate Failure of the 2011 MacBook Pro Laptops

56.    Less than a week after Apple began selling the 2011 MacBook Pros,

complaints erupted on Apple's discussion forums about graphics issues and computer

failures. By and large, the complaints were the same – the same graphically demanding

tasks that prompted consumers to purchase their 2011 MacBook Pros were causing

graphical aberrations, system freezes, and computer failures. In less than a month, a

discussion thread related to the graphics defect had generated 1,094 responses.[11] A

sampling of consumer complaints on the 2011 Apple discussion thread is copied below.

| Date | Complaint |
| --- | --- |
| Mar. 3, 2011 | I have had the same thing several times with my 15" 2011 2.2GHz model. Each time it was when the system was under load and the fans start running high and then there is a freeze. |
| Mar. 5, 2011 | Great. I'm having the exact same issue. It happens when rendering video in iMovie. The fan comes on and everything freezes. I can do nothing but a hard reset. Now I'm wondering if I should return this $2000 item and wait until all the bugs are fixed. |
| Mar. 6, 2011 | Happened 3 times now, mine freezes and the screen goes all funny (like it has hundreds of dead pixels) |
| Mar. 6, 2011 | Exactly the same issues are happening with my 15 inch MBP 2.2 ghz i7. When rendering from After Effects the fans go wild, like an airplane and the CPU temp reaches 98C [208 degrees Fahrenheit], then sometimes everything freezes but the cursor movement, only way forward is a hard reset. |
| Mar. 12, 2011 | I ordered a 15.4" 2.2Ghz MacBook Pro, and received it on Wednesday night. The computer continuously froze even when doing simple tasks, such as listening to iTunes (no other apps running). One time it froze with garbled video and pixels. And last night (Friday), it froze and never came back. Turning it on produces only a black screen. I know it's powering on, as I can |

---

[11] Apple.com Discussions Forum, *MacBook Pro 2011 17" hard freeze*, (Mar.  1, 2011) https://web.archive.org/web/20110326141903/http://discussions.apple.com/thread.jspa?threadID=2768351 &start=0&tstart=0 (last visited Aug. 22, 2014).

| | hear it, and the light on the front is on, but the screen doesn't turn on. I just got back from the Apple Store, where they were unable to fix it after trying everything. They suggested a replacement. Now I have to mail back my $2500 machine, and wait an extra week to use it. |
|---|---|

57.     Less than a month after the release of the 2011 MacBook Pros, technology websites began reporting on the Graphics Defect. *See, e.g.,* Chris Foresman, *Latest MacBook Pros suffering from GPU-related freezes*, ArsTechnica (March 21, 2011) (available at: http://arstechnica.com/apple/2011/03/latest-macbook-pros-suffering-from-gpu-related-freezes/) (last visited August 20, 2014).

58.     In an ultimately unsuccessful attempt to quell criticism and fix the graphical issues affecting the 2011 MacBook Pro laptops, Apple quickly announced a pending software update for the MacBook Pros to address "graphical stability." On March 21, 2011 – less than a month after the MacBook Pros went on sale in the United States – Apple released a software update for the MacBook Pros' operating systems, which purported to "improve graphics stability and external display compatibility." *See* Figure 9 on the following page.

1

2

**FIGURE 9**



3

4

5

6

7

8

9

10

11

12

13

14

15

16

59.    Apple's software update not only failed to remedy the Graphics Defect,

17

but in some cases exacerbated the problem, as was noted the day the update was released.

18

*See, e.g.*, comments to Rue Liu, *Apple MacBook Pro 2011 GPU-Related Glitch Fixed*

19

*With Mac OS X 10.6.7*, SlashGear.com (Mar. 21, 2011) (available at

20

http://www.slashgear.com/apple-macbook-pro-2011-gpu-related-glitch-fixed-with-mac-

21

os-x-10-6-7-21141448/) (last visited Aug. 22, 2014) ("the Graphics glitches are worse on

22

the LCD and the dashboard or any overlay type graphics . . . are all distorted"); ("Display

23

problems began immediately, and were not fixed by 10.6.7 update. No crashes here –

24

problem is display corruption. Appears in Safari, Pages and Preview. The entire window

25

(but not the entire screen) is filled with garbage. Problem is not solved by restarting the

26

application."); ("Apple needs to do a recall").

27

28

**VI.     Apple's Solution To The Graphics Defect: Restrict The Laptops'
Performance**

60.     Despite knowing of these defects in the 2011 MacBook Pros, Apple did

not notify owners or purchasers of the MacBook Pros of the defect or provide a workable

solution.

61.     Nor has Apple taken appropriate steps to diagnose the issue. To this day,

when a Laptop is brought to an Apple store exhibiting the Graphics Defect, Apple's

technicians perform diagnostics that tests the performance and functionality of most of

the system's components including the CPU, the integrated Intel GPU, and other

hardware, but not the discrete GPU.

62.     Instead, Apple quietly restricted the performance of the 2011 MacBook

Pro Laptops in order to keep the defectively manufactured Laptops from manifesting the

Graphics Defect during the warranty period.

63.     Specifically, Apple limited the Laptops' operating speed, thereby reducing

the operating temperature and the likelihood of solder balls cracking.

64.     Evidence of Apple's performance downgrade is available from Apple's

own website, which in February 2011 (when the Laptops were released) boasted that the

Laptops' graphical performance was three-times faster than the 2010 MacBook Pro

Laptops. By November 2011, when Apple *upgraded* the 2011 MacBook Pro Laptops,

Apple had significantly reduced the performance capabilities of the Laptops and began

representing that the Laptops' graphical performance was only two-times faster than the

2010 MacBook Pro Laptops. *See* Figures 10 and 11 below.

**FIGURE 10** (March 2011)




**FIGURE 11** (November 2011)




65.     A laptop testing website noted in a December 2011 review of the Laptops that the discrete GPU in the Laptops was running slower than expected, and said the following about the discrete GPU in the 2011 MacBook Pro: "A look at the clock rate disappoints us. In the reference design (and in Windows laptops we know) the clock rate is 725 MHz, but **Apple uses a clock rate of 675 MHz**."[12]

66.     Apple downgraded the performance of the Laptops' discrete GPU through software updates, which Apple distributes online to all Laptop owners.[13] Apple never

---

[12] Klaus Hinum, *Review, Apple MacBook Pro 15 Late 2011 (2.4 GHz, 6770M, glare,* http://www.notebookcheck.net/Review-Apple-MacBook-Pro-15-Late-2011-2-4-GHz-6770M-glare.66918.0.html (last visited Dec. 15, 2014) (emphasis in original).

[13] Between February 2011 and November 2011, Apple released five operating system updates to MacBook Pro Laptop owners: (1) Mac OS X 10.6.7 (Mar. 21, 2011); (2) Mac OS X 10.6.8 (Jun. 23, 2011); (3) Mac OS X 10.7 (Jul. 20, 2011); (4) Mac OS X 10.7.1 (Aug. 16, 2011); and (5) Mac OS X 10.7.2 (Oct. 12, 2011).

gave any indication that any of its updates would diminish the performance of the Laptops. Nor did Apple inform consumers that the performance downgrade was an attempt to conceal and delay a physical defect endemic to all 2011 MacBook Pro laptops with fifteen- or seventeen-inch monitors.

67.     Though Apple explicitly promised Laptops with three-times the graphical performance of the 2010 models, many consumers instead received Laptops that had been slowed down by 33% in order to reduce heat and conceal a defect. This reduction negatively affected the performance of the Laptops, particularly in connection with delivering the graphical rich experience consumers expected, which was Apple's stock in trade.

68.     Downgrading the graphical performance of the Laptops was intended to delay the inevitable manifestation of the Graphics Defect. However, it did not eliminate the underlying defect. Though the Laptops' performance was decreased, the downgrade did little to prevent the inevitable failure of the lead-free solder connecting the discrete GPU assembly to the logic board. As a result, tens or hundreds of thousands of 2011 MacBook Pro Laptop owners have suffered from the Graphics Defect outside of the warranty period, requiring them to pay between $350 and $600 for a logic board replacement. Many consumers have received multiple logic board replacements, yet continue to experience the Graphics Defect.

## VII.    Apple's Secret Recall

69.     To date, Plaintiffs' counsel has received numerous emails from Class members stating that Apple has replaced their defective 2011 MacBook Pro with a brand new 2014 MacBook Pro.

70.     In other cases, consumers have reported that Apple has provided free repairs for the Graphics Defect to a small minority of Class members.

