MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
SARAH H. TRELA (S.B. #293089)
strela@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:    (415) 984-8700
Facsimile:     (415) 984-8701

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA  90071-2899
Telephone:    (213) 430-6000
Facsimile:     (213) 430-6407

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ZACHARY BOOK, DONALD COWART, JOHN MANNERS, LORI ASHBAUGH, JESSICA CHANDLER, MICHAEL GHEZZI, THOMAS GAROFALO, HOLLY FOURNIER, ADAM MILES, JONATHAN ROWE, LOUIS RAMOS, and JENNIFER ROBERTS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No.  5:14-CV-04746-EJD <br><br> **DEFENDANT APPLE INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:    April 2, 2015 <br> Time:             9:00 a.m. <br> Judge:            Hon. Edward J. Davila <br> Courtroom:        4 <br><br> Complaint Filed:  October 24, 2014 <br> Trial Date:       None set |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3

PLEASE TAKE NOTICE THAT on April 2, 2015, at 9:00 a.m. or as soon thereafter as

4

the matter may be heard, in the United States District Court, Northern District of California,

5

San Jose Courthouse, located at 280 South 1st Street, Courtroom 4, before the Honorable

6

Edward J. Davila, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an

7

order dismissing all of the claims in Plaintiffs' First Amended Complaint (the "FAC") pursuant to

8

Fed. R. Civ. P. 12(b)(6) and 9(b), under the applicable state laws, on the grounds identified

9

below:

10

| Claim | Defense: | CA | FL | CO | IL | IN | PR | VT |
|---|---|---|---|---|---|---|---|---|
| ***Express Warranty*** *(Claim 5, 10)* | No Breach | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Design Defect Not Covered | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Lack of Privity | | ✓ | | | | | |
| | Statute of Limitations | | | ✓ | | | | |
| ***Implied Warranty*** *(Claims 1, 9, 10)* | Not Unmerchantable | ✓ | | | | | | ✓ |
| | No Particular Purpose | | | | | | | ✓ |
| ***Fraud-Based Claims*** *(Claims 2-4, 6, 7, 8)* | No Reliance | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | No Actionable Omission | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Rule 9(b) Not Met | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Economic Loss Rule | | | ✓ | | ✓ | ✓ | |
| | Statute of Limitations | | | | ✓ | ✓ | ✓ | |
| | Not Unfair or Unlawful | ✓ | | | | | | |
| ***Declaratory Relief*** | Duplicative & Not a Cause of Action | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

22

This Motion is based on this Notice of Motion and Motion, the accompanying

23

Memorandum of Points and Authorities, Request for Judicial Notice, the papers and records on

24

file in this action, and such other written and oral argument as may be presented to the Court.

25

Dated: January 29, 2015

O'MELVENY & MYERS LLP
MATTHEW D. POWERS

26

By: /s/ Matthew D. Powers

27

Matthew D. Powers
Attorneys for Defendant
APPLE INC.

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND FACTS ........................................................................................... 3

III. LEGAL STANDARDS .............................................................................................. 5

IV. ARGUMENT .............................................................................................................. 6

    A. Plaintiffs' Express Warranty Claims Fail As A Matter Of Law ............................ 6

        1. Apple Honored the Limited Warranty ........................................................ 6

        2. "Materials and Workmanship" or "Design"? ............................................. 9

        3. Plaintiffs Manners and Garofalo Lack Privity ........................................... 9

        4. Ghezzi's Warranty Claim is Barred by the Statute of Limitations .......... 10

    B. No Implied Warranty Claim is Alleged ............................................................... 10

    C. Plaintiffs Have No Warranty Claim Under Magnuson-Moss .............................. 12

    D. Plaintiffs' Fraud Claims Should be Dismissed .................................................... 12

        1. Plaintiffs Never Saw The Alleged "Misrepresentations" ......................... 12

        2. Plaintiffs Have Not Alleged Any Actionable Omission ........................... 14

        3. Plaintiffs Must Plead Fraud With Particularity ........................................ 20

    E. Plaintiffs' Remaining Claims Suffer From a Host of Defects ............................. 21

        1. Plaintiffs' Fraud Claims Are Barred by the Economic Loss Rule in Colorado, Indiana, and Puerto Rico ......................................................... 21

        2. Plaintiffs' Indiana, Illinois, and Puerto Rico Consumer Fraud Claims Are Barred by the Statute of Limitations ...................................... 22

        3. Plaintiff's "Unlawful" and "Unfair" UCL Claims Fail ............................ 23

V. PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF IS IMPROPER ............... 24

VI. CONCLUSION ......................................................................................................... 24

1

## TABLE OF AUTHORITIES

2

Page(s)

3   CASES

4   *Alpine Bank v. Hubbell,*
5       555 F.3d 1097 (10th Cir. 2009) ........................................................................ 13

6   *Ashcroft v. Iqbal,*
        556 U.S. 662 (2009) .................................................................................... 6, 14
7
    *Bailey v. Monaco Coach,*
8       350 F. Supp. 2d 1036 (N.D. Ga. 2004) ................................................................ 8

9   *Balistreri v. Pacifica,*
        901 F.2d 696 (9th Cir. 1988) ............................................................................. 5
10
    *Baltazar v. Apple,*
11      2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ....................................................... 6

12  *Bardin v. DaimlerChrysler Corp.,*
        136 Cal. App. 4th 1255 (2006) ............................................................. 15, 23, 24
13
    *Berenblat v. Apple,*
14      2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..................................................... 20

15  *Birdsong v. Apple,*
        590 F.3d 955 (9th Cir. 2009) ........................................................................... 12
16
    *Bly-Magee v. Cal.,*
17      236 F.3d 1014 (9th Cir. 2001) ......................................................................... 20

18  *Boyd v. A.O. Smith,*
        776 P.2d 1125 (Colo. Ct. App. 1989) .............................................................. 10
19
    *Brisson v. Ford,*
20      349 F. App'x 433 (11th Cir. 2009) ..................................................................... 7

21  *Cadlo v. Owens-Illinois,*
        125 Cal. App. 4th 513 (2004) .......................................................................... 13
22
    *Cel-Tech v. L.A. Cellular,*
23      20 Cal. 4th 163 (1999) .................................................................................... 17

24  *Cipollone v. Liggett Grp.,*
        505 U.S. 504 (1992) ........................................................................................ 7
25
    *Clemens v. DaimlerChrysler,*
26      534 F.3d 1017 (9th Cir. 2008) ..................................................................... 12, 16
27
    *Cohen v. Implant Innovations,*
28      259 F.R.D. 617 (S.D. Fla. 2008) ....................................................................... 7

DEF. APPLE'S MOTION TO DISMISS FAC
                                                    NO. 5:14-CV-04746-EJD

1

2

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

3

4

*Collins v. eMachines,*
202 Cal. App. 4th 249 (2011) ................................................ 17

5

*Colo. Coffee Bean v. Peaberry Coffee,*
2010 WL 547633 (Colo. Ct. App. April 1, 2010) ................................ 16

6

7

*Cooley v. Big Horn Harvestore,*
813 P.2d 736 (Colo. 1991) .................................................. 6

8

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) .......................................... passim

9

10

*Davis v. HSBC,*
691 F.3d 1152 (9th Cir. 2012) ............................................. 23

11

*Davis v. Powertel,*
776 So. 2d 971 (Fla. Ct. App. 2000) .................................... 18, 19

12

13

*De Bouse v. Bayer AG,*
922 N.E.2d 309 (Ill. 2009) ............................................... 13

14

15

*Deburro v. Apple Inc.,*
2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) .................................. 8

16

*Dremak v. Iovate Health Scis. Group, Inc.,*
2014 U.S. Dist. LEXIS 11750 (S.D. Cal. Jan. 27, 2014) ....................... 20

17

18

*Dupont-Benlate Litig.,*
859 F. Supp. 619, 623 (D. P.R. 1994) ...................................... 6

19

*Edwards v. ZeniMax Media,*
2013 WL 5420933 (D. Colo. Sept. 27, 2013) .............................. 2, 19

20

21

*Ferranti v. Hewlett-Packard,*
2014 WL 4647962 (N.D. Cal. Sept. 16, 2014) ........................... 1, 7, 9

22

23

*Fiberglass Component Prod. v. Reichhold,*
983 F. Supp. 948 (D. Colo. 1997) .......................................... 6

24

*Flamingo Indus. (USA) Ltd. v. U.S. Postal Srv.,*
302 F.3d 985 (9th Cir. 2002), *rev'd on other grounds*, 540 U.S. 736 (2004) ......... 17

25

26

*Former TCHR, LLC v. First Hand Management,*
317 P.3d 1226 (Colo. Ct. App. 2012) ..................................... 21

27

*Goldberg v. BAC Home Loans,*
2013 WL 4501014 (S.D. Cal. Aug. 21, 2013) .............................. 24

28

1

**TABLE OF AUTHORITIES**
*(continued)*

2

**Page(s)**

3

*Gregory v. Poulin Auto,*
    2012 VT 28 (Vt. 2012)..................................................................................... 18

4

*Gunkel v. Renovations,*
    822 N.E.2d 150 (Ind. 2005) ........................................................................... 21

5

6

*Hall v. Walter,*
    969 P.2d 224 (Colo. 1998) ............................................................................. 13

7

*Hasek v. DaimlerChrysler,*
    745 N.E.2d 627 (Ill. App. Ct. 2001) ............................................................. 6, 9

8

9

*Heath v. Palmer,*
    2006 VT 125 (Vt. 2006)................................................................................. 11

10

*Hill v. Hoover,*
    899 F. Supp. 2d 1259 (N.D. Fla. 2012)........................................................... 9

11

12

*Hodges v. Apple,*
    2013 U.S. Dist. LEXIS 114374 (N.D. Cal. Aug. 12, 2013)............................ 15, 23

13

14

*Hoey v. Sony Elecs. Inc.,*
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................... 15, 16

15

16

*Hovsepian v. Apple,*
    2009 WL 2591445 (N.D. Cal. Aug. 21, 2009)................................................ 10, 11

17

*Hutson v. Rexall,*
    837 So. 2d 1090 (Fla. Ct. App. 2003) ........................................................... 13

18

19

*Hyundai v. Goodin,*
    822 N.E.2d 947 (Ind. 2005) ........................................................................... 6

20

*In re Frito-Lay,*
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013).............................. 7

21

22

*In re Sears,*
    2012 WL 1015806 (N.D. Ill. Mar. 22, 2012).................................................. 13

23

*In re Sony Grand,*
    758 F. Supp. 2d 1077 (S.D. Cal. Nov. 30, 2010).......................................... 16

24

25

*In re Tobacco II,*
    46 Cal. 4th 298 (2009) ................................................................................... 13

26

*In re Toyota,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................................ 9

27

28

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*In re Vioxx,*
522 F. Supp. 2d 799 (E.D. La. 2007) ................................................. 22

*Irwin v. Miami-Dade County,*
2009 U.S. Dist. LEXIS 14726 (S.D. Fla. Feb. 25, 2009) ........................... 13

*Isla Nena Air Serv. v. Cessna,*
449 F.3d 85 (1st Cir. 2006) ....................................................... 18, 21

*Ivar v. Elk River Partners,*
705 F. Supp. 2d 1220 (D. Colo. 2010) ................................................ 16

*Kearns v. Ford,*
567 F.3d 1120 (9th Cir. 2009) ...................................................... 20