71.     By and large, however, Class members who bring their Laptops in for repairs are charged for repairs and are not informed that the Graphics Defect will almost certainly manifest again even after Apple performs costly, time consuming repairs. Apple's secret recall is being administered in a way that unfairly treats most consumers, who pay Apple for temporary repairs of a defect that Apple has known existed since the time the Laptops went on sale.

## VIII.    Apple's Response To The Graphics Defect

72.     From the day the MacBook Pros went to market to this day, tens of thousands of online complaints posted by Class members show that Apple's purported "graphical stability" update and secret performance downgrade did nothing to remedy the Graphics Defect. A 2013 discussion thread regarding the Graphics Defect on Apple's forums is still active and has received 7,865 replies and more than one million page views. Discussions.apple.com, *2011 MacBook Pro and Discrete Graphics Card*, (Feb. 1, 2013), https://discussions.apple.com/thread/4766577?tstart=0 (last visited Aug. 21, 2014).[14]

73.     In response to Apple's failure to remedy the Graphics Defect, Spain's oldest consumer protection organization, Organización de Consumidores y Usuarios, opened an investigation into Apple's conduct in December 2014.

74.     Similarly, dozens of journalists and technology websites have reported on the issue.[15]

---

[14] As of November 24, 2014, the discussion page has 9,887 replies and 2.3 million page views.
[15] *See, e.g.,* http://geeksided.com/2014/08/17/recent-macbooks-suffering-hardware-failures-apple-wont-

75.     And an active and growing Facebook group dedicated to that Graphics Defect called "2011 MacBook Pro and Discrete Graphics Issue" has over 4,000 members.

76.     Apple has failed to repair the Graphics Defect because there is no simple fix. At best, Apple can replace the MacBook Pro's logic board with an equally defective logic board. Moreover, because the failure rate of the Laptops is so high, Apple has run out of new logic boards to provide consumers and is now "repairing" the defect by recycling logic boards with new discrete GPUs soldered to the logic boards, using the same defective manufacturing methods.

77.     Consumers who brought their MacBook Pros in for service during the warranty were often denied warranty service after being told that the issue was due to water damage or software installed post-purchase. At best, Apple employees would say that the graphics card had failed and that the "fix" for this issue was a replacement logic board, which was equally defective and similarly prone to the Graphics Defect. Because

help/; http://appleinsider.com/articles/14/08/12/apple-ignores-calls-to-fix-2011-macbook-pro-failures-as-problem-grows; http://www.zdnet.com/petition-about-apple-macbook-pro-failures-passes-10000-signatures-7000032751/; http://www.macworld.co.uk/news/mac/petition-demands-apple-fix-macbook-pro-graphics-woes-3537300/; http://www.itpro.co.uk/macs/22911/macbook-pro-bug-prompts-ongoing-complaints-for-apple; http://www.macrumors.com/2014/08/21/lawsuit-2011-macbook-pro-graphics/; http://appleinsider.com/articles/14/05/13/apple-remains-mum-as-complaints-mount-over-2011-macbook-pro-gpu-failures; http://www.digitaltrends.com/computing/suddenly-bunch-early-2011-macbook-pro-owners-running-video-problems/; http://www.cultofmac.com/262861/early-2011-macbook-pros-dropping-like-flies-heat-issues-blame/; http://modmyi.com/content/12490-gpu-failure-issues-surface-apple-s-early-2011-macbook-pro-lineup.html; http://www.fudzilla.com/home/item/33702-more-gpu-failures-on-macbook-pros; http://www.maclife.com/article/news/some_2011_macbook_pros_suddenly_suffering_screen_glitches_crashes; http://www.republika.co.id/berita/trendtek/gadget/14/01/17/mzjp4q-lagi-macbook-pro-dilaporkan-alami-kegagalan-sistem; http://www.webnews.it/2014/01/17/macbook-pro-2011-gpu/?ref=post; http://www.slidetomac.com/macbook-pro-2011-problemi-alla-gpu-79250.html; http://www.cnbeta.com/articles/269003.htm http://www.saggiamente.com/2014/01/17/problemi-alla-gpu-sui-macbook-pro-del-2011-ecco-cosa-bisogna-sapere/; http://appleinsider.com/articles/13/10/14/apples-2011-macbook-pro-lineup-suffering-from-sporadic-gpu-failures; http://www.mactrast.com/2013/10/owners-early-2011-macbook-pro/; http://arstechnica.com/apple/2011/03/latest-macbook-pros-suffering-from-gpu-related-freezes/; http://modmyi.com/content/12490-gpu-failure-issues-surface-apple-s-early-2011-macbook-pro-lineup.html; http://wallstcheatsheet.com/stocks/a-bunch-of-sour-apples-stem-from-2011-macbook-pro-glitch.html/?a=viewall; http://www.melablog.it/post/127053/macbook-pro-2011-casi-di-malfunzionamento-della-gpu-sempre-piu-numerosi.

Apple misled consumers about the nature of the Graphics Defect, consumers who would have returned their MacBook Pros had they known that the Graphics Defect was systemic and incurable, instead opted to receive a replacement logic board that was inherently defective and equally prone to failure.

78.    Many Class members have had the GPUs on their Affected MacBook Pro replaced numerous times, only to find that the Graphics Defect again manifests.

a.    "I brought it to the Apple store 3 weeks after I purchased it. I showed them screenshots [below] of what happens, and I said that it obviously needs a new GPU or something . . . . they gave me the laptop back and said nothing was wrong and tried to imply I was making it up."
http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjsw3yj.



b.    "This same problem happened on my girlfriend's mbp. She had to return to the store 6 times before they eventually replaced the laptop. The customer service was terrible and each time the genius said 'that should be fixed now' this included various resets and reinstalls which we had

already tried to no avail as well as a new logic board which also had the same issue. Apple at no point gave an explanation to what it may be and the guys at the bar just thought it was 'strange' we had photo and video evidence of the fault.

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjskn2m.

 c. "I had a 2011 MBP with this issue. The Logic board was replaced 4 times, and the issue persisted. YESTERDAY I brought it back for a 5th time. The genius replaced it with a brand new retina display model."

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjskvce.

 d. "This hit mine a year ago, just a few months out of the two year warranty . . . . I ended up paying ~$700 for a logic board replacement.

http://www.reddit.com/r/technology/comments/2ds12q/apple_ignores_calls_to_fix_2011_macbook_pro/cjsztq9.

 79. The purported "graphical stability" fix, performance downgrades, and warranty repairs offered by Apple failed to remedy the Graphics Defect. If Plaintiffs and Class members knew of these conditions, they would have never bought the Laptops, or they would have paid less for them.

 80. As a result of widespread consumer dissatisfaction, the groundswell of complaints about the Graphics Defect that affects all of the 2011 MacBook Pro Laptops has continued. Indeed, a petition on change.org to Apple's chief executive officer, Timothy D. Cook, which was posted more than 2 years after announcement of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"graphical stability" fix, has received more than 31,136 signatures. *Petitioning Timothy D. Cook, Replace or Fix All Early 2011 Macbook Pro with Graphics Failure*, change.org, https://www.change.org/p/timothy-d-cook-replace-or-fix-all-early-2011-macbook-pro-with-graphics-failure (last visited Dec. 16, 2014).

81.     Defendant warranted that the MacBook Pros would be free from defects in material and workmanship that occur under normal use during the warranty period.

82.     Specifically, Defendant provided a "Limited Warranty" that warrants the product "against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser." As stated above, the MacBook Pros have a known defect in the physical interface between the discrete graphics processing hardware and the logic board. Though fully aware of the Graphics Defect, Apple has refused to adequately repair or replace Plaintiffs' MacBook Pros while under warranty. Apple has refused to repair or replace Plaintiffs' MacBook Pros in spite of the warranty, and has claimed to Plaintiffs and Class members that their laptops are free from defects. Apple has also diminished the value of the Laptops by secretly degrading their performance in an attempt to avoid the inevitable Graphics Defect.

83.     As a result, Plaintiffs and all other Class members suffered actual damages when they purchased MacBook Pros, which do not perform as warranted and are unreliable or unusable as personal computing devices, contrary to Defendant's representations. Furthermore, Plaintiff and the Class have suffered or will suffer damages in the form of, *inter alia*, out-of-pocket expenditures for repairs and attempted repairs of the MacBook Pros as a direct and proximate result of the Graphics Defect, which was

known by Defendant to be present in their products. Moreover, Plaintiff and the Class have suffered or will suffer damages in the form of diminished value of the MacBook Pros as a direct and proximate result of the Graphics Defect. Finally, Plaintiff and the Class have suffered or will suffer damages inasmuch as they did not get the benefit of the bargain as a direct and proximate result of the Graphics Defect which the Defendant has been unable to remedy under its Warranty.