*Kent v. Hewlett-Packard Co.,*
2010 WL 2681767 (N.D. Cal. July 26, 2010) ........................................... 16

*Laster v. T-Mobile,*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................... 14

*Lewis v. Trans Union,*
2013 WL 1680639 (E.D. Cal. Apr. 17, 2013) ........................................... 24

*Long Trial House v. Engelberth,*
2012 VT 80 (Vt. 2012) ............................................................... 11

*Long v. Hewlett-Packard,*
2007 WL 2994812 (N.D. Cal. July 27, 2007) ...................................... 7, 8, 16, 17

*Low v. LinkedIn,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................... 14

*Lyman v. Pfizer,*
2012 U.S. Dist. LEXIS 101152 (D. Vt. 2012) .......................................... 12

*Marchante v. Sony,*
801 F. Supp. 2d 1013 (S.D. Cal. 2011) ............................................... 11

*Marcus v. Apple,*
2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ........................................... 15, 20

*Marolda v. Symantec,*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................ 20

*Matthews v. American Honda,*
2012 WL 2520675 (S.D. Fla. June 6, 2012) .......................................... 2, 18

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Maxcess v. Lucent,*
  2005 WL 6125471 (M.D. Fla. Jan. 5, 2005) .......................................................... 16

*Mazzeo v. Nature's Bounty,*
  2014 U.S. Dist. LEXIS 159345 (S.D. Fla. Nov. 10, 2014) ....................................... 9

*McCabe v. American Honda Motor Co.,*
  100 Cal. App. 4th 1111 (2002) ................................................................................. 9

*McGlinchy v. Shell,*
  845 F.2d 802 (9th Cir. 1988) .................................................................................... 6

*McNeary-Calloway v. JP Morgan,*
  863 F. Supp. 2d 928 (N.D. Cal. 2012) .................................................................... 24

*Mesa v. BMW,*
  904 So. 2d 450 (Fla. Ct. App. 2005) ........................................................................ 9

*Mexia v. Rinker Boat Co.,*
  174 Cal. App. 4th 1297 (2009) ............................................................................... 11

*Millennium v. Office of the AG,*
  761 So. 2d 1256 (Fla. Ct. App. 2000) ............................................................... 18, 19

*Mocek v. Alfa Leisure,*
  114 Cal. App. 4th 402 (2003) ................................................................................. 10

*Moffitt v. Icynene,*
  407 F. Supp. 2d 591 (D. Vt. 2005) .................................................................... 11, 13

*Morgan v. Harmonix, Inc.,*
  2009 WL 2031765 (N.D. Cal. July 30, 2009) ......................................................... 15

*Morris v. Nutri/System,*
  774 F. Supp. 889 (D. Vt. 1991) ................................................................................ 6

*Moss v. U.S.,*
  572 F.3d 962 (9th Cir. 2009) .................................................................................... 6

*Munch v. Sears, Roebuck and Co.,*
  2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) ......................................................... 16

*O'Connor v. Kawasaki,*
  699 F. Supp. 1538 (S.D. Fla. 1988) .......................................................................... 9

*Ocana v. Ford,*
  992 So. 2d 319 (Fl. Ct. App. 2008) .......................................................................... 6

1

**TABLE OF AUTHORITIES**
*(continued)*

2

Page(s)

3

*Ocaso v. Puerto Rico Maritime*,

4
    915 F. Supp. 1244 (D. P.R. 1996) .......................................................................................... 23

*Oestreicher v. Alienware Corp.*,

5
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................... 20

6

*Oliveira v. Amoco Oil*,

7
    776 N.E.2d 151 (Ill. 2002) ..................................................................................................... 13

8

*Perret v. Wyndham*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ................................................................................. 21

9

*Princess Cruise v. Superior Court*,

10
    179 Cal. App. 4th 36 (2009) .................................................................................................. 13

11

*Progency Ventures v. Western Union*,
    752 F. Supp. 2d 1127 (C.D. Cal. 2010) ................................................................................ 24

12

*Ramos v. Hyundai*,

13
    431 F. Supp. 2d 209 (D. P.R. 2006) ...................................................................................... 22

14

*Reed v. Central Soya*,
    621 N.E.2d 1069 (Ind. 1993) ................................................................................................. 22

15

*Richards v. Goerg Boat*,

16
    384 N.E.2d 1084 (Ind. Ct. App. 1979) .................................................................................... 6

17

*Rodriguez-Ortega v. Philip Morris*,

18
    2005 WL 2977795 (D. P.R. Nov. 7, 2005) ........................................................................... 13

19

*Rollins v. Butland*,
    951 So. 2d 860 (Fla. Ct. App. 2006) ..................................................................................... 18

20

*Sanchez-Knutson v. Ford*,

21
    2014 U.S. Dist. LEXIS 148186 (S.D. Fla. Oct. 7, 2014) ........................................................ 9

22

*Schafer v. Jeld Wen Doors*,
    2007 WL 3407659 (N.D. Ind. Nov. 9, 2007) ........................................................................ 18

23

*Schnall v. Hertz*,

24
    78 Cal. App. 4th 1144 (2000) ................................................................................................ 23

25

*Scott v. Metabolife*,
    115 Cal. App. 4th 404 (2004) .................................................................................................. 6

26

*Seely v. White Motor Co.*,

27
    63 Cal. 2d 9 (1965) ............................................................................................................... 16

28

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1

**TABLE OF AUTHORITIES**
*(continued)*

2

**Page(s)**

3

*Sharma v. BMW,*

4

   2014 U.S. Dist. LEXIS 84406 (N.D. Cal. June 19, 2014) ....................................... 9

*Shaw v. Hahn,*

5

   56 F.3d 1128 (9th Cir. 1995)..................................................................... 6

6

*Shifrin v. Liberty Mut.,*

7

   991 F. Supp. 2d 1022 (S.D. Ind. 2014) .................................................. 13

8

*Smith v. Ford Motor Co.,*
   462 F. App'x 660 (9th Cir. 2011) ......................................................... 15

9

*Smith v. Wm. Wrigley,*

10

   2009 WL 3172771 (S.D. Fla. Oct. 1, 2009)............................................ 9

11

*State v. Classic Pool & Patio,*
   777 N.E.2d 1162 (Ind. Ct. App. 2002).................................................. 22

12

*Stearns v. Select Comfort,*

13

   2009 WL 1635931 (N.D. Cal. June 5, 2009) .................................... 2, 10

14

*Sugarline v. Alpen,*
   155 Vt. 437 (Vt. 1990) ......................................................................... 13

15

16

*T.W.M. v. Am. Med. Sys.,*
   886 F. Supp. 842 (N.D. Fla. 1995)......................................................... 9

17

*Tammerello v. Ameriquest,*

18

   2006 U.S. Dist. LEXIS 71249 (N.D. Ill. Sept. 29, 2006) ...................... 22

19

*Tara Woods Ltd. v. Fannie Mae,*
   731 F. Supp. 2d 1103 (D. Colo. 2010) .................................................. 21

20

*Tracy v. Vinton,*

21

   130 Vt. 512 (Vt. 1972) .................................................................. 10, 11

22

*Troup v. Toyota,*
   545 F. App'x. 668 (9th Cir. 2013) ................................................... 9, 11

23

*Trujillo v. Apple,*

24

   581 F. Supp. 2d 935 (N.D. Ill. 2008) .................................................... 18

25

*Valle-Ortiz v. R.J. Reynolds,*
   385 F. Supp. 2d 126 (D. P.R. 2005)..................................................... 13

26

*Vaughn v. General Foods,*

27

   797 F.2d 1403 (7th Cir. 1986)............................................................... 13

28

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Vess v. Ciba-Geigy*,
   317 F.3d 1097 (9th Cir. 2003).................................................................. 20

*Vitt v. Apple*,
   469 F. App'x 605, 607 (9th Cir. 2012) .................................................. 14

*Voelker v. Porsche*,
   353 F.3d 516 (7th Cir. 2003)................................................................... 9

*Williams v. Beechnut*,
   185 Cal. App. 3d 135 (1986)................................................................... 6

*Wilson v. Hewlett-Packard*,
   668 F.3d 1136 (9th Cir. 2012)...................................................... passim

*Witt v. Howmedica*,
   2013 U.S. Dist. LEXIS 181203 (S.D. Fla. Dec. 30, 2013) ..................... 9

*Wollam v. Wright Medical*,
   2012 WL 4510695 (D. Colo. Sept. 30, 2012) ..................................... 10

*Zankle v. Queen Anne Landscaping*,
   724 N.E.2d 988 (Ill. Ct. App. 2000) ................................................... 18

*Zlotnick v. Premier Sales*,
   480 F.3d 1281 (11th Cir. 2007)..................................................... 16, 19

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................... 5

Fed. R. Civ. P. 9(b) ................................................................................ 20

**STATUTES**

815 ILCS 505/10a(e)............................................................................. 22

9A Vt. Stat. Ann. § 2-314(2)(c) ............................................................ 10

9A Vt. Stat. Ann. § 2-315 ..................................................................... 12

Cal. Civ. Code § 1791.1(a)(2)............................................................... 10

Cal. Civ. Code § 1791.1(c)..................................................................... 11

Colo. Rev. Stat. § 4-2-725(2) ................................................................ 10

Colo. Rev. Stat. § 13-80-101................................................................. 10

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1

2

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fla. Stat. § 672.313 ..................................................................................................... 9

Fla. Stat. § 672.607(3)(a) ............................................................................................. 7

Fla. Stat. § 672.607(4) .................................................................................................. 7

Ind. Code § 24-5-0.5-4 ............................................................................................... 13

Ind. Code § 24-5-0.5-5(b) .......................................................................................... 22

P.R. St. Title 31 § 5298 .............................................................................................. 23

1    **I.       INTRODUCTION**

2           All of the claims in the First Amended Complaint ("FAC") fail as a matter of law.

3    Plaintiffs admit that if one of Apple's 2011 MacBook Pro laptops (the "MacBook") breaks under

4    warranty, Apple fixes it for free.  Yet they contend that Apple should be liable for "fraud"

5    because it "failed to disclose" that solder connections on the MacBook's graphics processor—a

6    "complex device with hundreds of fragile electrical connections" (FAC ¶ 44)—can allegedly

7    overheat and crack over time.  As the Ninth Circuit explained in *Wilson v. Hewlett-Packard*, 668

8    F.3d 1136, 1141 (9th Cir. 2012), a "manufacturer's duty to consumers is limited to its warranty

9    obligations absent either an affirmative misrepresentation or a safety issue."  There is no "safety

10   issue" here, plaintiffs never allege they even saw the statements they contend were "false," and

11   Apple provided repairs to all users who were actually impacted by this "issue."

12          Nor do plaintiffs contend that this "issue" was particularly widespread.  To be sure, their

13   description of the ***mechanism*** by which this problem can allegedly develop is detailed.  (*See* FAC

14   ¶¶ 44-52.)  But their allegations about ***how often*** that happens (or how many users were affected)

15   are virtually nonexistent.  Plaintiffs do not allege that all MacBooks suffer from "graphics

16   issues," and do not contend that most (or even a substantial portion) of laptops actually developed

17   an "issue."  Once the rhetoric is stripped away, plaintiffs' claim is that Apple committed "fraud"

18   because a part on some never-identified percentage of computers can sometimes wear out, even

19   though Apple fixes users' logic boards for free if that actually occurs—a procedure that can

20   otherwise cost between $350 and $600.  (FAC ¶¶ 6, 68, 205.)