84.     Had Plaintiff and the Class known of the Graphics Defect at the time of purchase or that Apple would delay the manifestation of the defect by downgrading the performance of the machine, they would not have purchased the MacBook Pros or they would not have purchased them at the premium price for which they were sold.

85.     Because of the relatively small size of the typical individual Class member's claims, it is unlikely that individual Class members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

86.     Defendant knew that Plaintiff and Class members would rely on Defendant's representations, marketing, and warranties regarding the quality of the MacBook Pros and their graphics-processing capabilities.

87.     Plaintiffs and Class members relied on Defendant's representations, marketing, and warranties when purchasing the MacBook Pros.

## FACTS SPECIFIC TO NAMED PLAINTIFFS

**I.     California Plaintiffs**

### A.     Plaintiff Zachary Book

88.     Plaintiff Zachary Book purchased his MacBook Pro on January 28, 2012 –

approximately 11 months after the MacBook Pro went on sale.

89. While his MacBook Pro was within the one-year warranty period, Plaintiff Book experienced the Graphics Defect in the form of a series of "digital strokes" that caused his MacBook Pro's graphics to become distorted and garbled moments before the laptop would become unresponsive. These digital strokes would most typically occur when the laptop was running graphically-intensive applications. On October 1, 2013, outside of the warranty period, a "digital stroke" caused the total failure of Plaintiff Book's MacBook Pro. Plaintiff Book took his laptop to Apple for repairs. Apple incorrectly diagnosed the issue, and replaced the laptop's hard drive and charging hardware at a cost of $174.01 to Plaintiff Book.

90. The repairs did not remedy the issue, and Plaintiff Book again scheduled an appointment with Apple and took his laptop in to an Apple Store on October 21, 2013. Plaintiff Book continued experiencing issues and took his MacBook Pro in to the Apple Store on November 8, 2013, and again on November 11, 2013.

91. On November 19, 2013, Plaintiff Book's MacBook Pro again failed due to the Graphics Defect. Apple replaced the logic board on Plaintiff Book's laptop at a cost of $255. However, Apple gave Plaintiff Book a rebate of $100 because, which reduced his total payment to $164.45.

92. On November 9, 2013, Plaintiff Book's laptop again failed due to the Graphics Defect. Apple replaced Plaintiff Book's logic board for $264.45, $100 of which was credited to Plaintiff Book due to the numerous past issues he had experienced.

93. Despite the logic board replacement, the problem persisted, and Plaintiff Book returned to Apple to report on his continued issues on December 28, 2013. Apple

repair technicians suggested that the issue was caused by the plug-in power adapter and sold Plaintiff Book a new adapter for $86.11. The adapter did not remedy the issue, and Plaintiff Book continued to experience the Graphics Defect.

94.    On March 17, 2014, Plaintiff Book's MacBook Pro again manifested the Graphics Defect and ceased functioning entirely. Apple again replaced Plaintiff Book's logic board and charging hardware, and prepared an invoice for repairs that totaled $536.73, which Apple eventually waived after Plaintiff Book complained directly to Apple's customer support hotline.

95.    To this day, Plaintiff Book's MacBook Pro continues to suffer from the Graphics Defect, which has necessitated the purchase of a new laptop by Plaintiff Book.

### B.    Plaintiff Jessica Chandler

96.    Plaintiff Chandler purchased a MacBook Pro Laptop on July 18, 2011, for $3,279.22.

97.    Plaintiff Chandler's Laptop developed the Graphics Defect within months of purchase, and she took her Laptop in to an Apple store for repairs in May 2012. On May 17, 2012 Apple completed repairs of Plaintiff Chandler's Laptop, which included replacing the logic board and the monitor of her Laptop.

98.     Soon after receiving her repaired Laptop from Apple, Plaintiff Chandler's Laptop began exhibiting the Graphics Defect again. Plaintiff Chandler took her Laptop to Apple in August 2012, and repairs were completed on August 28, 2012. Because Plaintiff Chandler had purchased Apple's extended warranty, she was not charged for the repairs.

99.    Plaintiff Chandler's Laptop again began experiencing the Graphics Defect in 2014, at which time she took her Laptop in for repairs to Apple. Repairs were

completed on March 31, 2014, and included a replacement logic board. This repair was covered under Apple's extended warranty.

100.    Months after receiving her repaired Laptop from Apple, Plaintiff Chandler's Laptop began experiencing the Graphics Defect again in the form of pink bars across the monitor.  Plaintiff Chandler's Laptop is now functionally useless, and Apple has refused to repair Plaintiff Chandler's Laptop without charge because the extended warranty has expired.

## C.    Plaintiff Donald Cowart

101.    Plaintiff Donald Cowart purchased his MacBook Pro on May 25, 2012—more than a year after the MacBook Pros came to market. Plaintiff Cowart paid approximately $2,500 for his laptop.

102.    Plaintiff Cowart has exclusively used Apple computers since approximately 1987, and reports that his MacBook Pro "was a total dud since I've had it." Plaintiff Cowart typically uses his MacBook Pro connected to an external monitor, which requires use of the AMD GPU.

103.    Within months of purchasing his laptop, programs on Plaintiff Cowart's laptop started randomly failing during use. From very early on, Plaintiff Cowart experienced software instability and graphical anomalies.

104.    Plaintiff Cowart took his laptop to Apple for the first time in August 2013, months after the issues began manifesting. Apple employees informed him that the issue was related to software conflicts. As a result, Plaintiff Cowart spent dozens of hours uninstalling and reinstalling software per Apple's instructions. None of the software fixes recommended by Apple resolved the issues he was experiencing.

105.    Plaintiff Cowart again took his laptop to Apple for repairs in October 2013. Again, Apple had no fix for the issue.

106.    Plaintiff Cowart took his laptop in to Apple again in November 2013 because programs were constantly crashing. Apple was unable to fix the issues he was experiencing.

107.    On May 7, 2014, Plaintiff Cowart again took his laptop in to Apple. Apple diagnosed the issue as one having to do with software permissions. Apple technicians restored Plaintiff Cowart's laptop from a backup drive in an attempt to remedy the issue. The restoration did nothing to remedy the issues Plaintiff Cowart was experiencing.

108.    In September 2014, Plaintiff Cowart took his MacBook Pro to a repair shop that performs circuit board repairs. The repair shop inspected Plaintiff Cowart's logic board and found that the lead-free solder between the GPU and the logic board had cracked at numerous points—i.e., Plaintiff Cowart's Laptop is suffering from the Graphics Defect.

109.    Plaintiff Cowart's MacBook Pro remains unstable and barely operable to this day.

**D.    Plaintiff Adam Miles**

110.    Plaintiff Adam Miles received his 2011 MacBook Pro from Apple in exchange for a 2009 model of MacBook Pro laptop that Apple was unable to repair after numerous attempts.

111.    The Graphics Defect manifested immediately after Plaintiff Miles received his 2011 MacBook Pro.

112.    On August 2, 2012, Plaintiff Miles took his Laptop to the Apple store for repairs related to the graphics defect.

113.    The August 2 repairs did not remedy the defect, and on August 7, 2012, Plaintiff Miles contacted a higher level customer service representative at AppleCare named Kasey Ziegler, who referred Plaintiff Miles to an Apple engineer for additional troubleshooting.

114.    The Apple engineer sent Plaintiff Miles a program titled "capture sys info," which was installed in order to log the computer's activity and determine the source of the Graphics Defect. The Apple Engineer also instructed Plaintiff Miles to systematically uninstall and reinstall every third-party program on his laptop, format the hard drive, reinstall the operating system, downgrade operating systems. Plaintiff Miles spent dozens of hours working in vain with the engineer to troubleshoot his defective MacBook Pro Laptop. None of these

115.    On August 20, 2012, Plaintiff Miles again called Apple phone support. Apple's records indicate that the call was initiated because "monitor has distorted or garbled video." Apple's phone support was unable to repair Plaintiff Miles' 2011 MacBook Pro.

116.    On August 22, 2012, Plaintiff Miles shipped his 2011 MacBook Pro Laptop to an Apple repair facility. Apple replaced Plaintiff Miles' logic board.

117.    Shortly after receiving his putatively repaired 2011 MacBook Pro Laptop from Apple's repair facility, the Graphics Defect manifested again on Plaintiff Miles' Laptop.

118.    Plaintiff Miles again sent his 2011 MacBook Pro Laptop to Apple's repair facilities. Apple's records indicated that the repair was initiated because Plaintiff Miles

"monitor has distorted or garbled video." Apple completed the repairs on October 11, 2012.