21          Plaintiffs' claims should all be dismissed.  ***First***, they have no warranty claim, either

22   express or implied.  There was no "breach" because (1) many plaintiffs failed to seek warranty

23   service until ***after*** the warranty expired, and (2) the plaintiffs who did bring in malfunctioning

24   laptops during the warranty received repairs.[1] *Ferranti v. Hewlett-Packard*, 2014 WL 4647962,

---

25   [1] *E.g.*, FAC ¶¶ 88-89 (Book purchased in January 2012 and did not bring it in for service until
26   October 2013—***21 months*** later); 96-100 (Chandler purchased in July 2011, received two free
     repairs in mid-2012, and then used her laptop for more than ***a year and a half*** until March 2014—
27   when she received ***another free repair***); 132-35 (Ghezzi purchased in March 2011, but did not
     seek service until January 2014—almost ***three years later***); 141-44 (Garofalo purchased in
28   "mid-2011," received a free repair during the warranty that fixed the issue for "approximately a
     year," then received another free repair that fixed the problem for "more than a year"); 156-57

DEF. APPLE'S MOTION TO DISMISS FAC
                                                        NO. 5:14-CV-04746-EJD

1    at *6 (N.D. Cal. Sept. 16, 2014) (holding that "[t]he fact that Plaintiffs did receive replacement

2    printers and were able to get assistance from Tech Support indicates that HP did comply with its

3    warranty") (Davila, J.).  And the implied warranty claims fail because plaintiffs plead no facts to

4    show that their laptops were so disabled that they were "unfit" for ordinary use.  *Stearns v. Select*

5    *Comfort*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) ("[M]ere manifestation of a defect by

6    itself does not constitute a breach [of] the implied warranty of merchantability.  Instead, there

7    must be a fundamental defect that renders the product unfit for its ordinary purpose.").  To the

8    contrary—here, plaintiffs apparently used their "defective" laptops for ***years***.

9          ***Second***, plaintiffs' claims for common-law and consumer fraud—including under the

10   Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and Florida's

11   Deceptive and Unfair Trade Practices Act ("FDUTPA")—all fail.  With respect to their

12   "misrepresentation" claims, plaintiffs never allege that they read or relied on any of the "false"

13   statements they cite.  And with respect to the "omission" claims, Apple complied with its

14   warranty and had no duty to disclose what all reasonable consumers already know (and is

15   explicitly disclosed by Apple's Limited Warranty in any event):  complex electronics like laptop

16   computers can sometimes malfunction.  *See Wilson*, 668 F.3d at 1141.

17         While this issue—the scope of manufacturers' disclosure duties—has received less

18   attention in other states, no court in Indiana, Illinois, Vermont, or Puerto Rico has endorsed the

19   claim plaintiffs make here:  that "non-disclosure" of the obvious risk that products *may sometimes*

20   *break* is actionable absent some sort of affirmative misrepresentation—particularly where, as

21   here, the manufacturer already replaces broken parts under its warranty.  And while two district

22   courts have issued unpublished opinions disagreeing with California on this point (one in Florida

23   and one in Colorado),[2] those cases are distinguishable on their facts and, in any event, are not

24   binding on this court—no state court in Florida and Colorado has endorsed those cases' holdings.

25   The problems with plaintiffs' "omission" claims are fundamental:  "reasonable" consumers know

26   (Rowe purchased in February 2011 and did not experience any issues until ***two years later*** in
     "2013").

27   [2] *Matthews v. American Honda*, 2012 WL 2520675 (S.D. Fla. June 6, 2012); *Edwards v. ZeniMax*

28   *Media*, 2013 WL 5420933 (D. Colo. Sept. 27, 2013).

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    that a "risk" of malfunction exists—both as a matter of common sense and because Apple's

2    warranty explicitly discloses that when issues do arise, Apple will fix them.  (Request for Judicial

3    Notice ("RJN"), Ex. A at 2.)

4         As discussed below, plaintiffs' claims also suffer from several other defects—some claims

5    are barred by the economic loss rule, some are time-barred, and some have other deficiencies.

6    But their core claim should be rejected as a matter of law—*i.e.*, that sellers must explicitly

7    disclose all possible ways that a product might malfunction, no matter how infrequent those

8    malfunctions might be or whether the manufacturer lives up to its warranty obligations.

9    Endorsing that claim would impose extraordinary liability on manufacturers—since there is

10   always some risk that modern products (*e.g.*, laptops) can malfunction, adopting plaintiffs'

11   theories would turn literally every product sale into an act of "fraud."  Indeed, warranties exist for

12   that very reason: the possibility that issues may develop as products are used and abused under

13   real-world conditions.  Apple respectfully requests that the Court dismiss the FAC with prejudice.

14   **II.    BACKGROUND FACTS**

15        In the FAC, plaintiffs contend that Apple "failed to disclose" that solder connections on

16   the GPUs and logic boards in the MacBook can wear out and crack.  Specifically, they allege that

17   the MacBook can "run so hot that the solder attached to the Laptop's high-powered graphics

18   processer w[ill] deform and crack … ."  (FAC ¶ 1.)  According to the FAC, Apple used "lead-free

19   solder" (which is allegedly "brittle") to "connect the discrete GPU assembly to the [MacBook's]

20   logic board."  (*Id.* ¶¶ 48, 55.)  Plaintiffs allege the "high temperatures" and "rapid cycling of

21   temperature caused by the intermittent activation of the discrete GPU, stress the solder bumps

22   connecting the GPU IC to its substrate and the GPU assembly to the logic board, causing the

23   solder to crack."  (*Id.* ¶ 51.)  If a laptop *is* affected, "graphical issues" often manifest "mildly and

24   sporadically, often only at startup of the laptop," and impacted laptops can take anywhere from "a

25   matter of days to upwards of a year" before exhibiting serious problems.  (*Id.* ¶ 52.)

26        In this case, plaintiffs purport to bring claims over all MacBooks sold.  (*Id.* ¶ 167.)  But

27   plaintiffs do ***not*** contend that all MacBooks actually malfunctioned.  Nor could they—since they

28

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1   were launched in early 2011, millions of MacBooks have been used without incident for years.[3]

2   To be sure, plaintiffs do allege that the computers were all **susceptible** to this "defect" (*see, e.g.*,

3   *id.* ¶ 2 ("[a]ll … were sold in this defective condition")) and they allege in detail **how** these

4   laptops can wear out over time. (*Id.* ¶¶ 44-52.) But they never allege **how often** this "defect"

5   manifests, and certainly do not allege that all, or most, or even a substantial minority of

6   MacBooks actually broke—either within the warranty, or after it expired.

7        Thus, as currently pled, plaintiffs' claim is that Apple should have disclosed the risk that

8   sometimes parts can break. But, naturally, there is always some risk that products like laptops

9   can develop issues as they are used. And Apple's warranty expressly discloses—explicitly, and

10  implicitly by its very existence—the obvious fact that computers (even Apple's) can sometimes

11  break.[4]  Under that Limited Warranty, Apple promises to replace devices if malfunctions do

12  occur, and that is precisely what happened: Whenever a user brought in a malfunctioning laptop

13  during the warranty, Apple replaced the laptop's logic board for free—including repairing some

14  laptops multiple times, if needed. (*E.g.*, FAC ¶¶ 97-99, 112-21, 128-31, 142-43, 149, 160.)

15       In their FAC, plaintiffs purport to quote from a variety of statements they contend Apple

16  made about the laptops—*i.e.*, that Apple promised "graphical performance three-times faster than

17  the 2010 models," and that the rechargeable battery would "last for five years or more."[5]  (*Id.* ¶¶

---

18  [3] Plaintiffs do allege that "tens of thousands" have "complained" on the internet. (FAC ¶¶ 4, 7.)
19  But Apple sold **millions** of MacBooks, many of which have been in use for almost four years.
    (RJN at 4-5.) Under the circumstances, "thousands" of internet complaints is hardly evidence
20  that the issue was widespread.

21  [4] *E.g.*, RJN, Ex. A at 1 (warranty covers "defects in materials and workmanship … for a period of
    ONE (1) YEAR …."), 2 (describing repair and service options for customers, including "WHAT
22  … APPLE [WILL] DO IN THE EVENT THE WARRANTY IS BREACHED" and "HOW TO
    OBTAIN WARRANTY SERVICE" for repairing defects that arise under the warranty), 1
23  ("Apple does not warrant that the operation of the Apple Product will be uninterrupted or
    error-free" under heading "WHAT IS NOT COVERED BY THIS WARRANTY?").

24  [5] Incredibly, plaintiffs also allege that Apple somehow applied a "secret performance downgrade"
    as part of an alleged effort to "keep" the laptops "from manifesting the [g]raphics [d]efect."
25  (FAC ¶¶ 62-63, 66-67, 190.) The Court need not address that "secret downgrade" allegation on
    this motion, however, because: (1) none of the plaintiffs saw the March 2011 statements ("3x
26  performance") they cite, and, more importantly, (2) no plaintiff alleges that his or her own
    computer was actually impacted by this "downgrade." (*See id.* ¶¶ 88-166.) That is because it
27  never occurred. Plaintiffs base this allegation on excerpts from Apple's website. (*See id.* ¶ 64 &
    Figures 10, 11.) But the tests plaintiffs cite were run six months apart on different computers, and
28  between the tests Apple released its then-groundbreaking Lion operating system. (*See* RJN Ex. B
    (full web pages) & C (Lion OS launched July 20, 2011); FAC ¶ 66 n.13 ("Mac OS X 10.7"

- 4 -                    DEF. APPLE'S MOTION TO DISMISS FAC
                         NO. 5:14-CV-04746-EJD

1, 31, 35, 38.)  But none of the plaintiffs allege that they saw those statements, much less relied on them.  (*See id.* ¶¶ 88-166.)  Instead, plaintiffs—12 individuals from six different states and Puerto Rico—simply allege that they purchased (or received) MacBooks at various times in 2011 and 2012, and provide virtually no information about what statements from Apple (if any) they relied on when making those purchases.  (*See id.* ¶¶ 10-21.)  And while most plaintiffs contend they "experienced" a "graphics defect" during the warranty:[6] (1) few explain what, exactly, they "experienced," (2) many failed to seek repairs during the warranty, and (3) they continued to use their laptops for years—long after Apple's warranty would have expired.  (*See id.* ¶¶ 88-166.)  As plaintiffs admit, when users did bring in malfunctioning devices under warranty, Apple would "replace the Laptop's entire main circuit board" free of charge—a procedure that can cost between $350-$600.  (*Id.* ¶¶ 5-6, 68.)  In other words, those users who were actually impacted by the "defect" received hundreds of dollars of free repairs under Apple's Limited Warranty.

Nevertheless, based on these same allegations, plaintiffs purport to bring consumer fraud and warranty claims on behalf of all purchasers—even those who have never experienced any "graphics defect" after many years of use.  Specifically, plaintiffs seek to represent purchasers from California, Colorado, Florida, Illinois, Indiana, Vermont, and the territory of Puerto Rico, and assert the following claims:  (1) express warranty; (2) implied warranty (under California and Vermont law only); (3) under the UCL and CLRA; (4) under the FDUTPA; (4) under the consumer protection statutes of over 39 other states, including dozens of states that have nothing to do with the named plaintiffs or their claims; and (5) for common law fraud.