119.    Almost immediately after receiving his MacBook Pro from Apple's repair facilities, Plaintiff Miles' laptop again began exhibiting the Graphics Defect.

120.    Plaintiff Miles again informed Apple that his computer's graphics were distorted and non-functional. Apple again referred Plaintiff Miles to an Apple engineer, who requested that Plaintiff Miles keep detailed logs of his usage activity and take screenshots and video captures of the issues. From October 22, 2012, through November 7, 2012, Plaintiff Miles kept detailed logs of his usage activity, took screenshots of the Graphics Defect and recorded video captures of the Graphics Defect, which he provided to Apple's engineers. The engineers were unable to remedy the Graphics Defect.

121.    On November 12, 2012, Plaintiff Miles again shipped his laptop to Apple's repair depot for repairs. Apple's records indicated that Plaintiff Miles' "monitor has distorted or garbled video." After receiving his 2011 MacBook Pro back from Apple's repair facilities for the third time, Plaintiff Miles found that his laptop continued to manifest the Graphics Defect.

122.    When Plaintiff Miles again reported to an Apple store, *an Apple employee suggested that Plaintiff Miles should sell his defective laptop to someone else*.

123.    On December 18, 2012, Plaintiff Miles sent Apple CEO Timothy Cook an email requesting assistance.

124.    On December 19, 2012, an Apple executive relations employee called Plaintiff Miles and did nothing to repair Plaintiff Miles' computer.

125.     Plaintiff Miles made his final call to Apple's customer support on December 21, 2012. An Apple representative told Plaintiff Miles that the graphics defect was a "known issue," and that an upcoming software patch would rectify the issue.

126.     No software patch ever rectified the Graphics Defect, which affects Plaintiff Miles' 2011 MacBook Pro Laptop to this day.

### E.     Plaintiff Jennifer Roberts

127.     Plaintiff Jennifer Roberts purchased her defective MacBook Pro Laptop in California on September 13, 2011. She also purchased an extended three-year warranty for her Laptop.

128.     Plaintiff Roberts' Laptop began exhibiting the Graphics Defect soon after the date of purchase of her Laptop.  The Graphics Defect worsened over time and Plaintiff Roberts took her laptop in for repairs in October 2012. Apple replaced her logic board.

129.     Soon after receiving her "repaired" Laptop Plaintiff Roberts' Laptop again began exhibiting the Graphics Defect, and on January 10, 2013, Apple replaced her logic board again.

130.     Plaintiff Roberts' Laptop began experiencing the Graphics Defect again, and on October 12, 2013, Apple replaced her logic board yet again.

131.     Almost immediately after receiving her "repaired" Laptop, Plaintiff Roberts' Laptop again began exhibiting the Graphics Defect. On January 7, 2014, she received her fifth logic board.

Now outside of her three-year warranty, Plaintiff Roberts' Laptop is yet again exhibiting the Graphics Defect, and she has been informed that a costly logic board replacement is her only option for a repair.

## II.      Colorado – Plaintiff Michael Ghezzi

132.     Plaintiff Michael Ghezzi purchased a 15" MacBook Pro on March 22, 2011. When he purchased his Laptop, Plaintiff Ghezzi was employed by Apple.  Plaintiff Ghezzi was trained by Apple to inform consumers that Apple laptops were durable devices that would outlast competitors' laptops.

133.     Plaintiff Ghezzi's Laptop manifested the Graphics Defect within a year of the purchase date. Because the Graphics Defect only intermittently affected his Laptop, Plaintiff Ghezzi did not take his Laptop in for repairs.

134.     The first major failure of Plaintiff Ghezzi's Laptop due to the Graphics Defect occurred on October 2013.

135.     Plaintiff Ghezzi took his Laptop in for repairs related to the Graphics Defect on January 18, 2014, at which time Apple technicians replaced his logic board for approximately $350.

136.     Soon after receiving his first logic board replacement, Plaintiff Ghezzi's Laptop manifested the Graphics Defect again, and on September 27, 2014, Apple again replaced his logic board at a cost of $327.14.

137.     When Plaintiff Ghezzi took his Laptop in for the second logic board replacement, the Apple store manager offered to refund the cost of the first logic board replacement in lieu of attempting to repair his Laptop again because the issue was unfixable.

138.     Now, on his third logic board, Plaintiff Ghezzi's Laptop is again manifesting the Graphics Defect.  Having spent almost $700 on repairs to date, Plaintiff Ghezzi has not taken his Laptop in for additional futile repairs.

III.    **Florida**

      A.    **Plaintiff John Manners**

139.    Plaintiff John Manners purchased his MacBook Pro on March 1, 2011 at a cost of $1,817.93.

140.    In June 2011, Plaintiff Manners experienced the Graphics Defect. Plaintiff Manners took his MacBook Pro to the Apple store and was asked to reproduce the Graphics Defect in the store. He was unable to do so. As a result, Apple did nothing to repair his laptop. Plaintiff Manners continued to experience the Graphics Defect until February 2013, when the Graphics Defect caused his MacBook Pro to become completely inoperable. Apple charged Plaintiff Manners $331.70 for a logic board replacement.

      B.    **Plaintiff Thomas Garofalo**

141.    Plaintiff Garofalo purchased his 2011 MacBook Pro Laptop in mid-2011 in Florida.

142.    While covered under Apple's one-year warranty, Plaintiff Garofalo's Laptop manifested the Graphics Defect and received a logic board replacement from Apple.

143.    Approximately a year later, Plaintiff Garofalo's Laptop manifested the Graphics Defect a second time. Because Plaintiff Garofalo had purchased Apple's extended warranty, Apple again replaced the logic board for free. A technician informed plaintiff Garofalo that the logic boards were prone to failure and would last approximately one year.

144.    Just more than a year later, Plaintiff Garofalo's Laptop manifested the Graphics Defect for the third time.

145.    The failure mode was identical for Plaintiff Garofalo each time the Graphics Defect manifested. When Plaintiff Garofalo would try to turn on his Laptop, the computer would audibly begin working, but the only image visible on the Laptop's screen was blue or green vertical bands.

146.    After his Laptop failed for the third time, Plaintiff Garofalo researched the issue online and learned that the Graphics Defect was a widespread issue for which Apple charged hundreds of dollars for a short term repair. Rather than pay for costly repairs, Plaintiff Garofalo opted to purchase a new laptop for approximately $1,800.

## IV.    Illinois – Plaintiff Lori Ashbaugh

147.    Plaintiff Lori Ashbaugh received her 17" MacBook Pro Laptop from Apple in mid-2011 as a replacement for a defective Apple MacBook Pro Laptop that Apple was unable to repair.

148.    Plaintiff Ashbaugh's Laptop manifested the Graphics Defect while covered under Apple's one-year warranty.

149.    To date, Plaintiff Ashbaugh has sent her 2011 MacBook Pro Laptop in to Apple for repairs more than eight times. The logic board on her MacBook Pro Laptop has been replaced approximately four times.

150.    Apple has been unable to repair Plaintiff Ashbaugh's 2011 MacBook Pro Laptop. At best, a replacement logic board resolves the Graphics Defect for a short period of time.  Plaintiff Ashbaugh's 2011 MacBook Pro Laptop is currently experiencing the Graphics Defect, and she has submitted photographic evidence as well as video evidence of the Graphics Defect to Apple's technicians.

151.    Plaintiff Ashbaugh has spent approximately 48 hours working with Apple technical support to resolve the issue.

152.     Apple technical support insists that Plaintiff Ashbaugh is experiencing a software issue, and has repeatedly required Plaintiff Ashbaugh to "wipe" her hard drive and reinstall every program. Plaintiff Ashbaugh has complied with these requests, to no avail.

153.     Apple technical support now insists that the graphical issues are related to non-Apple software installed on her 2011 MacBook Pro Laptop. Plaintiff Ashbaugh has removed every third-party program from her Laptop, yet the Graphics Defect still affects her Laptop.

154.     Rather than providing a non-defective Laptop – i.e., something other than a 2011 MacBook Pro Laptop – Apple technicians continually task Plaintiff Ashbaugh with futile and time-consuming software "fixes" that do nothing to remedy the underlying problem.

155.     An Apple employee has informed Plaintiff Ashbaugh that Apple will not replace her Laptop and that her only recourse for a non-defective Laptop was through resolving by working with Apple's technical support.