## III.   LEGAL STANDARDS

Under Rule 12(b)(6), dismissal is appropriate where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica*, 901 F.2d 696, 699 (9th Cir. 1988).  And while the Court must accept well-pled facts as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss … ."

---

released "Jul. 20, 2011").)  Since that new OS was offered free of charge to all users, it was also used on the "benchmark" systems in the October 2011 tests.  There was no "downgrade"— Apple's ads accurately reflected the different systems' relative performance at different times.

[6] Plaintiff Rowe's laptop worked well until ***after*** his warranty expired.  (*See* FAC ¶¶ 156-57.)

1   *McGlinchy v. Shell*, 845 F.2d 802, 810 (9th Cir. 1988).  Accordingly, the Court should not

2   assume the truth of legal conclusions merely because they are pled in the form of factual

3   allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Shaw v. Hahn*, 56 F.3d 1128, 1129

4   n.1 (9th Cir. 1995).  Instead, "for a complaint to survive a motion to dismiss, the non-conclusory

5   'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

6   claim entitling the plaintiff to relief."  *Moss v. U.S.*, 572 F.3d 962, 969 (9th Cir. 2009).

7   **IV.    ARGUMENT**

8              **A.    Plaintiffs' Express Warranty Claims Fail As A Matter Of Law**

9              Plaintiffs' express warranty claims (their Fifth Cause of Action) fail for the simple reason

10  that there has been no "breach"—when users brought broken devices to Apple during the

11  warranty, Apple repaired their laptops for free.

12                    1.    *Apple Honored the Limited Warranty*

13             Under all applicable state laws, to make out an express warranty claim, plaintiffs must

14  plead a breach—that is, that Apple failed to comply with some specific term of its Limited

15  Warranty.[7]  Here, however, plaintiffs never identify the term(s) that Apple "breached."  Instead,

16  Apple complied with its warranty by replacing the logic board (or performing other repairs) on

17  every malfunctioning computer that was brought in for service during the warranty.

18             As a preliminary matter, the express warranty claims of five plaintiffs (Book, Cowart,

19  Ghezzi, Rowe, and Fournier) fail because they never asked for repairs until ***after*** the warranty

20  expired.  Unsurprisingly, under the Limited Warranty consumers must "submit a valid claim to

21

22  _____

23  [7] *See Williams v. Beechnut*, 185 Cal. App. 3d 135, 142 (1986) ("to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of warranty which proximately causes plaintiff injury."); *Baltazar*

24  *v. Apple*, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011); *Scott v. Metabolife*, 115 Cal. App. 4th 404, 416 (2004); *Ocana v. Ford*, 992 So. 2d 319, 324 (Fl. Ct. App. 2008) ("the consumer

25  [must] allege and prove that the manufacturer did not comply with the limited express warranty's terms."); *Fiberglass Component Prod. v. Reichhold*, 983 F. Supp. 948, 953 (D. Colo. 1997);

26  *Cooley v. Big Horn Harvestore*, 813 P.2d 736, 743 n.7 (Colo. 1991); *Richards v. Goerg Boat*, 384 N.E.2d 1084, 1090 (Ind. Ct. App. 1979), *abrogated on other grounds by Hyundai v. Goodin*, 822

27  N.E.2d 947 (Ind. 2005); *Hasek v. DaimlerChrysler*, 745 N.E.2d 627, 635 (Ill. App. Ct. 2001); *In re Dupont-Benlate Litig.*, 859 F. Supp. 619, 623 (D. P.R. 1994); *Morris v. Nutri/System*, 774 F.

28  Supp. 889, 892 (D. Vt. 1991).

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1  Apple" during the one-year warranty period.[8] (RJN, Ex. A at 2.) *See Cipollone v. Liggett Grp.*,

2  505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives

3  from, and is measured by, the terms of that warranty."). But five of them failed to do so. It took

4  plaintiff Book 21 months to bring in his computer (FAC ¶¶ 88-89), and while Cowart alleges that

5  he "experienced software instability and graphical anomalies" "very early on," he did not seek

6  service until months after the one-year warranty expired. (*Id.* ¶¶ 101, 103, 104.) Similarly,

7  Ghezzi "did not take his laptop in for repairs" until nearly three years after his purchase. (*Id.* ¶¶

8  132, 135.) Rowe bought in February 2011, but had no issues until ***2013***. (*Id.* ¶¶ 156-57.) And

9  Fournier did not seek warranty service until fifteen months after purchase. (*Id.* ¶¶ 163, 166.)[9]

10  Next, the express warranty claims of three other plaintiffs (Chandler, Roberts, and

11  Garofolo) fail because, as they admit, Apple repaired their devices throughout the warranty. (*Id.*

12  ¶¶ 97, 128, 142.) *See also Ferranti*, 2014 WL 4647962, at *6 (no breach of warranty where

13  plaintiffs received replacement printers). Plaintiffs apparently contend that Apple's "repairs"

14  were inadequate because the "replacement" logic boards, although they worked well when

15  installed, could also wear out. If that is plaintiffs position, the Court should reject it. In *Long v.*

16  *Hewlett-Packard*, 2007 WL 2994812 (N.D. Cal. July 27, 2007), for example, the plaintiffs argued

17  that "HP's repair was inadequate because HP merely substituted one defective inverter for

18  another." *Id.* at *4. But the court rejected that argument:

19  ───────────
[8] Or, for Chandler, Roberts, and Garofalo, within their 3-year extended warranties. (FAC ¶¶ 98,
20  127, 143.)

21  [9] Plaintiff Manners' (Florida) express warranty claim fails for similar reasons. Manners does
allege that he brought his laptop in during the warranty. But as he also admits, the laptop was
22  working well when it was evaluated. (FAC ¶ 140 ("Plaintiff Manners … was asked to reproduce
the Graphics Defect in the store. He was unable to do so.").) Under Florida law, "[t]he burden is
23  on the buyer to establish any breach with respect to the goods accepted." Fla. Stat. § 672.607(4).
Apple's warranty does not obligate Apple to replace working devices—if Manners did
24  "continue[] to experience the Graphics Defect" (as he alleges) then he should have brought the
device back to Apple. Instead, he used it without complaint for the next ***twenty months***. (FAC ¶
25  140.) Under the circumstances, Manners' express warranty claim must be dismissed. *See, e.g.*,
*Brisson v. Ford*, 349 F. App'x 433, 434 (11th Cir. 2009) (Florida customers failed to present
26  vehicles for service during warranty); Fla. Stat. § 672.607(3)(a) ("[B]uyer must within a
reasonable time after he or she discovers or should have discovered any breach notify the seller of
27  breach or be barred from any remedy."); *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *85-
87 (E.D.N.Y. Aug. 29, 2013) (Florida plaintiffs failed to provide pre-suit notice); *Cohen v.*
28  *Implant Innovations*, 259 F.R.D. 617, 625 (S.D. Fla. 2008) (each class member must prove they
gave the required notice of breach of warranty to defendant within a reasonable time).

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1

2

3

4

5

6

> HP fulfilled its warranty promises, by providing [plaintiff] with a computer that was fully operable during the one-year warranty period.  As HP explicitly disclaimed in its warranty, [plaintiff's laptop] did not operate wholly free of errors for the one-year period.  His [laptop] failed eleven months into the warranty period.  However, HP then tendered an adequate repair of the [laptop]; that is, the [laptop] was again fully operable when HP returned it to [plaintiff].  The allegation that the new [part] malfunctioned again several months outside the warranty period is immaterial to Long's breach of express warranty claim.

7

8

9

10

11

*Id.* at *5.[10]  Here, Apple replaced broken logic boards with working boards—a repair that can otherwise cost up to $600.  (FAC ¶¶ 97-99, 128-31, 142-43.)  The fact that the new logic boards might also wear out does not make the repair "ineffective"—plaintiffs received a working laptop with a new logic board.  And if the logic board did fail again, Apple replaced it again—and continued to do so through the end of each plaintiffs' warranty period.  (*See id.*)

12

13

14

15

16

17

18

19

20

21

22

Finally, there are three plaintiffs (Miles, Ashbaugh, and Ramos) whose allegations are so anemic that it is impossible to determine whether they sought repairs during the warranty.  Miles, for example, claims he received his MacBook in 2012 "in exchange" for a 2009 model, and that the alleged defect "manifested immediately"—for which he received a series of free repairs.  (*Id.* ¶¶ 110-12.)  He fails to explain, however, whether those repairs were during the warranty, or when the warranty on his original, 2009-model laptop began (or elapsed).  Similarly, Ashbaugh alleges that she received her device in "mid-2011 as a replacement" for another (never-identified) laptop, and that the "graphics defect" "manifested" at some unidentified time during the warranty.  But she never explains when, exactly, she first brought her computer in for repair.  (*Id.* ¶¶ 147-48.)  And while Ramos alleges that he bought his MacBook at some point "in 2011," he admits that Apple replaced the logic board for free in May 2012.  (*Id.* ¶¶ 159-60.)

23

24

Unless plaintiffs can allege that Apple refused to repair a broken device under warranty, their express warranty claims should be dismissed.  *Long*, 2007 U.S. Dist. LEXIS 79262, at

25

26

27

28

---

[10] *Bailey v. Monaco Coach*, 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004) (in Florida, "a repair-or-replace warranty is breached only if the warrantor does not remedy the covered defects within a reasonable time.  Thus, any defects that were brought to the attention of and repaired by [defendant] in a reasonable number of attempts cannot form the basis of [a] breach … ."); *cf. Deburro v. Apple Inc.*, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013) ("[W]here there is an express written warranty, the seller will not be bound beyond the terms of the warranty").

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1   *12-13; *Ferranti*, 2014 WL 4647962 at *6.  Here, none of them have.

2                    **2.     *"Materials and Workmanship" or "Design"?***

3          In addition, warranties like Apple's, which covers "defects in materials and workmanship"

4   (*see* RJN, Ex. A at 1), typically do not cover defects in a product's ***design***.[11]  Here, plaintiffs'

5   allegations about the nature of the "defect" are inconsistent—they seem to contend both that

6   cracked solder occurs due to "poor workmanship and manufacturing" (*id.* ¶ 53), as well as

7   because of "design" choices.  (*E.g.*, FAC ¶ 325 ("defective design").)  To the extent plaintiffs

8   seek to hold Apple liable under the Limited Warranty for "design" defects, their claims should be

9   dismissed.  *See McCabe v. American Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002).[12]

10                   **3.     *Plaintiffs Manners and Garofalo Lack Privity***

11         Next, neither Manners nor Garofalo allege that they purchased their MacBooks directly

12  from Apple.  (*See* FAC ¶¶ 139, 141.)  They thus lack privity, and their claims fail under Florida

13  law.[13]  If they can, Manners and Garofalo must allege that they bought directly from Apple, and

---

14  [11] *E.g.*, *In re Toyota*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) ("an express written warranty
    covering 'materials and workmanship' does not include design defects"); *Voelker v. Porsche*, 353
15  F.3d 516, 527 (7th Cir. 2003) (rejecting express warranty claim where plaintiff had not shown
    that "a warranty against defective design [of a car airbag] was part of his contract with any
16  defendant"); *Hasek*, 745 N.E.2d at 635 ("material, workmanship, or factory preparation" did not
    cover design defects); *Troup v. Toyota*, 545 F. App'x. 668, 668-69 (9th Cir. 2013) (defect "from
17  the use of resin to construct the gas tanks, which is a design decision" but warranty covered
    "materials and workmanship."); *Sharma v. BMW*, 2014 U.S. Dist. LEXIS 84406, at *12-15 (N.D.
18  Cal. June 19, 2014) (warranty "against defects in 'materials or workmanship'" does not cover
    design defects).