**V.     Indiana – Plaintiff Jonathon Rowe**

156.     Plaintiff Rowe purchased his fifteen-inch 2011 MacBook Pro Laptop from Apple on February 24, 2011.

157.     In 2013 Plaintiff Rowe's Laptop manifested the Graphics Defect, which Plaintiff Rowe paid Apple approximately $350 to repair.

158.     Plaintiff Rowe was not aware of the performance downgrade by Apple, nor was he aware that the Graphics Defect was a widespread defect when he performed the repairs.

## VI.    Puerto Rico – Plaintiff Luis Ramos

159.    Plaintiff Ramos purchased a 2011 MacBook Pro Laptop directly from Apple in 2011.

160.    While covered by Apple's one-year warranty, Plaintiff Ramos' Laptop was rendered inoperable by the Graphics Defect. An Apple authorized repair shop replaced Plaintiff Ramos' logic board on May 15, 2012.

161.    After receiving a replacement logic board, Plaintiff Ramos' Laptop again manifested the Graphics Defect, which again rendered his Laptop inoperable. Because his warranty had expired, Plaintiff Ramos was quoted a repair price of several hundred dollars for a replacement logic board.

162.    Plaintiff Ramos opted not to purchase a third logic board and instead purchased a replacement computer.

## VII.    Vermont - Plaintiff Holly Fournier

163.    Plaintiff Holly Fournier purchased her 2011 MacBook Pro Laptop in April 2011 for $2,956.24.

164.    While covered by Apple's warranty, Plaintiff Fournier's Laptop began exhibiting the graphics defect in the form of pixilation, distortion, and garbled images. Believing that the issues were software related, Plaintiff Fournier did not take her Laptop to Apple for repairs.

165.    In May 2012, the Graphics Defect worsened, causing system freezes, program failures, and system shutdowns.

166.    In July 2012, Plaintiff Fournier's Laptop failed completely, and she took it to an authorized Apple repair center, which charged her $1,053.89 for repairs to her Laptop, including a logic board replacement and a replacement battery.

## CLASS ALLEGATIONS

167.    Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated as Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes and sub-classes:

a.  California Class: All persons or entities in the State of California who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

   i.  The California CLRA Subclass: all persons in the State of California who purchased a fifteen- or seventeen-inch 2011 MacBook Pro for personal or household use.

b.  Colorado Class: All persons or entities in the State of Colorado who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

c.  Florida Class: All persons or entities in the State of Florida who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

d.  Illinois Class: All persons or entities in the State of Illinois who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

e.  Indiana Class: All persons or entities in the State of Indiana who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

f.  Puerto Rico Class: All persons or entities in the Commonwealth of Puerto Rico who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

g.  Vermont Class: All persons or entities in the State of Vermont who purchased a fifteen- or seventeen-inch 2011 MacBook Pro.

168.    Excluded from the Classes and Subclass are Defendant and its officers, directors and employees; any entity in which Defendant has a controlling interest; the

affiliates, legal representatives, attorneys, heirs and assigns of Defendant; any federal, state, or local government entity; and any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.  Claims for personal injury and consequential damages are excluded.

169.     Questions of law and fact are common to the Class and Subclass and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of the litigation:

    a.   Whether the 2011 MacBook Pro Laptops suffer from a common design defect;

    b.   Whether the 2011 MacBook Pro Laptops suffer from a common defect in materials and workmanship;

    c.   Whether Defendant failed to disclose material information to members of the Class;

    d.   Whether the secret performance downgrade is an unfair and deceptive trade practice;

    e.   Whether failing to disclose to Class members that they may be eligible for a replacement – i.e., a secret recall – is an unfair trade practice.

    f.   Whether Defendant's omission of material fact is misleading or reasonably likely to deceive a reasonable consumer;

    g.   Whether Defendant's purported software update to address "graphical stability" resolved the Graphics Defect;

h.  Whether, by its misconduct as set forth here, Defendant has engaged in unlawful or fraudulent business practices;

i.  Whether members of the Classes and Subclass have been injured by Defendant's misconduct;

j.  Whether as a result of Defendant's misconduct, Plaintiffs and other members of the Classes and Subclass are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

k.  Whether the 2011 MacBook Pros have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

l.  Whether Defendant's express warranty fails of its essential purpose;

m.  Whether Defendant breached its express warranty;

n.  Whether Defendant breached the implied warranty of merchantability;

o.  Whether Defendant knew of and failed to warn of the Graphics Defect; and

p.  Whether Defendant failed to properly disclaim any limitation to pay for repairs or replacement of the MacBook Pros.

170.    The claims of Plaintiffs are typical of the claims of the Classes and Subclass.  Plaintiffs have no interests antagonistic to those of the Classes and Subclass, and Defendant has no defenses unique to the Plaintiffs.

171.    Plaintiffs will protect the interests of the Classes and Subclass fairly and adequately, and Plaintiffs have retained attorneys experienced in complex class action litigation.

172.     A class action is superior to all other available methods for this controversy because (i) the prosecution of separate actions by the members of the Classes and Subclass would create a risk of adjudications with respect to individual members of the Classes and Subclass that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by members of the Classes and Subclass would create a risk of inconsistent or varying adjudications with respect to the individual members of the Classes and Subclass, which would establish incompatible standards of conduct for Defendant; (iii) Defendant acted or refused to act on grounds generally applicable to the Classes and Subclass; and (iv) questions of law and fact common to the Classes and Subclass predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

173.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

174.     The nature of notice to the proposed class is contemplated to be by direct mail/e-mail upon certification of the class or, if such notice is not practicable, by the best notice practicable under the circumstance including, but not limited to, publication in major newspapers and on the Internet.

## FIRST CAUSE OF ACTION
### Asserted On Behalf Of The California Class
### (Breach of Implied Warranty, Song-Beverly Consumer Warranty Act,  CAL. CIV. CODE §§ 1792 *et seq.*)

175.     Plaintiffs, individually, on behalf of all others similarly situated and the general public of the State of California, adopt and incorporate by reference all

allegations contained in the foregoing paragraphs as though fully set forth here.

176.    Under California's Song-Beverly Consumer Warranty Act, Civ. Code §§ 1792 *et seq.*, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable.

177.    The MacBook Pros are "consumer goods" under Cal. Civ. Code § 1791(j).

178.    Defendant is both a "manufacturer" and a "retailer" under Cal. Civ. Code § 1791(j).

179.    Plaintiffs bought, at retail, a 2011 MacBook Pro in the State of California.

180.    By operation of law, Defendant impliedly warranted to Plaintiff and all other Class members who purchased a 2011 MacBook Pro at retail in the State of California that the 2011 MacBook Pro laptops were of merchantable quality and fit for the ordinary purposes for which the MacBook Pro laptops are used.

181.    Defendant breached its implied warranties because from the point of sale, the 2011 MacBook Pros contained an unseen defect that rendered the product inoperable and irreparable. Had the Graphics Defect been known, the MacBook Pros would have been discarded as not being of the quality described in Apple's Warranty. Because of the Graphics Defect, the MacBook Pros were plagued by problems that manifested within the warranty period and eventually caused total failure of the 2011 MacBook Pros.

182.    As a proximate result of Defendant's breach of implied warranties, Plaintiffs and all other California Class members who purchased a 2011 MacBook Pro, at retail, in the State of California have sustained damages and other losses in an amount to be determined at trial. Plaintiffs and the other California Class members are entitled to

recover damages as provided by statute, costs, attorney's fees, rescission, and other relief as is deemed appropriate.

183.    Any purported disclaimer or limitation of the Implied Warranty of Merchantability on the part of Defendant is unconscionable and unenforceable because, *inter alia*, Defendant knew that the MacBook Pros suffer from the Graphics Defect.

## SECOND CAUSE OF ACTION
### Asserted On Behalf Of The California Class and Subclass
**(California Consumers Legal Remedies Act, Cal. Civ. Code. §§ 1750 *et seq.*)**

184.    Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as if fully set forth here.

185.    Throughout the Class Period, the CLRA was in effect.  The CLRA prohibits "unfair or deceptive acts or practices."

186.    This Count is based on Defendant's failure to disclose the existence of the Graphics Defect.

187.    The MacBook Pros are "goods" under Cal. Civ. Code § 1761(a), and Plaintiffs and Class members are "consumers" under Cal. Civ. Code § 1761(d), and the CLRA applies to Defendant's conduct because Defendant's conduct was intended to result, and did result, in the sale of goods for personal, family, or household use.

188.    The CLRA prohibits the failure to disclose a fact when the omission is of a fact the defendant was obliged to disclose.  A defendant is obliged to disclose a fact when the defendant has exclusive knowledge of a material fact.