19  [12] *Sanchez-Knutson v. Ford*, 2014 U.S. Dist. LEXIS 148186, at *20 (S.D. Fla. Oct. 7, 2014) is not
20  to the contrary.  The defect alleged in *Sanchez-Knutson* is not necessarily a "design" problem,
    and the language at issue in that case is different from the language in Apple's Limited Warranty.

21  [13] *See Mazzeo v. Nature's Bounty*, 2014 U.S. Dist. LEXIS 159345, at *5-6 (S.D. Fla. Nov. 10,
    2014) (dismissing express warranty claim for lack of privity); *Witt v. Howmedica*, 2013 U.S. Dist.
22  LEXIS 181203, at *8 (S.D. Fla. Dec. 30, 2013) ("The Court is not persuaded by those arguments
    [rejecting privity] and finds that privity is required for both implied and express warranty
23  claims."); *Hill v. Hoover*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (absent privity, plaintiffs
    "cannot set forth a cause of action for breach of written warranty or breach of implied warranty
24  under both Florida law and the MMWA."); *T.W.M. v. Am. Med. Sys.*, 886 F. Supp. 842, 844
    (N.D. Fla. 1995) ("The law of Florida is that to recover for the breach of a warranty, either
25  express or implied, the plaintiff must be in privity of contract with the defendant."); *O'Connor v.
    Kawasaki*, 699 F. Supp. 1538, 1543 (S.D. Fla. 1988) ("In Florida, the law of express warranty is
26  governed by 672.313 of the Florida Statutes.  A buyer-seller relationship must be present in order
    for one to be liable under the statute and the affirmation made by the seller must have become the
27  basis of the bargain.").  While there is a split in authority on this issue (*e.g.*, *Mesa v. BMW*, 904
    So. 2d 450, 458 (Fla. Ct. App. 2005) and *Smith v. Wm. Wrigley*, 2009 WL 3172771 (S.D. Fla.
28  Oct. 1, 2009)), many recent cases (cited above) continue to require privity under Florida law.

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    that they relied on the Limited Warranty at the time.  Otherwise their claims should be dismissed.

2              4.     ***Ghezzi's Warranty Claim is Barred by the Statute of Limitations***

3         Finally, plaintiff Ghezzi's warranty claim is also time-barred.  Under Colorado law, the

4    Limited Warranty is a "repair or replace" warranty—that is, "if a product fails or becomes

5    defective, the seller or manufacturer will repair or replace within a stated period."  *Boyd v. A.O.*

6    *Smith*, 776 P.2d 1125, 1128 (Colo. Ct. App. 1989).  In Colorado, the statute begins to run on the

7    date of purchase, and since Ghezzi bought on March 22, 2011 (FAC ¶ 132), March 22, 2014 was

8    his deadline to sue.[14]  His warranty claim is thus time-barred and must be dismissed.

9         **B.    No Implied Warranty Claim is Alleged**

10        As set out above, plaintiffs purport to assert express warranty claims under the laws of

11   seven different jurisdictions.  But their ***implied*** warranty claims are limited to the laws of two

12   states:  California and Vermont.  Those claims fail because plaintiffs have not plead that their

13   MacBooks were so seriously disabled that they were virtually unusable and unmerchantable when

14   sold.  To the contrary—plaintiffs all continued to use their devices for years.

15        To be "merchantable," products need only be "fit for the ordinary purposes for which such

16   goods are used."  Cal. Civ. Code § 1791.1(a)(2); 9A Vt. Stat. Ann. § 2-314(2)(c).  Thus, the

17   "mere manifestation of a defect by itself does not constitute a breach [of] the implied warranty of

18   merchantability."  *Stearns*, 2009 WL 1635931, at *8.  Instead, a "defect must be sufficiently

19   serious so as to render the product unfit for its ordinary purpose."  *Hovsepian v. Apple*, 2009 WL

20   2591445, at *6 (N.D. Cal. Aug. 21, 2009).  *See also Mocek v. Alfa Leisure*, 114 Cal. App. 4th

21   402, 406 (2003) (implied warranty breached only if product lacks "the most basic degree of

22   fitness for ordinary use."); *Tracy v. Vinton*, 130 Vt. 512, 516 (1972) (product must have "the

23   operative essentials" but need not "guarantee high quality or perfection of detail").

24

25   _____

[14] *Boyd*, 776 P.2d at 1128-29; *see also* Colo. Rev. Stat. § 4-2-725(2) ("A cause of action accrues
     when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A
26   breach of warranty occurs when tender of delivery is made"); § 13-80-101 (three year statute of
     limitations); *Wollam v. Wright Medical*, 2012 WL 4510695, at *8-9 (D. Colo. Sept. 30, 2012)
27   ("Colorado requires that a claim alleging the breach of a sales contract, as well as a claim for the
     breach of a ['repair or replace'] warranty arising from such a sales contract, be commenced
28   within three years of the alleged breach . . . [which] occurs when tender or delivery is made.").

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    Here, neither the California nor the Vermont plaintiffs allege facts to show that their

2    MacBooks were rendered "unfit for [their] ordinary purpose" during the one-year warranty.[15]

3    They do allege that they "experienced" the "defect."  But none of them claim that their problems

4    were so fundamental that their computers were unusable or severely impaired—with limited

5    exceptions, they make only vague statements about what they "experienced," and they all kept

6    using their laptops until long after the warranty expired.[16]  Courts facing similar allegations have

7    rejected implied warranty claims,[17] and as pled, the implied warranty claims must be dismissed.[18]

8        Finally, plaintiff Fournier also asserts a warranty of fitness for a particular purpose claim

9    under Vermont law.  For such a warranty to exist, there must be some communication between

10   the buyer and the seller about the ***specific purpose*** to which the buyer intends to put the device.

11   *Moffitt v. Icynene*, 407 F. Supp. 2d 591, 599 (D. Vt. 2005) (dismissing implied warranty claim

12   where defendant "made no representations to [plaintiffs] concerning the use of [the product] for

13   their particular needs").  Here, Fournier simply includes a boilerplate allegation that Apple

14   warranted her computer was "fit for the particular purpose of performing graphically demanding

---

15   [15] The implied warranty of merchantability is limited to one year.  In California, implied
16   warranties are "coextensive" with the express warranty—and are capped at one year.  Cal. Civ.
     Code § 1791.1(c).  In Vermont, implied warranties last only as long as is "reasonable," *Heath v.*
17   *Palmer*, 2006 VT 125, *7 (2006), and Apple limits all implied warranties to one year after sale.
     *E.g.*, RJN, Ex. A at 1 ("APPLE LIMITS THE DURATION AND REMEDIES OF SUCH
18   WARRANTIES TO THE DURATION OF THIS EXPRESS WARRANTY").  No "reasonable"
     consumer could expect an implied warranty to last more than a year.

19   [16] *See* FAC ¶¶ 87-95 (Book bought in January 2012 and used "[t]o this day"); 96, 99 (Chandler
     bought in July 2011 and used until "months after" March 2014); 101-08 (Cowart bought in May
20   2012 and used through September 2014); 18, 110, 125-26 (Miles received his laptop "in 2012"
     and apparently still uses it); 127, 131 (Roberts bought in September 2011 and used through
21   January 2014), 163, 166 (Fournier bought in April 2011 and used through July 2012).

22   [17] *See, e.g.*, *Troup*, 545 F. App'x at 669 ("[T]he alleged defect did not compromise the vehicle's
     safety, render it inoperable, or drastically reduce its mileage range."); *see also Tracy*, 130 Vt. at
23   516 (problems with paint on a used car not included in the implied warranty of merchantability).
     And *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009), is inapposite.  *Mexia* holds only
24   that if "latent defects … render the product unmerchantable from the outset," a plaintiff is not
     necessarily required to give notice during the warranty.  *Marchante v. Sony*, 801 F. Supp. 2d
25   1013, 1022 (S.D. Cal. 2011) (rejecting strict application of *Mexia* because doing so would
     "render[] meaningless any durational limits on implied warranties" which would be "'contrary to
26   established California case law with respect to the duration of the implied warranty of
     merchantability.'"); *Hovsepian*, 2009 WL 2591445 at *8.

27   [18] Fournier's claim also fails for lack of privity.  Vermont requires "the existence of contractual
     privity before a breach of implied warranty claim can be raised."  *Long Trial House v.*
28   *Engelberth*, 2012 VT 80, *P31 (Vt. 2012).  Fournier never alleges where she bought her laptop.

DEF. APPLE'S MOTION TO DISMISS FAC
                                          NO. 5:14-CV-04746-EJD

1   tasks." (FAC ¶ 314.) But she never alleges where Apple made that "warranty," or that she

2   bought the laptop for that purpose—much less that Apple actually knew of her specific intentions.

3   (*Id.* ¶¶ 163-66.) *See* 9A Vt. Stat. Ann. § 2-315. "Knowledge that consumers in general have a

4   particular purpose for a product will not give rise to the implied warranty[. Instead,] under

5   Vermont law the seller must know the particular buyer's particular purpose." *Lyman v. Pfizer*,

6   2012 U.S. Dist. LEXIS 101152, at *51 (D. Vt. 2012). Fournier never alleges she shared her

7   "particular purpose[s]," with Apple, or that Apple made any statement about ***her*** planned use of

8   the device. Her "particular purpose" claim must therefore be dismissed.

9               **C.      Plaintiffs Have No Warranty Claim Under Magnuson-Moss**

10          Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim "stand[s] or fall[s] with

11   [plaintiffs'] express and implied warranty claims under state law"—and since the other claims

12   fail, the MMWA claim fails as well. *Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1022 (9th Cir.

13   2008) ("disposition of the state law warranty claims determines the disposition of the Magnuson-

14   Moss Act claims."); *see also Birdsong v. Apple*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).

15               **D.      Plaintiffs' Fraud Claims Should be Dismissed**

16          Plaintiffs' remaining causes of action—for common-law and consumer fraud—are based

17   on two theories: (1) that Apple made false statements about the MacBook's performance and

18   longevity, and (2) that Apple failed to disclose the risk that some MacBooks could experience a

19   "graphics defect." (*See, e.g.*, FAC ¶¶ 186, 189-90, 202, 229-33, 248, 267.) But plaintiffs do not

20   allege that they saw the "false" statements, and Apple (like all other manufacturers) has no legal

21   duty to disclose the obvious risk that parts in products like laptops might wear out. Instead, "[a]

22   manufacturer's duty to consumers is limited to its warranty obligations absent either an

23   affirmative misrepresentation or a safety issue." *Wilson*, 668 F.3d at 1141. Apple complied with

24   its warranty: if a user bought a malfunctioning device during the warranty, Apple replaced the

25   logic board free of charge. As pled, plaintiffs' "fraud" claims all fail as a matter of law.