189.    Defendant had a duty to disclose the existence of the Graphics Defect to Plaintiffs and the CLRA Subclass members because Defendant had exclusive knowledge

of material facts—*i.e.*, the existence of and inability to repair the Graphics Defect—not known to Plaintiffs.

190.    Defendant also had a duty to disclose the secret performance downgrade that reduced the graphical performance of the Laptops by 33% in 2011.

191.    The Graphics Defect and the performance downgrade that Defendant failed to disclose are material to reasonable consumers. A reasonable consumer would expect the MacBook Pros do not suffer from the Graphics Defect.  The existence of the Graphics Defect is the sort of information that would be relied upon by reasonable consumers in deciding whether to purchase the MacBook Pros.  Defendant's failure to disclose the existence of the Graphics Defect is likely to deceive, and did deceive reasonable consumers, including Plaintiffs and the CLRA Subclass members.

192.    Plaintiffs and the CLRA Subclass members relied on Defendant's failure to disclose the existence of the Graphics Defect.  Had Plaintiffs and the CLRA Subclass members known that the MacBook Pros suffered from the Graphics Defect, Plaintiffs and the CLRA Subclass members would not have purchased the 2011 MacBook Pros.

193.    As a result of Defendant's omission, Plaintiffs and the CLRA Subclass members have been damaged in the amount of the entire purchase price of their defective MacBook Pros.

194.    On or about November 13, 2014 Plaintiffs Chandler, Miles, and Roberts wrote to Defendant pursuant to Cal. Civ. Code § 1782(a) in order to provide Defendant with notice of its violation of its warranty and the CLRA ("Plaintiff's CLRA Letter"). In particular, Plaintiffs Chandler and Miles informed Defendant that the MacBook Pros suffer from the Graphics Defect during the one-year warranty period, a material fact of

which Defendant was aware yet failed to disclose. Plaintiffs requested that Defendant acknowledge the existence of the Graphics Defect and attempt to resolve their claims in good faith.

195. To date, Defendant has failed to respond.

196. Because Defendant has refused to provide any relief requested in Plaintiff Chandler, Miles and Roberts' CLRA Letter to all members of the CLRA Subclass, Plaintiffs and members of the Class are entitled to an award of actual damages.

### THIRD CAUSE OF ACTION
**Asserted On Behalf Of The California Class and Subclass**
**(Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq*.)**

197. Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth here.

198. Defendant's practices as alleged in this Complaint constitute unlawful, unfair and fraudulent business acts and practices under the UCL, Bus. & Prof. Code §§ 17200, *et seq.*

199. The UCL prohibits acts of "unfair competition," including any unlawful, unfair, or fraudulent business act or practice.

200. A violation of another law is treated as "unlawful competition" that is independently actionable. A business practice is "unfair" if (i) the utility of Defendant's conduct is substantially outweighed by the gravity of the harm to the alleged victim; (ii) Defendant's practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or (iii) Defendant's practice would deceive a reasonable consumer.

201. Defendant committed unlawful practices because it violated the CLRA.

202.    Defendant committed unfair practices because it failed to disclose that the MacBook Pros suffer from the Graphics Defect to Plaintiffs Book and Cowart and other Class members, despite knowledge of the Graphics Defect throughout the Class Period.

203.    Defendant also committed unfair practices by releasing a software patch that purportedly addressed the Graphics Defect, when Defendant was aware that the issue was related to hardware, not hardware.

204.    Defendant engaged in unfair, deceptive, untrue or misleading advertising by: (a) Representing that the 2011 MacBook Pro Laptops performed three-times faster than the 2010 models after Defendant had secretly reduced the performance capabilities of the 2011 MacBook Pro Laptops; (b) representing that the MacBook Pro Laptops would last for five years, when Defendant was aware of the Graphics Defect, which affected all 2011 MacBook Pro Laptops.

205.    Defendant committed unfair, unlawful or fraudulent practices by: (a) slowing the performance of the Laptops in order to conceal the Graphics Defect or to prevent the Laptops from failing during the one-year-warranty period; (b) charging Class members between $350 to $600 to temporarily repair the Graphics Defect, when Defendant was aware that the purported repair would, at best, only temporarily remedy the inherent Graphics Defect; (c) failing to disclose that the March 2011 software patch had not remedied the Graphics Defect to Class members; and (d) enacting a secret recall, through which some Class members received free repairs or non-defective laptops, while charging Plaintiffs and other Class members hundreds of dollars each for temporary repairs.

206.     Plaintiffs and the California Class members relied on such statements and omissions.  Had Plaintiffs and Class members known that the MacBook Pros suffered from the Graphics Defect, that the MacBook Pros did not offer the graphical performance that Apple promised, and that the Laptops contained an inherent, irremediable defect, Plaintiffs and Class members would not have purchased the 2011 MacBook Pro laptops, or they would have paid a reduced price for them.

207.     Accordingly, Plaintiffs seek an injunction requiring Defendant to establish a common fund to repair Class members' MacBook Pros, restitution, and all other relief this Court deems appropriate.

### FOURTH CAUSE OF ACTION
**Asserted On Behalf Of The California Class and Subclass**
**(For Violations of the False Advertising Law, Bus. & Prof. Code § 17500, *et seq.*)**

208.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth here.

209.     Plaintiffs bring this cause of action on behalf of themselves and the California Class.

210.     Defendant Apple, Inc. is a California company disseminating advertising from California throughout the United States, which advertising was planned in California. Defendant disseminated or caused to be disseminated the materially untrue and misleading advertising described in this Complaint with the intent to directly or indirectly induce Plaintiffs and members of the Class to purchase the Laptops.

211.     The advertising misrepresenting the graphical performance of the 2011 MacBook Pro Laptops, or omitting to state that the Laptops' graphical performance was downgraded through a software update, were untrue, misleading, and deceptive as set forth in this Complaint.

212.     When Defendant disseminated the advertising described here, it knew, or by the exercise of reasonable care should have known, that the statements concerning graphical performance being three-times faster than the 2010 models were untrue or misleading, or omitted to state the truth about the Laptops' graphical performance in violation of the Fair Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

213.     Plaintiffs, on behalf of themselves and on behalf of the Class, seek restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

## FIFTH CAUSE OF ACTION
### Asserted On Behalf Of All Classes
### (Breach of Express Warranty)

214.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth here.

215.     Apple made affirmations of fact and promises to Plaintiffs and members of the Class which related to the 2011 MacBook Pros as more fully described here.

216.     These affirmations of fact and promises created an express warranty that the 2011 MacBook Pros would conform to Apple's affirmations and promises.

217.      Apple uniformly warranted all of the 2011 MacBook Pros against defects in material or workmanship at a time when it knew that the 2011 MacBook Pros suffered from serious defects and, nevertheless, continued to market and sell the 2011 MacBook Pros with this express warranty.

218.     Prior to November 2011, Apple uniformly represented that the 2011 MacBook Pros offered graphical performance that was three-times faster than the 2010

MacBook Pros when, in fact, the Laptops' performance was only two-times faster than the 2010 models.

219.    Apple is obligated under the terms of its warranty to repair or replace the 2011 MacBook Pros sold to Plaintiffs and members of the Classes.

220.    Apple has breached its written warranty, as set forth above, by supplying the 2011 MacBook Pros in a condition which does not meet the express representations and warranty obligations undertaken by Apple and by failing to repair the Graphics Defect.

221.    As set forth above, Apple's warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes cannot and should not be limited to the remedies set forth in Apple's written warranty and, instead, should be permitted to recover all measures of appropriate relief.

222.    Apple has received sufficient and timely notice of the breaches of warranty alleged here. Despite this notice and Apple's knowledge of the defects in the 2011 MacBook Pros, Apple has failed and refused to honor its warranty, even though it knows of the defects inherent in the 2011 MacBook Pros.

223.    Plaintiffs and members of the Class have given Apple a reasonable opportunity to cure its failures with respect to its warranty, and Apple has failed to do.

224.    Apple has failed to provide Plaintiff and members of the Classes, as a warranty repair or replacement, a product that conforms to the qualities and characteristics that Apple expressly warranted when it sold the 2011 MacBook Pros to Plaintiffs and members of the Classes.

225.     As a result of Apple's breach of warranty, Plaintiffs and members of the Classes have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Asserted On Behalf Of All Classes
### (Fraudulent Concealment/Nondisclosure)

226.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth here.

227.     At all relevant times, Apple knew that the 2011 MacBook Pro laptops suffered from the Graphics Defect and would fail in advance of their anticipated useful life under ordinary use and conditions. Defendant also knew that the anticipated useful like of a 2011 MacBook Pro was, at a minimum, four years.