26               1.      ***Plaintiffs Never Saw The Alleged "Misrepresentations"***

27          First, plaintiffs do not allege that they relied on—or even saw—any "misrepresentation"

28   when they bought their computers. For their California claims, the plaintiffs must plead facts

1  showing that they personally relied on the "false" statements at issue.  *In re Tobacco II*, 46 Cal.

2  4th 298, 306 (2009) (UCL/FAL); *Princess Cruise v. Superior Court*, 179 Cal. App. 4th 36, 46

3  (2009) (CLRA); *Cadlo v. Owens-Illinois*, 125 Cal. App. 4th 513, 519-20 (2004) (fraud).  The

4  other states' laws are similar—no matter what law applies, plaintiffs cannot sue over

5  "misstatements" that they never personally saw.[19]

6         Here, plaintiffs do allege a few statements that they contend were false: (1) that the

7  MacBook was "three times faster" than the 2010 model (FAC ¶¶ 1, 31, 64, 204, 218), and (2)

8  "that the MacBook Pro Laptops would last for five years."  (*Id.* ¶ 204; *see also id.* ¶¶ 35-36, 38.)

9  But no plaintiffs alleges they saw those statements before they bought their laptops (*see id.* ¶¶ 88-

10  166), and the timing makes it unlikely that all of them did so.  For example, plaintiffs allege that

11  Apple changed the "three times faster" website by November 2011 (*id.* ¶¶ 31, 64)—months

12  *before* Book, Cowart, and Miles bought their laptops.  Similarly, Ghezzi—who claims to be a

13  former Apple employee—alleges he was "trained" to "inform consumers" that the laptops were

14  "durable devices that would outlast competitors' laptops."  (*Id.* ¶ 132.)  Ghezzi does *not* allege,

15  however, that he relied on those statements when he bought his own laptop—and even if he had,

16

17  ────────────────

[19] *E.g.*, **Colorado**: *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009) (fraud requires
reliance); *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) ("[P]laintiff must be able to show that

18  the defendant's actions in violation of the CCPA caused the plaintiff's injury"); **Florida**: *Irwin v.
Miami-Dade County*, 2009 U.S. Dist. LEXIS 14726, at *24 (S.D. Fla. Feb. 25, 2009) ("[N]o

19  evidence in the record that [plaintiff] relied on [defendant's] statements."); *In re Sears*, 2012 WL
1015806, at *9-10 (N.D. Ill. Mar. 22, 2012) (citing *Hutson v. Rexall*, 837 So. 2d 1090, 1092-93

20  (Fla. Ct. App. 2003)) ("FDUTPA requires causation, and "the great weight of recent authority" in
Florida "holds that causation typically requires individualized proof."); **Illinois**: *De Bouse v.*

21  *Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (ICFA requires consumer to have "seen [or] heard" a
misstatement); *Oliveira v. Amoco Oil*, 776 N.E.2d 151, 163-64 (Ill. 2002) (no consumer fraud

22  where plaintiff did not see ads); **Indiana**: *Vaughn v. General Foods*, 797 F.2d 1403, 1415 (7th
Cir. 1986) (fraud requires reliance); *Shifrin v. Liberty Mut.*, 991 F. Supp. 2d 1022, 1046-47 (S.D.

23  Ind. 2014) (plaintiffs "have not provided any evidence that they somehow relied on statements . .
. much less that they relied to their detriment and were damaged"); Ind. Code § 24-5-0.5-4 ("A

24  person relying upon an uncured or incurable deceptive act may bring an action for damages
actually suffered as a consumer as a result of the deceptive act"); **Puerto Rico**: *Rodriguez-Ortega*

25  *v. Philip Morris*, 2005 WL 2977795, at *7 (D. P.R. Nov. 7, 2005) (no evidence plaintiff saw or
relied on alleged misrepresentation); *Valle-Ortiz v. R.J. Reynolds*, 385 F. Supp. 2d 126, 133 (D.

26  P.R. 2005) (no "evidence that Decedent ever relied on anything said or done by" defendant);
**Vermont**: *Moffitt*, 407 F. Supp. 2d at 603 (Consumer Fraud Act requires that "the consumer

27  reasonably interpret[] the representation or omission"); *Sugarline v. Alpen*, 155 Vt. 437, 445 (Vt.
1990) ("[T]he party claiming fraud [must] *justifiably rel[y]* on the statements or conduct.")

28  (emphasis original).

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1  those statements are not actionable.  *Vitt v. Apple*, 469 F. App'x 605, 607 (9th Cir. 2012)

2  ("durable" does not imply that laptop "will last … beyond its expressed warranty").

3      If each plaintiff contends that he or she read and relied on a particular statement when

4  buying their MacBook (*see* FAC ¶¶ 36, 206, 237), they must plead at least some facts to support

5  that assertion.  A boilerplate allegation that everyone "relied" on statements from different places

6  at different times is not sufficient.  *See Iqbal*, 556 U.S. at 678 (court need not assume truth of

7  conclusory allegations); *Laster v. T-Mobile*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)

8  (plaintiffs failed to allege "that they saw, read, or in any way relied on" ads; "nor [did] they allege

9  that they entered into the transaction as a *result* of [the] advertisements") (emphasis original);

10  *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012) ("Plaintiffs never alleged reliance

11  on any specific representation or advertising in registering for or using the LinkedIn website").

12              2.    ***Plaintiffs Have Not Alleged Any Actionable Omission***

13      Nor have plaintiffs alleged an actionable "omission."  Although plaintiffs never explain

14  what, exactly, Apple should have disclosed, they contend Apple should have provided

15  information about the "defect."  (*E.g.*, FAC ¶ 186.)  But Apple has no duty to disclose what is

16  obvious to any reasonable consumer:  that like all modern products, laptops can sometimes break.

17              a.    **Absent an Affirmative Misrepresentation, Manufacturers'**
                      **Duties Are Limited to their Warranty Obligations.**

18

19      In *Wilson*, the Ninth Circuit held that under California law, "a manufacturer's duty to

20  consumers is limited to its warranty obligations absent either an affirmative misrepresentation or

21  a safety issue."  668 F.3d at 1141.  And while *Wilson* involved an alleged defect that manifested

22  after the warranty expired, the Court's reasoning applies with equal force to the "omissions"

23  claims that plaintiffs make here.

24      The plaintiffs alleged in *Wilson*—as plaintiffs do here—that the defendant manufacturer

25  had "misrepresented and concealed" a "known" defect in its laptop computers.  668 F.3d at 1139.

26  Just as plaintiffs do here, the plaintiffs in *Wilson* also argued that since the defect was "material"

27  (it rendered the laptops inoperable), the defendant should be liable for nondisclosure—even

28  though the "concealed fact [did not] relate to a safety issue …."  *Id*. at 1141.  The Ninth Circuit

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    court rejected those arguments, however, and held that liability for non-disclosure can arise only

2    if the allegedly "concealed" facts are safety-related, or are contrary to some specific affirmative

3    representation that the defendant made. *Id*. at 1141-42.  In fact, over the past decade, a host of

4    courts have rejected attempts to impose liability on manufacturers for "knowingly" omitting the

5    risk of product malfunctions.  *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal.

6    2007) ("There is no authority that provides that the mere sale of a consumer electronics product in

7    California can create a duty to disclose any defect that may occur during the useful life of the

8    product.").[20]  That includes cases where devices malfunctioned during the manufacturer's

9    warranty.  In *Marcus v. Apple*, for example, Judge Alsup rejected CLRA claims based on a

10   "failure" to disclose a similar "logic board defect" that (for one plaintiff) manifested during the

11   warranty.  2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015).  And in *Hodges v. Apple*, Judge

12   Orrick rejected CLRA and UCL claims based on an alleged failure to disclose "known" "image

13   retention" problems that allegedly occurred in-warranty:  "The Court follows *Wilson*….Without

14   pleading that Apple was bound to disclose some fact related to his own safety or that of others,

15   [plaintiff] cannot adequately plead fraudulent omission."  2013 U.S. Dist. LEXIS 114374, at *14

16   (N.D. Cal. Aug. 12, 2013).

17          A critical element of every "omission" claim is an allegation that the defendant knew, but

18   failed to disclose, some important material fact that was unknown to the buyer at the time of sale.

19   *See Smith v. Ford Motor Co.*, 462 F. App'x 660, 662 (9th Cir. 2011) ("[A] a duty to disclose may

20   arise . . . when the defendant had exclusive knowledge of material facts not known to the

21   plaintiff.").  Here, plaintiffs appear to contend that Apple should have affirmatively disclosed the

22   "risk" that laptops can malfunction.  (*See* FAC ¶¶ 227-28, 232-33.)  But customers already know

23   _____

24   [20] *See also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830, 832 (2006) (rejecting
     claims where Honda knew of the defect at the time of sale); *Bardin v. DaimlerChrysler Corp.*,
25   136 Cal. App. 4th 1255, 1262 (2006) (plaintiffs alleged defendant "chose to utilize less expensive
     tubular steel exhaust manifolds . . . which [defendant] knew prematurely cracked and failed", and
26   that defendant "knew as early as 1991 that the tubular steel exhaust manifolds [] would not last as
     long as the conventional cast iron exhaust manifolds"); *Morgan v. Harmonix, Inc*., 2009 WL
27   2031765, at *5 (N.D. Cal. July 30, 2009) (rejecting claim where defendant knew that product
     "would fail to work properly after only slight use") & at *4 ("[a]ccording to all relevant case law,
28   defendants are only under a duty to disclose a known defect in a consumer product when there are
     safety concerns associated with the product's use").

1    that "risk" exists:  Apple's written warranty affirmatively discloses that "defects in materials and

2    workmanship" might exist, and explicitly informs consumers that their use of the MacBook may

3    not be "uninterrupted or error-free."[21]  Under the circumstances, no reasonable consumer could

4    believe that his or her laptop was guaranteed to be 100% defect-free during the warranty.[22]  But

5    that is the position that plaintiffs appear to take—*i.e.*, that Apple was required to disclose every

6    "known" way that a MacBook might malfunction.  Again, plaintiffs make no allegation that this

7    "defect" impacted most (or even many) MacBook users.[23]  Instead, they simply allege that

8    *sometimes* MacBooks' logic boards broke—and that if they did, Apple replaced them.

---

[21] RJN, Ex. A at 1 (warranty covers "defects in materials and workmanship . . . for a period of ONE (1) YEAR . . . ."), 2 (describing repair and service options for customers, including "WHAT . . . APPLE [WILL] DO IN THE EVENT THE WARRANTY IS BREACHED" and "HOW TO OBTAIN WARRANTY SERVICE"), 1 ("Apple does not warrant that the operation of the Apple Product will be uninterrupted or error-free" under heading "WHAT IS NOT COVERED BY THIS WARRANTY?").