228.     Defendant also knew that, because of the Graphics Defect, the 2011 MacBook Pro Laptops would not perform as anticipated, particularly with respect to the very graphically intensive tasks for which the Laptops were marketed.

229.     Defendant concealed information that the AMD GPUs were defectively soldered to the logic board and/or the chip carrier and that a functioning and non-defective AMD GPU was necessary to achieve the promised results regarding graphical performance and the users' ability to use an external monitor, process photographs and video, and view high definition content.

230.     Defendant also concealed for a period of months that the 2011 MacBook Pro Laptops' graphical performance had been reduced by 33% in order to delay the manifestation of the Graphics Defect.

231.     The concealed information is material in that a reasonable consumer would find it important when deciding whether to buy the MacBook Pros and, if so, how

much to pay. All of the misrepresentations alleged here are connected to and dependent on a functioning AMD GPU.

232.    Defendant was also and continues to be under a duty to Plaintiffs and the Classes to disclose these facts because:

      a.    Defendant is in superior position to know the truth about the quality and nature of the MacBook Pros; and

      b.    Defendant actively concealed from Plaintiffs and the Classes the fact that the MacBook Pros were and are defective at the point of sale and substantially likely to fail in advance of their anticipated useful life.

233.    Defendant fraudulently and intentionally concealed from and/or failed to disclose to Plaintiffs and Class members the facts  described above with the intent to defraud Plaintiffs and Class members and for the purpose of inducing Plaintiffs and Class members to act thereon by purchasing the more expensive MacBook Pros. Defendant knew that Plaintiffs and Class members would not purchase or pay as much for the MacBook Pros if Defendants had disclosed the defective nature of the MacBook Pros and their AMD GPUs.

234.    Defendant surreptitiously decreased the performance of the Laptops in order to conceal the Graphics Defect and delay the inevitable failure of the Laptops from occurring within the one-year warranty period.

235.    Plaintiffs and Class members were unaware of the Graphics Defect and that the MacBook Pros were defective and prone to failure.

236.    Plaintiffs and Class members were unaware that Defendant surreptitiously downgraded the performance of their Laptops in order to conceal the Graphics Defect.

237.    Plaintiffs and Class members justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of the MacBook Pros. Had Defendant disclosed the true defective nature of the MacBook Pros, Plaintiffs and Class members would not have purchased, or would have paid less for, their Laptops.

238.    As a direct and proximate cause of Defendant's misconduct, Plaintiffs and Class members have suffered actual damages in that they have or will have to continue to pay for repairs and/or replacements. Plaintiffs and Class members have further suffered actual damages because the MacBook Pros are equipped with GPUs that prevent them from achieving the graphical performance promised and will fail well in advance of their anticipated useful life. Plaintiffs and Class members have also suffered unreasonable diminution in value of the MacBook Pros as a result of Defendant's misconduct.

239.    Defendant's misconduct has been and is wanton and/or reckless and/or shows a reckless different to the interests of others.

## SEVENTH CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class
### (Failure to Warn, Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. §§ 501.201 *et seq.*)

240.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth here.

241.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. (hereafter referred to as "FDUTPA"). The stated purpose of FDUTPA is to "protect the consuming . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

242.    Plaintiffs Manners and Garofalo and all members of the Florida Class are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by the Florida Statutes § 501.203(7) and (8) respectively.

243.    As described here, Apple knew, or by the exercise of reasonable care should have known, that the 2011 MacBook Pros would have and had the alleged Graphics Defects.

244.    Apple knew that the Florida Plaintiffs and the other members of the Florida Class, who used the MacBook Pros for their intended use, were members of a foreseeable class of persons who were and are at risk of suffering inconvenience and expense solely because of the Graphics Defect.

245.    At the time Apple manufactured, distributed and/or sold the 2011 MacBook Pros, it owed a non-delegable duty to persons like the Florida Plaintiffs and the other members of the Florida Class and the Florida Subclass to exercise ordinary and reasonable care to properly design the MacBook Pros, and it owes a continuing duty to warn about the problem and to repair and/or recall the MacBook Pros.

246.    Apple had a pre-sale duty to warn potential purchasers that the Affected MacBook Laptops carried with them greater risks of graphical defects, system instability, and system failure, than an ordinary consumer would expect when using the 2011 MacBook Pros in their intended or reasonably-foreseeable manner.

247.    Apple failed to use appropriate design, engineering, and parts in manufacturing the 2011 MacBook Pros, and in other respects, Apple breached its duties by being wantonly reckless, careless, and negligent.

248.     Defendant violated FDUTPA by engaging in the unfair and deceptive actions and/or omissions as described here when it manufactured, distributed, marketed and sold the 2011 MacBook Pros that it knew contained material defects which were not adequately disclosed to the consuming public. Defendant expressly and impliedly represented that the 2011 MacBook Pros were dependable; suitable for ordinary use; and of good workmanship, material and design, and free from material defects. In fact, the 2011 MacBook Pros possess the Graphics Defect. Defendant concealed and failed to disclose these adverse material facts to Plaintiffs and members of the Florida Class and the Florida Subclass.

249.     Defendant knew or should have known that the 2011 MacBook Pros were defectively designed and/or manufactured due to the Graphics Defect, which results in unstable and ultimately inoperable computers that result in severe inconvenience and costs for repair and/or replacement.

250.     Despite Apple's knowledge that the 2011 MacBook Pros possessed the Graphics Defect, Apple continued to market, manufacture, distribute and sell the 2011 MacBook Pros to consumers, including Plaintiffs and the Florida Class and the Florida Subclass, without adequate disclosure of the inherent Graphics Defect.

251.     Defendant's acts and omissions in, among other things, distributing, marketing and/or selling to consumers a product known to contain a material defect that affects that stability, usability, and durability of the 2011 MacBook Pros, are unconscionable, deceptive and unfair acts and practices in the Conduct of Defendant's trade or commerce, in violation of the FDUTPA.

252.    Defendant's acts and omissions in, among other things, failing to provide consumers with adequate warnings about the Graphics Defect with the 2011 MacBook Pros are unconscionable, deceptive and unfair acts and practices in the conduct of Defendant's trade or commerce, in violation of the FDUTPA.

253.    Defendant's concealment of the Graphics Defect in the 2011 MacBook Pros constitutes deceptive and unfair trade practices because Defendant knew such facts would be unknown and not easily discoverable by Plaintiffs and Class Members and would contravene their ordinary, foreseeable and reasonable expectations concerning the performance of the 2011 MacBook Pros. Plaintiffs and other Class members were reasonably deceived by Defendant's unfair and deceptive practices to their detriment.

254.    As a direct result of Apple's failure to adequately warn consumers of the Graphics Defect in the 2011 MacBook Pros, Plaintiffs and the Florida Class and the Florida Subclass have suffered damages as set out here.

255.    As a direct and proximate result cause of the violation of the FDUTPA, described above, Plaintiffs Manners and Garofalo and the Florida Class and the Florida Subclass members have been injured in that they own 2011 MacBook Pros based on Defendant's failure to disclose the material facts alleged above.

256.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the FDUTPA. Plaintiffs Manners and Garofalo and the Florida Class and Florida Subclass members have suffered actual damages for which they are entitled to relief pursuant to Fla. Stat. 501.211(2).

257.    Defendant's unlawful conduct is continuing, with no indication that it will cease.

258.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged here, Plaintiffs Manners and Garofalo  and the Florida Class and Florida Subclass members have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiffs Manners and Garofalo and the Florida Class and the Florida Subclass members seek equitable relief and to enjoin Apple on the terms that the Court considers reasonable, and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
### Asserted On Behalf Of All Classes
### (Statutory Consumer Fraud)

259.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth here.

260.    At all times relevant hereto, there was in full force and effect the Consumer Protection Statutes materially identical to the Illinois Consumer Fraud and Deceptive Business  Practices Act, 815 ILCS 505/1 *et seq.* and substantially similar state consumer protection statutes (the "Act").

261.    Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the  concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade

Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).

262.    Plaintiffs and other Class members are consumers within the meaning of Consumer Fraud Acts given that Defendants' business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

263.    Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . ." Illinois case law holds that reliance on the deception is not an element of a consumer fraud claim.

264.    Except as noted below, the consumer fraud statutes and/or interpretative case law of Illinois' sister states have also either: (a) expressly prohibited omissions of material fact, without regard for reliance on the deception, or (b) have not addressed those issues.

265.    Once the risk of damage caused by the defect in the 2011 MacBook Pro laptops became significant, consumers (such as Plaintiffs) were entitled to disclosure of the defect because:

   a.  A significant risk of a failed Laptop would be a material fact in a consumer's decision-making process, and

   b.  Without Apple's disclosure, consumers would not know that there is any risk of failure.