[22] *See, e.g.*, *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *6 (N.D. Cal. July 26, 2010); *Hoey*, 515 F. Supp. 2d at 1104 (rejecting attempt "to bootstrap Sony's express warranty into a representation that the VAIO notebooks are defect-free"); *Long*, 2007 WL 2994812, at *8, *aff'd*, 316 F. App'x 585 (9th Cir. 2009) ("HP also clearly stated that it did not warrant uninterrupted or error free operation of its products—simply that it would repair or replace any product to its warranted condition within a reasonable time, or refund the purchase price."); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965) (a consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will."); *In re Sony Grand*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. Nov. 30, 2010) ("[w]here a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty"); *see also Daugherty*, 144 Cal. App. 4th at 838 ("The only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty, and it did.  Honda did nothing that was likely to deceive the general public by failing to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak."); *Clemens*, 534 F.3d at 1023 ("Every manufactured item is defective at the time of sale in the sense that it will not last forever . . . . If a manufacturer determines that [product's] useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires.  The product has performed as expressly warranted."); *Maxcess v. Lucent*, 2005 WL 6125471, at *9 (M.D. Fla. Jan. 5, 2005) ("'consumer expectations' can be contractually limited"); *Zlotnick v. Premier Sales*, 480 F.3d 1281, 1287 (11th Cir. 2007) ("[T]he express terms of the agreement" undercut plaintiff's FDUTPA claim and "eliminated any possibility that a reasonable purchaser would be misled."); *Ivar v. Elk River Partners*, 705 F. Supp. 2d 1220, 1240 (D. Colo. 2010) (noting that "[u]nder Colorado law, certain tort claims [including for fraudulent concealment] may be preempted by exculpatory contractual language") (citing, *e.g.*, *Colo. Coffee Bean v. Peaberry Coffee*, 2010 WL 547633, at *6 (Colo. Ct. App. April 1, 2010)).

[23] Indeed, courts have even rejected fraud claims where plaintiffs have actually alleged facts regarding how often the product fails.  *See Munch v. Sears, Roebuck and Co.*, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) (dismissing consumer fraud claims with prejudice and rejecting duty to disclose alleged defects with washing machines where plaintiffs pled specific facts about prevalence of defects among consumers).

- 16 -

Warranties like Apple's exist precisely because modern electronics, no matter how carefully designed, do sometimes fail—and the warranty both sets out and limits the manufacturer's obligations in the event that a particular user's device turns out to be defective. *Daugherty*, 144 Cal. App. 4th at 830, 836 ("A warranty is a contractual promise from the seller that the goods conform to the promise …. Honda's 'affirmative representations at the time of sale' were its express warranties, as to which no breach occurred"); *Long*, 2007 WL 2994812, at *8 ("the only expectation that a purchaser could have had was that the product would function properly for the duration of the manufacturer's express warranty"). Here, plaintiffs acknowledge, as they must, that Apple replaced laptops that *did* experience a problem during the warranty. (FAC ¶ 5 (when "the Graphics Defect could be reproduced," Apple would "replace the Laptop's entire main circuit board (the 'logic board')").) And several of the plaintiffs—Book, Cowart, Ghezzi, Rowe, and Fournier—never even asked for warranty service until long *after* the warranty had expired. (*Id*. ¶¶ 89, 101-04, 132-35, 156-58, 163-66.) Here, by repairing those devices that did break, Apple made sure that consumers received what Apple promised it would provide: computers that worked for the duration of the Limited Warranty.[24]

b.    **Florida and Colorado Do Not Require A Different Result.**

California's consumer protection laws are "notoriously broad." *Flamingo Indus. (USA) Ltd. v. U.S. Postal Srv.*, 302 F.3d 985, 996 (9th Cir. 2002), *rev'd on other grounds*, 540 U.S. 736 (2004). Indeed, the UCL's "coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Cel-Tech v. L.A. Cellular*, 20 Cal. 4th 163, 180 (1999). Yet even in the face of those extremely broad consumer protections, California's courts (and the Ninth Circuit) have recognized that manufacturers' "disclosure" obligations must be limited to their warranty obligations, absent an affirmative misrepresentation or a safety risk. *Wilson*, 668 F.3d at 1141. And while the courts in Indiana,

---

[24] Some courts have allowed plaintiffs to assert "omission" claims under the UCL and CLRA when a product develops a serious issue during the warranty. *E.g.*, *Collins v. eMachines*, 202 Cal. App. 4th 249, 253 (2011) (plaintiff alleged that critical computer hardware was never installed, and that the defendant's customer service refused to fix the problem). But in the vast majority (if not all) of such cases, the defendant failed to comply with their warranty obligations and either could not (or would not) replace defective products during the warranty.

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1   Illinois, Vermont, and Puerto Rico have not addressed the issues in as much detail as California,

2   the laws of those jurisdictions compel the same result for the same reasons:  manufacturers'

3   obligations (and reasonable consumers' expectations) regarding the inevitable "risks" that

4   products might break are best governed by the manufacturers' written warranties.[25]

5        That said, two federal district courts—one in Florida and one in Colorado—have issued

6   unpublished opinions rejecting the arguments set out in *Daugherty* and *Wilson*.  In an unpublished

7   decision, the court in *Matthews v. American Honda*, 2012 WL 2520675, held that the FDUTPA[26]

8   did not limit a manufacturer's duty to disclose non-safety defects, even where the defect develops

9   after the warranty ends.  But other than simply repeating the standard for deceptive practices

10  under the FDUTPA, the *Matthews* court never explained how "omitting" the risk that paint on a

11  car might eventually delaminate (the "defect" at issue) was "deceptive," much less how a

12  "reasonable consumer" could be deceived in light of the defendant's warranties.  The only case

13  that the *Matthews* court cited to support its conclusions was *Davis v. Powertel*, 776 So. 2d 971

14  (Fla. Ct. App. 2000), but *Davis* had nothing to do with the intersection of warranty and consumer

15  protection law that these kinds of cases present—and *Davis* certainly does not stand for the

16  proposition that all product malfunctions are actionable under the FDUTPA.  In *Davis*, the

[25] *Schafer v. Jeld Wen Doors*, 2007 WL 3407659, at *4 (N.D. Ind. Nov. 9, 2007) ("[T]he failure of the door to meet expected standards falls in the category of a disappointed commercial or contractual expectation that is best addressed" by warranty claims); *Trujillo v. Apple*, 581 F. Supp. 2d 935, 938-39 (N.D. Ill. 2008) ("[T]he iPhone had only a one-year warranty.  No reasonable consumer aware of this information would think that the replacement would be forever free of charge"); *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. Ct. App. 2000) ("Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action.  However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy."); *Isla Nena Air Serv. v. Cessna*, 449 F.3d 85, 91 (1st Cir. 2006) ("[W]here a malfunctioning product harms only itself, the resulting loss…is essentially the failure of the purchaser to receive the benefit of its bargain…The law of warranty is therefore particularly well-suited to govern such commercial controversies"); *Gregory v. Poulin Auto*, 2012 VT 28, at *P13 (Vt. 2012) (omissions must be "'material,' that is, likely to affect the consumer's conduct or decision with regard to a product").

[26] To state a claim under FDUTPA, Plaintiff must show: (1) a deceptive practice, (2) causation, and (3) actual damages.  *Rollins v. Butland*, 951 So. 2d 860, 869 (Fla. Ct. App. 2006).  A "deceptive" practice is "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances … ."  *Millennium v. Office of the AG*, 761 So. 2d 1256, 1263 (Fla. Ct. App. 2000).  This requires "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer."  *Millennium*, 761 So. 2d at 1263.

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    defendant sold cell phones that had been secretly modified so that they could only work on the

2    defendant's network, *id.* at 972, and the case dealt with two narrow topics that are not currently at

3    issue: (1) whether absent class members had to prove individual reliance, and (2) whether the

4    plaintiff had standing to seek an injunction under the FDUTPA. *Id.* at 972. And of course, even

5    if *Matthews* applied, it is still not binding on this Court.

6          Here, no reasonable consumer could "possibl[y]" (let alone "probabl[y]") have been

7    misled or deceived. *Millennium*, 761 So. 2d at 1263. To be "misled," a consumer would have to

8    believe that his or her MacBook was guaranteed to be 100% defect-free—during the warranty

9    period or otherwise. But there are no facts alleged that could support such a belief, much less

10    establish that such a belief was "reasonable." No "reasonable" consumer could have any

11    expectation other than that the laptop would perform during the warranty—and that if it did not,

12    Apple would repair the device pursuant to that warranty. *E.g.*, *Zlotnick*, 480 F.3d at 1287 ("[T]he

13    express terms of the [parties'] agreement" undercut FDUTPA claim and "eliminated any

14    possibility that a reasonable purchaser would be misled.").

15          The same is true of *Edwards v. ZeniMax*, 2013 WL 5420933, which held that the plaintiff

16    could plead a claim under the Colorado Consumer Protection Act based on a "defect" in a video

17    game that, according to the plaintiff, made the game unplayable for everyone who bought it—

18    notwithstanding language regarding potential "bugs" in the warranty document (or the fact that

19    the warranty had expired). Unlike the "defect" in *Edwards* (which allegedly affected everyone

20    and made the game unusable) the "defect" here is precisely the kind of thing that is disclosed by

21    Apple's Limited Warranty: parts can and do wear out as the product is used. *See, e.g.*,

22    *Daugherty*, 144 Cal. App. 4th at 830 ("All parts will wear out sooner or later and thus have a

23    limited effective life."). Plaintiffs in this case do not (and obviously cannot) allege that all

24    MacBook computers—some of the most popular laptops in the world—were so flawed from the

25    outset that they were all virtually unusable when sold.

26                             *       *       *

27          As the Ninth Circuit observed in *Wilson*, "California courts have generally rejected a

28    broad obligation to disclose." 668 F.3d at 1141. That is because imposing overbroad disclosure

1    duties can have serious consequences:  "[A] manufacturer would no longer be able to issue

2    limited warranties, and product defect litigation would become as widespread as manufacturing

3    itself."  *Id.* at 1141-42 (citation and internal quotation marks omitted).  Because "perfect"

4    products do not exist—there is always a risk that products might malfunction—manufacturers can

5    always be said to "know" that at least some product failures will occur during the warranty.  *See,*

6    *e.g.*, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008).  If Apple is

7    liable for "fraud" on the facts presented here, manufacturers will be required to affirmatively

8    disclose every possible way their products could break, regardless of how common (or

9    uncommon) those "malfunctions" might actually be.[27]

10              3.    ***Plaintiffs Must Plead Fraud With Particularity***

11           Finally, since their claims all sound in fraud, plaintiffs were required to satisfy Rule 9(b)'s

12   heightened pleading requirements.  *See Vess v. Ciba-Geigy*, 317 F.3d 1097, 1103 (9th Cir. 2003)

13   ("Rule 9(b) applies to 'averments of fraud'"); *Kearns v. Ford*, 567 F.3d 1120, 1125 (9th Cir.

14   2009) (applying Rule 9(b) to UCL and CLRA claims).[28]  Under Rule 9, "[m]ere conclusory

15   allegations of fraud are insufficient."  *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001).

16   Plaintiffs must specifically identify the circumstances of the fraud—the who, where, what, when,

17   and how of their claims—as well as circumstances demonstrating their own reliance on the

18   statements or omissions.  *Vess*, 317 F.3d at 1106; *see also Kearns*, 567 F.3d at 1124.[29]  But

---

19   [27] This analysis applies with equal force to plaintiffs' common law fraudulent concealment/

20   nondisclosure claim.  Indeed, that cause of action fails for an additional reason—it requires that
     plaintiffs plead specific facts showing Apple intended to conceal a known fact.  *E.g.*, *Oestreicher*,

21   544 F. Supp 2d at 974.  Here, however, although plaintiffs assert generally that Apple "knew"
     about "solder-related failures" because MacBooks from 2008 (several product generations ago)

22   "suffered from a nearly identical defect" (FAC ¶ 54), they offer no concrete facts to support this
     assertion, and certainly no facts that meet the heightened pleading standard of Rule 9(b).  *See*

23   *Wilson*, 668 F.3d at 1146 (rejecting allegations of "knowledge" based on "lawsuit involving the
     same defect on a different model of laptop computers."); *Oestreicher*, 544 F. Supp. 2d at 974 &

24   n.9  (allegations that defendant had "exclusive knowledge as the manufacturer" did not support a
     claim for fraudulent concealment); *Marcus*, 2015 WL 151489, at *6 (rejecting "fraud by

25   omission" theory premised on allegations that "Apple had superior knowledge of the defect"); *see
     also Berenblat v. Apple*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010).