266.    Moreover, because Apple's warranties are limited in duration, consumers were  further entitled to know that the Graphics Defect might not exhibit itself until after their warranties expired,  and if that occurred, Apple was not committing to repair the condition.  All of these facts were  material to consumers' (such as Plaintiffs') purchase decisions.

267.    Specifically, at all times relevant, Apple continuously and consistently failed to  disclose to consumers (such as Plaintiffs):

a.    There was a substantial risk of the Graphics Defect;

b.    That the Graphics Defect may not exhibit itself until after the warranty has expired;

c.    That the March 2011 software update did not remedy the Graphics Defect;

d.    That Apple reduced the graphical performance of the Laptops in order to conceal the Graphics Defect;

e.    That Apple's costly logic board replacements did not remedy the underlying Graphics Defect;

f.    That Apple was performing a secret recall, giving some Class members new laptops or free repairs; and

g.    That if the Graphics Defect exhibited itself after the warranty period expired Apple was not committing to repair the condition.

Apple  intentionally, negligently or  recklessly failed  to  make  these  disclosures despite  opportunities through its employees, sales literature, advertising and its website.

268.    This conduct constitutes consumer fraud within the meaning of the various  consumer protection statutes.

269.    Plaintiffs and the Class have been damaged by Apple's deception because:

(a) they  purchased Laptops that developed the undisclosed Graphics Defect, which

rendered their Laptops inoperable, (b)  in many instances the condition exhibited itself after Plaintiffs' warranty period expired, and (c)  Apple refused to pay to repair the condition because the warranty had expired.

270.    If Apple had disclosed the above facts to Plaintiffs, they could have (and would  have) prevented economic injury by either, negotiating additional warranty coverage, negotiating  a lower price to reflect risk  or  simply avoiding the risk altogether by purchasing  a  different  manufacturer's laptop, or an Apple laptop that did not contain a discrete GPU.

271.    Apple has committed deceptive acts or practices within the meaning of the  Act by engaging in the acts and practices alleged here, including, but not limited to, its failure  to disclose the material defects.

272.    Defendants' conduct alleged here is furthermore unfair insofar as it offends  public policy; is so oppressive that the consumer has little alternative but to submit; and causes  consumers substantial injury.

273.    As a direct and proximate result of the unfair acts  or  practices of Defendants  alleged here, Plaintiffs and other members of the Class were damaged, in violation of the state   consumer protection statutes listed below.

274.    Defendants have engaged in unfair competition or unfair or deceptive acts  or  practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq*.

275.    Defendants have engaged in unfair competition or unfair or deceptive acts  or  practices in violation of ARK. CODE ANN. § 4-88-107, *et seq*.

276.    Defendants have engaged in unfair competition, or unfair or deceptive acts  or  practices or has made false representations in violation of COLO. REV. STAT. § 6-

1-101, *et seq.*

277.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

278.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

279.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

280.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

281.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq.*

282.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

283.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in 815 ILL. COMP. STAT. 505/1, *et seq.*

284.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

285.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

286.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

287.    Defendants have engaged in unfair competition or unfair or deceptive

acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

288. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

289. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

290. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

291. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, *et seq.*

292. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

293. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, *et seq.*

294. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

295. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

296. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

297. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

298. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq.*

299.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OHIO REV. CODE ANN. § 1345.01, *et seq.*

300.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

301.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

302.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

303.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

304.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

305.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

306.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

307.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

308.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

309.     Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

310.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*

311.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

312.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq.*

## NINTH CAUSE OF ACTION
### Asserted On Behalf Of The Vermont Class
### (Breach of Implied Warranty of Merchantibility and
### Fitness for a Particular Purpose.)

313.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth here.

314.     By operation of law, Defendant impliedly warranted to Plaintiff and all other Class members who purchased a 2011 MacBook Pro at retail in the State of Vermont that the 2011 MacBook Pro laptops were of merchantable quality, fit for the ordinary purposes for which the MacBook Pro laptops are used, and fit for the particular purpose of performing graphically demanding tasks.

315.     Defendant breached its implied warranties because the MacBook Pros contained an unseen defect at the point of sale that render the product unmerchantable from the outset. Had the Graphics Defect been known, the MacBook Pros would have been discarded as not being of the quality described in Apple's Warranty. Because of the Graphics Defect, the MacBook Pros were plagued by problems that manifested within the warranty period and eventually caused total failure of the MacBook Pros.

316.     As a proximate result of Defendant's breach of implied warranties, Plaintiff Fournier and all other Vermont Class members who purchased a 2011 MacBook

Pro, at retail, in the State of Vermont have sustained damages and other losses in an amount to be determined at trial. Plaintiff Fourier and the other Vermont Class members are entitled to recover damages as provided by statute, costs, attorney's fees, rescission, and other relief as is deemed appropriate.

**TENTH CAUSE OF ACTION**
**Asserted On Behalf Of All Classes**
**(Violation of Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq.*)**

317.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth here.

318.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

319.    Apple is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

320.    The 2011 MacBook Pros are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

321.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

322.    Apple's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The MacBook Pros implied warranties are covered under 15 U.S.C. § 2301(7).

323.    Apple breached these warranties as described in more detail above. Without limitation, the MacBook Pros are equipped with the AMD GPUs and manufactured with the defective lead-free solder. The MacBook Pros share a common

design defect in that the AMD GPU and computer fails to operate as represented by Apple.

324.    Plaintiffs have had sufficient dealings with either Apple or its agents (resellers and technical support) to establish privity of contract between Apple, on the one hand, and Plaintiffs and the Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs each of the Class members are intended third-party beneficiaries of contracts between Apple and its resellers, and specifically, of Apple's warranties. The warranty agreements were designed for and intended to benefit the consumers only.

325.    Affording Apple a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. In fact, Plaintiffs have already given Apple the opportunity to cure its breaches, and Apple has failed, after numerous attempts, to cure the defects. At the time of sale or lease of each 2011 MacBook Pro, Apple knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the 2011 MacBook Pros' ability to perform as warranted, but nonetheless failed to rectify the situation or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirements that Plaintiffs resort to an informal dispute resolution procedure or afford Apple a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

326.    Plaintiffs and the other Class members would suffer economic hardship if they returned their MacBook Pros but did not receive the return of all payments made by them. Because Apple is refusing to acknowledge any revocation of acceptance and return

immediately all payments made, Plaintiffs and the other Class members have not re-accepted their MacBook Pros by retaining them.

327. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

328. Plaintiffs, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the MacBook Pros, in an amount to be proven at trial.

## DECLARATORY RELIEF

329. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth here.

330. Defendant has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

331. Plaintiffs seek a declaration that:

  a. The MacBook Pros have a Graphics Defect which results in premature failure;

  b. Defendant's warranty fails of its essential purpose;

  c. Certain provisions of Defendant's warranty are void as unconscionable;

  d. Defendant must notify owners of the 2011 MacBook Pros;

e.   Defendant will reassess all prior warranty claims and pay the full costs of repairs and damages; and

f.   Defendant will pay the costs of inspection to determine whether any Class Members MacBook Pros require replacement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated in the United States, prays the Court enter judgment against Apple as follows:

a.   Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

b.   Issue a permanent injunction or other appropriate equitable relief requiring Defendant to establish a common fund for repairs for, or replacement of the fifteen- and seventeen-inch 2011 MacBook Pros;

c.   Order Defendant to pay Plaintiffs and other Class and Subclass members an amount of actual, statutory, and punitive damages, and restitution in an amount to be determined at trial, and where allowed by law;

d.   Issue an order granting Plaintiffs' reasonable costs and attorneys' fees; and

e.   Grant such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: December 19, 2014                     Respectfully submitted,

By:      ___/s/ Michael F. Ram___
         Michael F. Ram (SBN 104805)
         RAM, OLSON, CEREGHINO
          & KOPCZYNSKI LLP
         555 Montgomery Street, Suite 820
         San Francisco, CA  94111
         Telephone:  415-433-4949
         Facsimile:  415-433-74311

Email:  mram@rocklawcal.com

Gary E. Mason (*pro hac vice*)
Steven N. Berk (to be admitted *pro hac vice*)
Esfand Y. Nafisi (*pro hac vice*)
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste. 605
Washington, DC  20036
Tel:  202-429-2290
Email:  GMason@wbmllp.com
Email:  sberk@wbmllp.com
Email:  enafisi@wbmllp.com

*Attorneys for Plaintiff*