26   [28] *See also Dremak v. Iovate Health Scis. Group, Inc.*, 2014 U.S. Dist. LEXIS 11750, at *71 (S.D.
     Cal. Jan. 27, 2014) (Rule 9(b) applies to FDUTPA & the Illinois Consumer Fraud Act).

27   [29] Rule 9(b) applies with equal force to omission claims.  *Marolda v. Symantec*, 672 F. Supp. 2d
28   992, 1002 (N.D. Cal. 2009) ("[P]laintiff must describe the content of the omission and where the
     omitted information should or could have been revealed, as well as provide representative

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    plaintiffs never explain what ads or statements (if any) they personally saw. (*See* FAC ¶¶ 88-

2    166.) Nor do they plead ***facts*** regarding their own reliance (if any), and never articulate what,

3    exactly, Apple should have disclosed to them (much less where such a disclosure should have

4    occurred, or that they would have seen such a disclosure and changed their behavior). Apple's

5    Limited Warranty already explains that MacBooks might malfunction—if plaintiffs contend that

6    additional disclosures should have been made, they must explain what, specifically, they contend

7    Apple should have disclosed. As pled, their "fraud"-based claims (including under the various

8    consumer protection statutes) must be dismissed.

9           **E.**     **<u>Plaintiffs' Remaining Claims Suffer From a Host of Defects</u>**

10             1.    ***Plaintiffs' Fraud Claims Are Barred by the Economic Loss Rule in Colorado, Indiana, and Puerto Rico***

11         Plaintiffs' fraud claims under Colorado, Indiana, and Puerto Rico law are also barred by

12   the economic loss rule. In those states, where a plaintiff's claim derives from a failure to disclose

13   a defect covered by warranty, the "economic loss" rule "provides that relief in tort—*i.e.* fraud—

14   does not lie where the party's injury derives solely from breach of the express or implied duties

15   arising in contract." *Tara Woods Ltd. v. Fannie Mae*, 731 F. Supp. 2d 1103, 1115 (D. Colo.

16   2010); *see also Former TCHR, LLC v. First Hand Management*, 317 P.3d 1226, 1231-33 (Colo.

17   Ct. App. 2012) ("claims for fraudulent misrepresentation and concealment may be barred [by the

18   economic loss rule] if they arise from duties implicated by the contract and relate to the

19   performance of the contract"); *Isla Nena*, 380 F. Supp. 2d at 81-83 (in Puerto Rico, "a

20   manufacturer in a commercial relationship has no duty under [tort law] to prevent a product from

21   injuring itself . . . damage to a product itself is most naturally understood as a warranty claim . . .

22   ."). As the Indiana Supreme Court has explained, "[t]he theory underlying the economic loss

23   doctrine is that the failure of a product or service to live up to expectations is best relegated to

24   contract law and to warranty either express or implied. The buyer and seller are able to allocate

25   these risks and price the product or service accordingly." *Gunkel v. Renovations*, 822 N.E.2d

26

27   samples of advertisements, offers, or other representations that plaintiff relied on to make her
     purchase and that failed to include the allegedly omitted information."); *Perret v. Wyndham*, 846

28   F. Supp. 2d 1327, 1332 (S.D. Fla. 2012).

150, 155 (Ind. 2005); *Reed v. Central Soya*, 621 N.E.2d 1069, 1074-75 (Ind. 1993) ("where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations … such losses are more appropriately recovered by contract remedies").

2.       ***Plaintiffs' Indiana, Illinois, and Puerto Rico Consumer Fraud Claims Are Barred by the Statute of Limitations***

In the Eighth Cause of Action, plaintiffs purport to bring statutory fraud claims for various states—most of which are irrelevant.[30]  In any event, under those same laws the claims of three plaintiffs (Rowe, Ashbaugh, and Ramos) are time-barred.  The Indiana Deceptive Consumer Sales Act (IDCSA), for example, has a two-year statute of limitations that runs from the date of occurrence of the deceptive act—***not*** from the date of "discovery."  Ind. Code § 24-5-0.5-5(b); *State v. Classic Pool & Patio*, 777 N.E.2d 1162, 1165 (Ind. Ct. App. 2002) (the Deceptive Sales Act "has an occurrence-based statute of limitation, which means that the statutory period commences to run at the occurrence of the deceptive act.").  Since the "deceptive act"—according to plaintiffs—was the advertising and sale of Rowe's computer, he was required to sue within two years of his purchase (February 24, 2011).  (FAC ¶ 156).  But he did not file until December 19, 2014—more than three years later.  Similarly, the statute for an Illinois Consumer Fraud Action is three years, 815 ILCS 505/10a(e), and the claim accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused."[31]  Here, it is unclear when plaintiff Ashbaugh experienced a problem—she should not be allowed to evade the statute of limitations by carefully pleading only that the "defect" manifested at some unspecified time.  (FAC ¶¶ 147-48).  If Ashbaugh's computer malfunctioned before December 2011, her claims are time-barred and should be dismissed.

Plaintiffs do not cite Puerto Rico's consumer protection statute in their FAC, and there is no private right of action under that statute in any case.  *See Ramos v. Hyundai*, 431 F. Supp. 2d 209, 212-13 (D. P.R. 2006); *In re Vioxx*, 522 F. Supp. 2d 799, 810 (E.D. La. 2007).  But plaintiff

---

[30] Since the named plaintiffs only allege claims under the laws of six states (and Puerto Rico), allegations regarding other jurisdictions are irrelevant and should be stricken from the complaint.

[31] *Tammerello v. Ameriquest*, 2006 U.S. Dist. LEXIS 71249, at *23 (N.D. Ill. Sept. 29, 2006).

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1    Ramos's common law fraud claim is time-barred under Puerto Rico's one year statute of

2    limitations—which begins to run when Ramos knew of or should have known of the "fraud."

3    P.R. St. Title 31 § 5298; *see also Ocaso v. Puerto Rico Maritime*, 915 F. Supp. 1244, 1259-61 (D.

4    P.R. 1996) (SOL is one year for fraud claims).  Here, Ramos alleges he purchased his laptop in

5    2011, and that it was repaired in May 2012 after a malfunction.  (FAC ¶¶ 159, 160.)  Since he

6    waited until December 2014 to file, his claims are time-barred.

7                    3.    ***Plaintiff's "Unlawful" and "Unfair" UCL Claims Fail***

8          The California plaintiffs' "unlawful" UCL claim depends entirely on their claims that

9    Apple violated the CLRA.  (*Id.* ¶ 201.)  And because the CLRA claim fails as a matter of law (as

10   set out above), the "unlawful" UCL claim fails as well.  *Daugherty*, 144 Cal. App. 4th at 837

11   (where CLRA claim failed, plaintiff "cannot state a violation of the UCL under the 'unlawful'

12   prong predicated on a violation of either statute, as there were no violations"); *Hodges*, 2013 U.S.

13   Dist. LEXIS 114374, at *21.

14         Plaintiffs cannot allege a claim under the UCL's "unfair" prong, either.  While the precise

15   definition of "unfair" in the consumer context is somewhat unsettled, the conduct at issue must

16   either (1) "offend[ ] an established public policy or [be] immoral, unethical, oppressive,

17   unscrupulous or substantially injurious to consumers," and the policy must be "'tethered' to

18   specific constitutional, statutory or regulatory provisions" (*Bardin*, 136 Cal. App. 4th at 1264-73),

19   or (2) the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct

20   against the gravity of the harm to the alleged victim."  *Schnall v. Hertz*, 78 Cal. App. 4th 1144,

21   1167 (2000); *Davis v. HSBC*, 691 F.3d 1152, 1169 (9th Cir. 2012).

22         As to the first test, the California plaintiffs do not even attempt to allege facts to support

23   their vague assertion that Apple has engaged in "unfair" conduct—plaintiffs do not (and cannot)

24   identify any "constitutional, statutory or regulatory" provision that Apple could possibly have

25   violated, let alone how Apple's conduct is "immoral, unethical, oppressive, unscrupulous or

26   substantially injurious to consumers."  *See Hodges*, 2013 U.S. Dist. LEXIS 114374, at *18

27   (plaintiff "must identify an actual policy based on a legal provision that the defendant violated"

28   and must explain "how Apple's conduct violated that policy").  Nor do plaintiffs plead facts to

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-04746-EJD

1  show that Apple's conduct was "unfair" under the "balancing test"—they admit Apple repairs

2  broken devices under warranty, and do not explain how any other alleged "misconduct" could

3  satisfy any possible definition of "unfair." *See Bardin*, 136 Cal. App. 4th at 1264-73.

4  **V.     PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF IS IMPROPER**

5          At the end of the FAC, plaintiffs tack on a claim entitled "Declaratory Relief," on behalf

6  of a "Declaratory Relief Class" that is never defined, and seek a declaration that "certain [never-

7  identified] provisions of Defendant's warranty" are "void." (FAC ¶¶ 330, 331.) Here, whatever

8  "declarations" plaintiffs seek appear to be "commensurate with the relief sought through [their]

9  other causes of action." *See Lewis v. Trans Union*, 2013 WL 1680639, at *5 (E.D. Cal. Apr. 17,

10 2013). (*See also* FAC ¶¶ 183, 217, 221.) Because the request for declaratory relief "wholly

11 depends on the Court's findings on [their] substantive claim[s]," the Court should dismiss or

12 strike the request as "unnecessary and duplicative." *See Lewis*, 2013 WL 1680639, at *5;

13 *McNeary-Calloway v. JP Morgan*, 863 F. Supp. 2d 928, 964 (N.D. Cal. 2012).[32]

14 **VI.    CONCLUSION**

15         For the reasons set out above, Apple respectfully requests that the Court dismiss the FAC

16 with prejudice.

17

18    Dated: January 29, 2015                    O'MELVENY & MYERS LLP
                                                  MATTHEW D. POWERS
19                                                KELSEY M. LARSON
                                                  SARAH H. TRELA
20
                                                  By: /s/ Matthew D. Powers
21                                                _____
                                                      Matthew D. Powers
22                                                Attorneys for Defendant
                                                  APPLE INC.
23

24

25  _____

[32] It is unclear whether the reference to "Declaratory Relief" constitutes a separate cause of
26  action, or a remedy. If it is intended as a remedy, plaintiffs should explain what specific
    "declarations" they seek. (*See* FAC ¶¶ 329-31.) But if "Declaratory Relief" is asserted as a cause
27  of action, it must be dismissed. *See Progency Ventures v. Western Union*, 752 F. Supp. 2d 1127,
    1135 (C.D. Cal. 2010) ("[D]eclaratory relief is a remedy and not a cause of action[.]"); *Goldberg
28  v. BAC Home Loans*, 2013 WL 4501014, at *4 n.4 (S.D. Cal. Aug. 21, 2013) (same).